No. 24-3732

---

In the
# United States Court of Appeals
### for the Sixth Circuit

---

UNITED STATES,

*Petitioner-Appellee,*

v.

EATON CORP.

*Respondent-Appellant.*

---

On Appeal from the United States District Court for the
Northern District of Ohio, Case No. 1:23-mc-37,
Hon. James S. Gwin, *United States District Judge*

---

## MOTION TO STAY THE DISTRICT COURT'S ORDER AND REQUEST FOR ADMINISTRATIVE STAY UNTIL THE COURT RULES

---

Juliana Hunter
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
1000 Louisiana St.
Houston, TX 77002

Raj Madan
Parker Rider-Longmaid
  *Counsel of Record*
Garrett Brodeur
Kyser Blakely
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
parker.rider-longmaid@skadden.com

*Counsel for Respondent-Appellant Eaton Corp.*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 24-3732            Case Name: United States v. Eaton Corp.

Name of counsel: Parker Rider-Longmaid

Pursuant to 6th Cir. R. 26.1, Eaton Corp.
*Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> Yes. Eaton Corporation and its subsidiaries are subsidiaries of Eaton Corporation plc, a publicly traded entity.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> Yes. Eaton Corporation plc, as parent to Eaton Corporation and its subsidiaries, has a financial interest in the outcome of this case.

---

CERTIFICATE OF SERVICE

I certify that on _____ August 30, 2024 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Parker Rider-Longmaid

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

- i -

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ...................................................................... i

TABLE OF AUTHORITIES ..................................................................... iv

INTRODUCTION ................................................................................. 1

STATEMENT ...................................................................................... 4

    A.   Legal background ................................................................... 4

        1.   The doctrine of comity governs the interplay between domestic and foreign law. ...................................... 4

        2.   The GDPR is the strongest data privacy law in the world. ........................................................................ 5

            a.   EU law, generally ........................................... 6

            b.   The GDPR ...................................................... 7

        3.   The IRS may issue summonses ordering the production of certain taxpayer records. ........................... 10

    B.   Factual and procedural background ........................................ 11

        1.   The IRS audits Eaton. ............................................ 11

        2.   The district court enforces the summons. ..................... 15

ARGUMENT ..................................................................................... 18

    A.   Eaton is likely to succeed on the merits. ............................... 18

        1.   The balance-of-interests factor weighs against disclosure. ......................................................... 19

        2.   The importance factor weighs against disclosure. ........... 21

# TABLE OF CONTENTS
## (continued)

**Page**

    3.    The origination factor weighs against disclosure. ............22

    4.    The good-faith factor weighs against disclosure...............22

    5.    The alternative-means factor weighs against disclosure.....................................................................................23

    6.    Nothing outweighs the five factors favoring Eaton. ........25

  B.   Eaton will suffer irreparable harm without a stay. .....................26

  C.   A stay will not substantially harm the IRS, and the public interest supports a stay....................................................................27

CONCLUSION ....................................................................................................28

CERTIFICATE OF COMPLIANCE ....................................................................29

CERTIFICATE OF SERVICE .............................................................................30

INDEX OF SPECIAL APPENDIX.......................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arizona v. United States*,
567 U.S. 387 (2012)..................................................................20

*Chavez v. Carranza*,
559 F.3d 486 (6th Cir. 2009) ......................................................18

*Church of Scientology of California v. United States*,
506 U.S. 9 (1992).................................................................3, 26

*Eaton Corp. & Subsidiaries v. Commissioner*,
47 F.4th 434 (6th Cir. 2022) ........................................... 11, 12, 13, 27

*Huber v. Bundesrepublik Deutschland*,
ECLI:EU:C:2008:724 (Dec. 16, 2008)..............................................8

*In re Sealed Case*,
825 F.2d 494 (D.C. Cir. 1987).................................................. 22, 23

*In re Sealed Case*,
932 F.3d 915 (D.C. Cir. 2019)............................... 4, 5, 18, 22, 23, 25

*Maness v. Meyers*,
419 U.S. 449 (1975)..................................................................26

*Opinion Pursuant to Article 218(11) TFEU*,
ECLI:EU:C:2014:2454 (Dec. 18, 2014)............................................6

*Philip Morris USA Inc. v. Scott*,
561 U.S. 1301 (2010) (Scalia, J., in chambers)................................26

*Richmark Corp. v. Timber Falling Consultants*,
959 F.2d 1468 (9th Cir. 1992) ............................... 4, 5, 21, 23, 25, 26

*Societe Internationale Pour Participations Industrielles
et Commerciales, S. A. v. Rogers*,
357 U.S. 197 (1958)....................................................................5

*Société Nationale Industrielle Aérospatiale v. U.S. District Court
for the Southern District of Iowa*,
482 U.S. 522 (1987)..................................................................4, 5

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Toth v. Grand Truck Railroad*,
  306 F.3d 335 (6th Cir. 2002) ........................................................ 18, 19

*United States v. Arthur Young & Co.*,
  465 U.S. 805 (1984) .............................................................................10

*United States v. First National Bank of Chicago*,
  699 F.2d 341 (7th Cir. 1983) .........................................................5, 23

*United States v. Monumental Life Insurance Co.*,
  440 F.3d 729 (6th Cir. 2006) ..............................................................11

*United States v. Powell*,
  379 U.S. 48 (1964) ......................................................................... 10, 11

*United States v. Sineneng-Smith*,
  590 U.S. 371 (2020) .............................................................................20

*United States v. Vetco, Inc.*,
  691 F.2d 1281 (9th Cir. 1981) ............................................................25

**STATUTES AND REGULATION**

26 U.S.C. § 482 ........................................................................................12

26 U.S.C. § 7402(b) .................................................................................10

26 U.S.C. § 7602(a)(1) ............................................................................10

26 U.S.C. § 7604 .....................................................................................10

26 C.F.R. § 1.482-1(b)(1) ........................................................................12

**OTHER AUTHORITIES**

Convention Between the Government of the United States
  and the Government of Ireland for the Avoidance of
  Double Taxation and the Prevention of Fiscal Evasion
  with Respect to Taxes on Income and Capital Gains,
  July 28, 1997, S. Treaty Doc. No. 105-31 ................................ 15, 16, 17, 20, 21

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

General Data Protection Regulation (GDPR),
Council Regulation 2016/679,
2016 O.J. (L 119) 4.5 (EU) ................................................................ 1, 2, 3, 4, 5,
................................................................................................. 6, 7, 8, 9, 10,
............................................................................................. 11, 14, 15, 16, 17,
............................................................................................. 18, 19, 20, 21, 26, 27

GDPR Recital 1 ................................................................................................7

GDPR Recital 39 ..........................................................................................9, 10

GDPR Recital 72 ...............................................................................................6

GDPR Recital 104 .............................................................................................9

GDPR Recital 106 .............................................................................................9

GDPR Recital 108 .............................................................................................9

GDPR Recital 136 .............................................................................................6

GDPR art. 1 .......................................................................................................5

GDPR art. 4(1) ..................................................................................................7

GDPR art. 4(2) ..................................................................................................7

GDPR art. 4(7) ..................................................................................................7

GDPR art. 6(1) ..................................................................................................8

GDPR art. 6(1)(a) .............................................................................................8

GDPR art. 6(1)(b) .............................................................................................8

GDPR art. 6(1)(c) ..............................................................................................8

GDPR art. 6(1)(d) .............................................................................................8

GDPR art. 6(1)(e) ..............................................................................................8

GDPR art. 6(1)(f) ..............................................................................................8

GDPR art. 6(3) ..................................................................................................8

GDPR Chapter V ..............................................................................................9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

GDPR art. 44.................................................................................9

GDPR art. 49.................................................................................9

GDPR art. 49(1)(d).........................................................................9

GDPR art. 68.................................................................................6

GDPR art. 69.................................................................................6

GDPR art. 70.................................................................................6

GDPR art. 71.................................................................................6

GDPR art. 72.................................................................................6

GDPR art. 73.................................................................................6

GDPR art. 74.................................................................................6

GDPR art. 75.................................................................................6

GDPR art. 76.................................................................................6

GDPR art. 99.................................................................................7

*Guidelines 2/2018 on Derogations of Article 49 Under Regulation 2016/679*,
European Data Protection Board (May, 25, 2018),
https://www.edpb.europa.eu/sites/default/files
/files/file1/edpb_guidelines_2_2018_derogations_en.pdf ............... 6, 7, 9

IRS Announcement 2000-35, 2000-1 C.B. 922............................... 12, 13

*Necessity & Proportionality*, European Data Protection Supervisor,
https://www.edps.europa.eu/data-protection/our-work/
subjects/necessity-proportionality_en
(last visited August 30, 2024).........................................................8

*The General Data Protection Regulation*, European Council,
Council of the EU, https://www.consilium.europa.eu/
en/policies/data-protection/data-protection-regulation/
(last visited August 30, 2024).........................................................6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*The History of the General Data Protection Regulation*,
   European Data Protection Supervisor,
   https://www.edps.europa.eu/data-protection/
   data-protection/legislation/history-general
   -data-protection-regulation_en
   (last visited August 30, 2024).............................................................................6

*What Are the GDPR Fines?*, GDPR.EU,
   https://gdpr.eu/fines/ (last visited August 30, 2024) ..............................10

## INTRODUCTION

Eaton Corporation respectfully moves to stay the district court's orders granting the government's petition to enforce an Internal Revenue Service (IRS) summons, *see* SA20-37, and denying Eaton's motion to alter or amend the judgment, *see* SA2-15 (collectively, the Order). Eaton also requests an administrative stay until the Court rules on this motion. The government agrees to a 30-day administrative stay of the Order until October 18, but it opposes a stay pending appeal.

This appeal presents an exceedingly important comity question: whether an IRS summons should be enforced where, as the district court found, the summonsed documents "are not particularly important to the IRS's investigation," SA36, and enforcement will violate the European Union's (EU) landmark General Data Protection Regulation (GDPR), Council Regulation 2016/679, 2016 O.J. (L 119) 4.5 (EU) (Apr. 27, 2016). The answer is no. The district court nonetheless ordered Eaton to produce the summonsed documents by September 18, 2024, SA15. That ruling puts Eaton in an impossible dilemma—comply with a summons enforcement order and give the IRS documents it doesn't need, or violate the EU's gold-standard privacy law and risk substantial European financial sanctions.

The Court should grant a stay pending appeal and an administrative stay until it can rule on that request. Under a proper comity analysis, the summons shouldn't be enforced. The summonsed documents hold little relevance to the IRS's audit; the IRS can interview the affected employees (or their managers); and the EU has critical interests in nondisclosure under the fundamental privacy rights recognized in the GDPR. What's more, Eaton will suffer irreparable harm without a stay, even if the Court later reverses, because producing the documents will violate the GDPR, subjecting Eaton to liability and sanctions in the EU. The IRS, meanwhile, "can make do without" the documents, as the district court acknowledged. SA9.

**1.**    Eaton will likely succeed on the merits. When foreign and domestic law conflict, courts balance several factors to decide which law governs. Here, five factors support enforcing the GDPR. The district court agreed as to three factors, but erroneously analyzed two others.

Interest-balancing weighs against disclosure. The GDPR, a signature EU achievement, is the *world's strongest* privacy and security law. The EU has a critical interest in ensuring GDPR compliance. But the district court ignored that interest, focusing instead on a tax treaty between the U.S. and Ireland, where one of Eaton's affiliates is located. The court also failed to

recognize that the "weak" "relevancy" of the summonsed documents reduces the government's general tax-collection interest.

The alternative-means factor likewise weighs against disclosure. Eaton has repeatedly offered the IRS live interviews instead of the GDPR-protected summonsed documents. But the district court adopted an erroneous, seemingly categorical rule that interviews don't (and may never) constitute a "substantially equivalent" means of acquiring information contained in summonsed documents. The court sought a "perfect substitute," but that isn't the standard.

**2.** Without a stay, as the district court acknowledged, "Eaton would be irreparably harmed because it would be forced to violate the GDPR." SA14. No matter how this Court might later rule, Eaton would already be subject to significant EU penalties. And "there is nothing a court can do to withdraw all knowledge or information that IRS agents" would acquire by reviewing the summonsed documents. *Church of Scientology of California v. United States*, 506 U.S. 9, 12-13 (1992).

**3.** A stay will not substantially harm the IRS, and the public interest supports a stay. The summonsed documents "are not particularly important to the IRS's investigation," SA36, meaning "the IRS can make do without

[them]," SA9. Indeed, the IRS has already told Eaton in detail how it proposes to adjust Eaton's taxes. And the public has an interest in ensuring that sensitive personal data isn't disclosed unnecessarily.

## STATEMENT

### A.    Legal background

This case involves a novel, high-stakes conflict between the GDPR and domestic law that may have significant implications beyond this case. It raises the critical question of whether courts should respect the GDPR where, as here, the IRS seeks GDPR-protected private information that is "not particularly important to [its] investigation." SA36.

### 1.    The doctrine of comity governs the interplay between domestic and foreign law.

"Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." *Société Nationale Industrielle Aérospatiale v. U.S. District Court for the Southern District of Iowa*, 482 U.S. 522, 543 n.27 (1987). When foreign and domestic law "clash," courts must decide whether to honor or undermine the foreign law by balancing several factors. *In re Sealed Case*, 932

F.3d 915, 931-32 (D.C. Cir. 2019); *see Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1474-78 (9th Cir. 1992).

The comity factors include the importance of the requested information to the investigation, "the degree of specificity of the request," "whether the information originated in the United States," "the availability of alternative means of securing the information," and "the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located." *Société Nationale*, 482 U.S. at 544 n.28. "Courts also look to whether compliance would impose hardship on the party targeted by the subpoena and whether that party has acted in good faith." *Sealed Case*, 932 F.3d at 932; *see Societe Internationale Pour Participations Industrielles et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 208-09 (1958) (good faith); *United States v. First National Bank of Chicago*, 699 F.2d 341, 346-47 (7th Cir. 1983) (same).

### 2.    The GDPR is the strongest data privacy law in the world.

The GDPR governs personal data of EU citizens and residents. *See* GDPR, art. 1. It is "the **strongest privacy and security law in the world**." *The*

*General Data Protection Regulation*, European Council, Council of the EU, https://www.consilium.europa.eu/en/policies/data-protection/data-protection-regulation/ (last visited August 30, 2024). The GDPR is also one of the EU's "greatest achievements in recent years," continuing its established reputation of setting the "gold standard all over the world" for "data protection laws." *The History of the General Data Protection Regulation*, European Data Protection Supervisor, https://www.edps.europa.eu/data-protection/data-protection/legislation/history-general-data-protection-regulation_en (last visited August 30, 2024).

### a.    EU law, generally

Generally speaking, EU law is supreme within the EU, taking "primacy over the laws of the Member States." *Opinion Pursuant to Article 218(11) TFEU*, ECLI:EU:C:2014:2454, ¶ 166 (Dec. 18, 2014). EU caselaw and EU-approved sources help define the scope of EU law.

For example, the GDPR "established" the European Data Protection Board, made up of the GDPR regulators of each EU member state, and gave it certain powers, including the ability "to adopt legally binding decisions" in certain circumstances and to "issue guidance" in others. GDPR, Recitals 72, 136; *see* GDPR, arts. 68-76. The Board has issued several guidelines and

recommendations, including on the meaning of the GDPR's "derogations," or exceptions. *See Guidelines 2/2018 on Derogations of Article 49 Under Regulation 2016/679*, European Data Protection Board (May, 25, 2018), https://www.edpb.europa.eu/sites/default/files/files/file1/ edpb_guidelines_2_2018_derogations_en.pdf (Derogation Guidance).

### b.    The GDPR

The GDPR took effect in 2018. *See* GDPR, art. 99. Its primary focus is "the protection of personal data"—"a fundamental right." GDPR, Recital 1. The GDPR governs the processing, including the transfer, of personal data and establishes significant fines for noncompliance.

*i.*    The GDPR significantly restricts when personal data may be processed. "Personal data" broadly includes "any information relating to an identified or identifiable natural person," also called a "data subject." GDPR, art. 4(1). "Processing" broadly includes "any" action "performed on personal data," including collecting, recording, organizing, storing, using, making available, and destroying. GDPR, art. 4(2). And a "controller" is "the natural or legal person, public authority, agency or other body which, alone or jointly with others, determines the purposes and means of the processing of personal data." GDPR, art. 4(7).

Under the GDPR, processing personal data is lawful in only six circumstances. *See* GDPR, art. 6(1). For example, processing personal data is permitted if it "is necessary for compliance with a legal obligation to which the controller is subject," but only if the "legal obligation" is established by EU law or the law of a Member State "to which the controller is subject." GDPR, art. 6(1)(c), (3).

"Necessity" is a concept "fundamental" to "the processing of personal data" under EU data protection law. *Necessity & Proportionality*, European Data Protection Supervisor, https://www.edps.europa.eu/data-protection/our-work/subjects/necessity-proportionality_en (last visited August 30, 2024) (*Necessity & Proportionality*). Without the data subject's consent to process their personal data, *see* GDPR, art. 6(1)(a), processing is prohibited unless it is "necessary" for a specific GDPR-defined purpose, GDPR, art. 6(1)(b)-(f).

"Necessity" carries an "independent meaning" in EU law. *Huber v. Bundesrepublik Deutschland*, ECLI:EU:C:2008:724, ¶ 52 (Dec. 16, 2008). "According to case-law," any limitation "of the fundamental right to the protection of personal data must be *strictly necessary*." *Necessity & Proportionality* (emphasis added).

- 8 -

*ii.* The GDPR also strictly regulates transfers of personal data to non-EU Member States, or "third countries." *See* GDPR, ch. V. "Any transfer of personal data … to a third country … shall take place only if, subject to the other provisions of this Regulation, the conditions laid down in this Chapter are complied with." GDPR, art. 44. The GDPR instructs the European Commission to "monitor" and "review" how third countries handle personal data and, if necessary, "take measures to compensate for the lack of data protection in a third country by way of appropriate safeguards." GDPR, Recitals 104, 106, 108.

The GDPR's default rule is that transferring personal data to third countries is prohibited unless one of two requirements is met. If neither is met (as is undisputed here), the GDPR bars a third-country transfer unless an enumerated derogation applies. GDPR, art. 49.

This case involves the public interest derogation, which applies when "the transfer is necessary for important reasons of public interest." GDPR, art. 49(1)(d). The transfer must serve a specific important public interest derived from EU or Member State law. Derogation Guidance 10. The strict-necessity test governing personal data processing also governs the public interest derogation. Derogation Guidance 5. Thus, the derogation can apply

only if the purpose of the transfer "could not reasonably be fulfilled by other means." GDPR, Recital 39.

*iii.*    GDPR violations can trigger hefty fines. Serious infringements—those that "go against the very principles of the right to privacy and the right to be forgotten that are at the heart of the GDPR"—"could result in a fine of up to €20 million, or 4% of the firm's worldwide annual revenue from the preceding financial year, whichever amount is higher." *What Are the GDPR Fines?*, GDPR.EU, https://gdpr.eu/fines/ (last visited August 30, 2024) (emphasis omitted). But even "less severe infringements" can mean fines of "€10 million, or 2% of the firm's worldwide annual revenue from the preceding financial year, whichever amount is higher." *Id.*

### 3.    The IRS may issue summonses ordering the production of certain taxpayer records.

The IRS may issue summonses in connection with tax investigations. *United States v. Arthur Young & Co.*, 465 U.S. 805, 813 (1984) (quoting 26 U.S.C. § 7602(a)(1)). Only federal courts can compel compliance with IRS summonses. *See* 26 U.S.C. §§ 7402(b), 7604. To secure an enforcement order, the IRS must establish that the summonsed information "may be relevant to the" investigation, among other requirements. *United States v. Powell*, 379

U.S. 48, 57–58 (1964). "[T]he 'mere assertion of relevance' … will not necessarily satisfy the government's burden." *United States v. Monumental Life Insurance Co.*, 440 F.3d 729, 736 (6th Cir. 2006).

## B.    Factual and procedural background

This appeal arises from an IRS summons ordering Eaton to produce employee performance evaluations in connection with an audit. The district court correctly ruled that the GDPR blocks enforcement of the summons. SA9. It also found that the IRS "can make do without" the summonsed documents, *id.*, because they "are not particularly important to the IRS's investigation," SA36. But the court enforced the summons anyway. SA9.

### 1.    The IRS audits Eaton.

Eaton is a large, multinational business that manufactures power management products (like circuit breakers). *See, e.g.*, *Eaton Corp. & Subsidiaries v. Commissioner*, 47 F.4th 434, 437 (6th Cir. 2022). The IRS has been auditing Eaton "for well over a decade, with in-depth examinations of each tax year from 2005 through 2019." SA44. The current audit concerns Eaton's transfer pricing for certain transactions spanning tax years 2017–2019 (the audit period). *See* SA21.

**a.**    "Transfer pricing" is how multinational businesses price inter-company transactions and, as a result, allocate taxable income. For example, suppose an American company (Eagle) buys supplies from a Chinese affiliate (Panda) for $100 million. For Eagle, that $100 million expense "is a deductible," lowering its "taxable income in the U.S." *Eaton*, 47 F.4th at 437. For Panda, the $100 million sale is a profit, increasing its taxable income in China. *See id.* And the $100 million that moved from one jointly controlled entity to the other is a "transfer price." *Id.*

The Tax Code and Treasury regulations impose rules to ensure that jointly controlled entities are taxed as if they had transacted at arm's length. *See id.* Specifically, the Tax Code gives the Secretary of the Treasury authority to "distribute, apportion, or allocate gross income, deductions, credits, or allowances" between jointly controlled companies so as "clearly to reflect [their] income." 26 U.S.C. § 482. In essence, § 482 and its implementing regulations let the IRS determine "the true taxable income" by calculating a new transfer price based on a hypothetical arms-length transaction between the U.S. taxpayer and "an uncontrolled taxpayer" (*i.e.*, a nonaffiliate). 26 C.F.R. § 1.482-1(b)(1). In practice, transfer pricing, while commonplace, is "complex" and "time-consuming," IRS Announcement 2000-35, 2000-1 C.B. 922,

922, because it typically involves "advanced math calculations" and economic assessments, *Eaton*, 47 F.4th at 437.

**b.**     The IRS is currently evaluating the transfer pricing for certain transactions between Eaton and its Irish affiliate, Eaton Intelligent Power Limited (Eaton Ireland). *See* SA73, SA61. In 2017, Eaton sold certain intellectual property rights to Eaton Ireland, and in 2018–2019, Eaton paid Eaton Ireland royalties to use that intellectual property. SA73. Questioning whether those transactions were conducted at arm's length and whether the sale was bona fide, *id.*, the IRS audited Eaton, seeking to determine whether Eaton or Eaton Ireland controlled the development of the intellectual property after the sale, *see* SA40, SA44-45.

"Eaton has acted in good faith throughout" the audit. SA13. It has given the IRS in-person tours of six facilities in four cities; facilitated IRS interviews of over 40 Eaton employees and service providers and offered many more, including of overseas employees; given six presentations on IRS-requested topics; and produced over 13 GB of data, including over 44,000 pages of various documents, in response to over 400 IRS document requests. SA44-45.

Even so, the IRS summonsed Eaton to produce a handful of employee performance evaluations. *See* SA22, SA45. Those evaluations, the district court found, "are not particularly important to the IRS's investigation." SA36. And for some of them—thirteen relating to Eaton Ireland employees and two relating to employees in Austria and the Czech Republic (together, the Evaluations)—production would violate the GDPR, because they constitute protected personal data. *See* SA9, SA45. Eaton thus complied with the GDPR and offered the IRS alternatives: live interviews with the foreign employees or their managers and written answers to questions the IRS has about those employees. SA46.

**c.** Despite Eaton's repeated efforts to cooperate with the IRS consistent with its GDPR obligations, the IRS refused to interview a single subject of the Evaluations—or *anyone* at Eaton Ireland. *Id.* Instead, in June 2023, the government petitioned the district court to enforce the summons. *See* SA73. The IRS claimed the Evaluations "will help [it] determine how much the foreign employees contributed to the intellectual property in question," SA3—*i.e.*, whether Eaton or Eaton Ireland was responsible for its development.

In March and April 2024, before the district court ruled on the petition, the IRS shared several documents with Eaton, including a 201-page draft report providing the expert economist's basis for the proposed adjustment. *See* SA17-18. Those documents show that the IRS has preliminarily (and wrongly) determined that Eaton, not Eaton Ireland, controlled the intellectual property even after its sale to Eaton Ireland. *Id.* The IRS reached that conclusion without the Evaluations. *Id.*

### 2.    The district court enforces the summons.

**a.**    The district court initially ruled that "neither the GDPR nor comity prevent enforcement" of the summons. SA21.

The court first recognized that enforcing the summons would trigger a GDPR violation unless a derogation applies. SA32. But it incorrectly determined that the public interest derogation applies, reasoning that production of the Evaluations was "legally required" and that the U.S.–Ireland Tax Convention (Convention)—which the IRS never cited—establishes an important "public interest" justifying production. *See* SA32-34.

On the comity issue, the court found that the Evaluations "are not particularly important to the IRS's investigation," noting that the "relevancy showing is weak." SA36. It also determined that the Evaluations' origination

in Europe weighed against enforcement. *Id.* But the court reasoned that the IRS lacked "alternative means" to secure any potentially relevant information in the Evaluations, because Eaton's repeated offers of live interviews "are not a perfect substitute." SA34, SA36. The court also determined that the United States' interest in collecting taxes outweighs Ireland's interest in protecting its citizens' personal data. SA35-36. The court relied primarily on the Convention, reasoning that "Ireland's specific treaty-based interests trump Ireland's general privacy interest." SA35.

**b.**    On reconsideration, the district court held that enforcement of the summons *would* violate the GDPR. It recognized that "Eaton Ireland is the entity covered by the GDPR"—the controller. SA8. And it ruled that the public interest derogation does *not* apply, because producing the Evaluations is neither "necessary" nor "legally required" under the GDPR, *see* SA8-9: "the IRS can make do without" the Evaluations. SA9.

But the court, relying on comity, enforced the summons anyway. *See* SA9-13. On the balance-of-interests factor, the court never directly addressed the EU's significant interest in ensuring compliance with the GDPR. Instead, it looked only to Ireland's interests, reasoning that "the relevant interests are the same." SA10. The court thus stuck to its conclusion that "Ireland's tax

cooperation interest"—*i.e.*, the Convention—"'significantly mitigate[s]' the GDPR's privacy interests." *Id*. The court also said the Convention "partially satisfies the public interest derogation" (*i.e.*, the public-interest prong) and thus "reduces the GDPR privacy interest." SA11.

On the alternative-means factor, the court acknowledged that it had initially applied the wrong legal standard. The standard is substantial equivalence, not perfect substitution. SA11-12. But the court ruled that interviews would not be "substantially equivalent" to producing the Evaluations, because "fading memories" "may limit the information available to the IRS" and "interviewing will take significantly more time and greater resources." SA12.

Despite questioning whether "good faith is a relevant comity factor," the court agreed "that Eaton has acted in good faith throughout this [audit]." SA13. But given its (erroneous) legal analysis on the balance-of-interests and alternative-means factors, the court ruled that the good-faith factor doesn't tip the scales. *Id.*

The court then denied a stay pending appeal, without allowing the parties to fully brief the issue. SA13-15. It subsequently, and without reasoning, denied Eaton's motion for an administrative stay. SA83.

## ARGUMENT

The Court should stay the Order and issue an administrative stay until it resolves this motion. Eaton is likely to succeed on the merits; it will suffer irreparable harm without a stay; a stay will not substantially harm the IRS; and the public interest supports a stay.

### A.     Eaton is likely to succeed on the merits.

Given that the GDPR prohibits disclosure of the Evaluations and the Evaluations "are not particularly important to the IRS's investigation," SA36, the district court erred in ruling that "the comity analysis weighs in favor of enforcing the IRS summons." SA34. Five factors, including the balance-of-interests and alternative-means factors, weigh against disclosure. Indeed, "the IRS can make do without" the Evaluations, SA9, especially because the "relevancy showing is weak," SA36. Simply put, the government's interest in pursuing taxes by obtaining the Evaluations is minor compared to the EU's compelling interest in GDPR compliance.

The district court also erred in reasoning the Order would be reviewed for "clear error." SA14. Courts review "comity" questions for "abuse of discretion." *Chavez v. Carranza*, 559 F.3d 486, 495 (6th Cir. 2009); *Sealed Case*, 932 F.3d at 933-34. "An abuse of discretion occurs when (1) the district

court's decision is based on an erroneous conclusion of law, (2) the district court's findings are clearly erroneous, or (3) the district court's decision is clearly unreasonable, arbitrary or fanciful." *Toth v. Grand Truck Railroad*, 306 F.3d 335, 343 (6th Cir. 2002). That's what happened here: the district court based its decision on erroneous logic and legal conclusions.

### 1. The balance-of-interests factor weighs against disclosure.

Eaton doesn't dispute that the United States has an interest in ensuring compliance with its tax laws. The question is whether that interest, given the relative unimportance to the audit of the Evaluations, outweighs the EU's exceedingly strong interest in ensuring GDPR compliance. It doesn't.

**a.** The GDPR is the strongest privacy and security law in the world. It recognizes the protection of personal data as a fundamental right. It imposes stringent restrictions on transfers of GDPR-protected personal data to non-EU Member States. It instructs the European Commission to monitor how non-EU countries handle personal data. And it establishes significant fines for noncompliance. Additionally, the EU has a worldwide reputational interest to uphold: it sets the gold standard for data protection. *Supra* pp. 5-6. Simply put, the EU, and Ireland as a Member State, have compelling

interests in ensuring compliance with the GDPR, which protects the sensitive employee information the Evaluations contain.

Those significant interests outweigh the United States', especially because the Evaluations "are not particularly important to the IRS's investigation," SA36, and "the IRS can make do" without them, SA9—as it has. If comity means anything, these circumstances establish that the government lacks a sufficient interest in requiring Eaton to breach the GDPR.

**b.** The district court legally erred in concluding otherwise. It erroneously glossed over the EU's significant interests by focusing exclusively on Ireland. *See* SA10. Separate sovereigns don't always share the same interests. *See, e.g.*, *Arizona v. United States*, 567 U.S. 387 (2012). And EU law is supreme within the EU. *Supra* p. 6. But the district court ignored the just-discussed EU interests, concluding instead that "Ireland's tax cooperation interest" under the Convention weakens the GDPR interests. SA10.

Placing so much emphasis on the Convention, especially given that the IRS never cited the Convention until after the district court *sua sponte* relied on it, was legal error. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020). Even assuming the Convention establishes that the public-interest prong of the public interest derogation is satisfied (it doesn't, *see* Dist. Ct.

Doc. 32-1, at 4-7), partial satisfaction of the derogation doesn't "reduce" the EU's compelling interests in the GDPR, which is supreme EU law. SA11. Unsurprisingly, the district court cited no authority for its conclusion.

The district court erred. Interest-balancing must reflect sovereigns' interests in the laws that apply, not in near misses of inapplicable law. The U.S. Code is full of exceptions, for example, but that doesn't mean that the U.S. interests are weaker when those exceptions are only partially satisfied.

Lastly, the district court erred by failing to factor the "weak" "relevancy" of the Evaluations into its interest-balancing analysis. Whatever the United States' tax-collection interest generally, its interest in pursuing tax collection *through the Evaluations* is weak because "the IRS can make do without" them.

### 2.   The importance factor weighs against disclosure.

Indeed, where the requested information is relatively unimportant, "courts have generally been unwilling to override" foreign law and compel disclosure. *Richmark*, 959 F.2d at 1475. This factor favors Eaton, because the Evaluations "are not particularly important." SA36.

### 3. The origination factor weighs against disclosure.

Disclosure is disfavored when the requested information "originated outside the United States." *Sealed Case*, 932 F.3d at 932. Here, "the performance evaluations were created in Europe," SA36, favoring Eaton.

### 4. The good-faith factor weighs against disclosure.

Whether the summonsed party "has acted in good faith" is also a relevant factor. *Sealed Case,* 932 F.3d at 932. Here, there's no question that "Eaton has acted in good faith." SA13. It has given the IRS in-person tours of six facilities; allowed the IRS to interview over 40 employees and service providers; given the IRS six presentations; and produced over 44,000 pages of documents. SA44-45.

The district court doubted that "good faith is a relevant comity factor," stating that good faith typically mitigates punishment rather than justifies noncompliance. SA13. That was error. When a party complies with a foreign law that clashes with domestic law, comity governs which law to honor and which law to undermine. And when a party makes a good faith effort to comply with both laws, rather than use the foreign law to shield, say, an "extensive pattern of delay," *In re Sealed Case*, 825 F.2d 494, 498 (D.C. Cir. 1987), a court can be confident that honoring the foreign law will not

significantly hinder the pursuit of the domestic law. That's why several circuit courts consider good faith. *Supra* p. 5; *e.g.*, *Sealed Case*, 932 F.3d at 932; *First National Bank*, 699 F.2d at 346-47. And although the district court claimed that "good faith would carry little weight" even if the court considered it, SA13, that reasoning just reflects the need to correct the court's erroneous logic and legal conclusions.

### 5. The alternative-means factor weighs against disclosure.

**a.**    "If the information sought can easily be obtained elsewhere, there is little or no reason to require a party to violate foreign law." *Richmark*, 959 F.2d at 1475. The standard is substantial equivalence: disclosure is not necessary when alternative means are likely to produce information that is "substantially equivalent" to the summonsed information. *Id.*

This factor weighs heavily against disclosure. Eaton repeatedly urged the IRS to interview the subjects of the Evaluations, and it has offered to answer in writing the IRS's questions about those employees and their projects and responsibilities. SA46. If the IRS had worked with Eaton, it likely would've obtained answers to its questions that prompted the summons. In fact, given the differences between live interviews and document review, the IRS might have learned *more* through interviews.

**b.**    The district court nominally agreed with the "substantial equivalence" standard. SA12. But it legally erred, abusing its discretion, by applying an incorrect, seemingly categorical rule that interviews cannot ever be a substantially equivalent means of acquiring information contained in summonsed documents. According to the court, interviews "take significantly more time and greater resources," and "fading memories" "may limit the information available to the IRS." SA12. That was error.

Thanks to modern videoconferencing services, interviewing does not take "significantly" more time and resources. *Id*. The IRS, in fact, regularly conducts virtual interviews, including in its audit of Eaton. SA46. And while memories may fade, live conversations reveal information that document review doesn't. That's especially true here given that the Evaluations contain limited information—they are not documents that employees and managers update in real time, but rather are (like many other evaluations in the corporate sector) hindsight summaries of performance and personal development, limited by word or character restrictions. *Cf.* SA45. Neither is a perfect substitute for the other, but they may still be substantially equivalent, depending on the circumstances. But the court's discussion about fading

memories shows that it was looking for a "perfect substitute," SA36, rather than a substantial equivalent.

The court also didn't consider the circumstances. It simply said that "interviews may limit the information available," SA12, borrowing the "may limit" language from *United States v. Vetco, Inc.*, 691 F.2d 1281, 1290 (9th Cir. 1981). But *Vetco* is inapposite. There, the IRS "requested the books and records of Vetco and its overseas subsidiaries." *Id.* at 1283. The court held that "[a]ttempting to obtain consents from affected third parties is not an alternate means of production" because "[i]t may limit the information obtainable by the IRS" given "the cost in time and money of attempting to obtain those consents." *Id.* at 1290. But here, there's no such cost. Eaton is offering the IRS *several* alternatives: interviews with the subjects of the Evaluations and their supervisors, plus written answers to the IRS's questions. Those are substantially equivalent alternatives. The IRS should have accepted them—and it still can.

### 6. Nothing outweighs the five factors favoring Eaton.

Against the five factors favoring Eaton, the government can point only to the summons' specificity. *See Sealed Case,* 932 F.3d at 931-32. While it may

not be "burdensome," *Richmark*, 959 F.2d at 1475, to transmit those documents, transfer nonetheless is *illegal*. The scales tip heavily against it.

### B.    Eaton will suffer irreparable harm without a stay.

Without a stay, "Eaton would be irreparably harmed because it would be forced to violate the GDPR." SA14. And the Court cannot "unring the bell." *Maness v. Meyers*, 419 U.S. 449, 460 (1975). As explained (at 10), GDPR violations may trigger significant fines. Because the penalty trigger is disclosure, and the disclosure cannot be undone, the penalty "cannot be recouped," making the harm irreparable. *Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010) (Scalia, J., in chambers).

Moreover, "there is nothing a court can do to withdraw all knowledge or information that IRS agents" would acquire from the Evaluations. *Church of Scientology*, 506 U.S. at 12-13. While courts have the "power to effectuate a partial remedy by ordering the Government to destroy or return any and all copies" of records "it may have in its possession," the remedy is just that— "partial." *Id.* at 13. Without a stay, it will be "too late to prevent, or to provide a fully satisfactory remedy for," the unlawful disclosure of GDPR-protected personal data. *Id.*

### C.    A stay will not substantially harm the IRS, and the public interest supports a stay.

The IRS doesn't need the Evaluations. As the district court explained, the Evaluations "are not particularly important to the IRS's investigation," SA36, meaning "the IRS can make do without [them]," SA9. The IRS has done just that: it has already preliminarily concluded that Eaton, not Eaton Ireland, controlled the relevant intellectual property, SA17-18—despite claiming it needed the Evaluations to make that determination, *see* SA3. And there's no *urgent* need for the Evaluations. Transfer-pricing audits can last "years." *Eaton*, 47 F.4th at 438 n.3. The current audit began in 2021. The IRS cannot now claim it needs the Evaluations *immediately*.

The public interest also supports a stay. "Taxes may well be 'what we pay for civilized society,' but that doesn't mean the tax collector is above the law." *Eaton*, 47 F.4th at 436 (citation omitted). And here, because the IRS seeks private personal information that the GDPR protects, and because personal privacy is an important issue for Americans, too, the public has a significant interest in preventing the unnecessary disclosure of sensitive personal data.

## CONCLUSION

The Court should stay the Order pending appeal and issue an administrative stay until it resolves this motion.

Dated: August 30, 2024

Respectfully submitted,

*/s/ Parker Rider-Longmaid*

Juliana Hunter
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1000 Louisiana St.
Houston, TX 77002

Raj Madan
Parker Rider-Longmaid
  *Counsel of Record*
Garrett Brodeur
Kyser Blakely
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
parker.rider-longmaid@skadden.com

*Counsel for Respondent-Appellant Eaton Corp.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that (1) this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A), because, as calculated by Microsoft Word, it contains 5,200 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f), and (2) this motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.


Dated: August 30, 2024             */s/ Parker Rider-Longmaid*
                                   Parker Rider-Longmaid

                                   *Counsel for Respondent-Appellant*
                                    *Eaton Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2024, I electronically filed this motion with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: August 30, 2024                    */s/ Parker Rider-Longmaid*
                                          Parker Rider-Longmaid

                                          *Counsel for Respondent-Appellant*
                                          *Eaton Corp.*

[This page is intentionally left blank]

# INDEX OF SPECIAL APPENDIX

**Page**

Opinion and Order Denying Motion to Alter or Amend Judgment,
Dist. Ct. Doc. 39 (Aug. 19, 2024) ............................................................ SA1

Second Supplemental Affidavit of Minghe (Marvin) Bai,
Dist. Ct. Doc. 32-3 (June 13, 2024) ........................................................ SA16

Opinion and Order Granting Petition to Enforce Summons,
Dist. Ct. Doc. 22 (May 16, 2024) ............................................................ SA19

Supplemental Declaration of Senior IRS Revenue Agent
Keith S. Griffith II, Dist. Ct. Doc. 13-1 (Nov. 22, 2023) .................... SA38

Affidavit of Minghe (Marvin) Bai,
Dist. Ct. Doc. 12-1 (Nov. 15, 2023) ........................................................ SA43

Declaration of Senior IRS Revenue Agent Keith S. Griffith II,
Dist. Ct. Doc. 1-1 (June 9, 2023) ............................................................ SA48

Petition to Enforce Internal Revenue Summons,
Dist. Ct. Doc. 1 (June 9, 2023) ............................................................... SA72

Civil Docket, *United States v. Eaton Corp.*, No. 1:23-mc-00037-JG
(N.D. Ohio, James S. Gwin, D.J.; filed June 9, 2023) ........................ SA77

**OPINION AND ORDER DENYING MOTION TO ALTER OR
AMEND JUDGMENT, DIST. CT. DOC. 39 (AUG. 19, 2024)**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:23-mc-00037 |
| | : | |
| Petitioner, | : | OPINION & ORDER |
| | : | [Resolving Docs. 32, 35] |
| v. | : | |
| | : | |
| EATON CORPORATION, | : | |
| | : | |
| Respondent. | : | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

On May 16, 2024, the Court granted the government's petition to enforce an IRS summons for certain foreign employee performance evaluations. The government seeks the evaluations in an investigation of whether Eaton improperly priced purchases from its Irish affiliate to lower Eaton's United States taxes.

Now, Respondent Eaton Corporation (Eaton) moves to alter or amend the Court's judgment under Federal Rules of Civil Procedure 59(e) and 60(b)(1). With its motion for reconsideration, Eaton argues that the Court mistakenly found that European data privacy law—the General Data Protection Regulation (GDPR)—did not forbid Eaton's production of the summonsed performance evaluations, and mistakenly found that the international comity factors favored enforcing the IRS summons even if the GDPR blocked production.

The Court finds that Eaton raises some persuasive arguments, but those arguments ultimately do not change the outcome. While Eaton convinces the Court that the GDPR blocks Eaton from producing the employee evaluations, the Court still finds that the comity factors weigh in favor of enforcing the IRS summons. Therefore, the Court **DENIES** Eaton's motion to alter or amend the judgment.

Case No. 1:23-mc-00037
GWIN, J.

## I.  BACKGROUND

This case arises from a federal income tax audit against Eaton.  With its tax audit, the IRS is investigating whether Eaton committed transfer pricing violations in the 2017–19 tax years.  That is, the IRS is investigating whether Eaton improperly lowered its United States tax burden by paying inflated royalties to Eaton's Irish affiliate, Eaton Intelligent Power Limited (Eaton Ireland), for the right to use certain intellectual property.

As part of its tax audit efforts, the IRS served administrative summons on Eaton.[1]  In relevant part, the summons requested performance evaluations for certain foreign employees working for Eaton Ireland.  According to the IRS, these performance evaluations will help the IRS determine how much the foreign employees contributed to the intellectual property in question.  The IRS says that it can then allocate the intellectual property's value between Eaton and Eaton Ireland by comparing the foreign employees' contributions to domestic employees' contributions.

After Eaton failed to comply with the summons, the government filed a petition to enforce the summons.[2]  The Court referred the petition to a Magistrate Judge.[3]  The Magistrate Judge mediated a settlement on all issues except those related to the foreign employee performance evaluations.[4]  On that issue, the parties submitted briefs,[5] and the Magistrate Judge recommended denying the government's petition.[6]

---

[1] Doc. 1-1, Ex. A.
[2] Doc. 1.
[3] Doc. 2.
[4] Docs. 9, 11.
[5] Docs. 12, 13, 16.
[6] Doc. 17.

Case No. 1:23-mc-00037
GWIN, J.

The government objected to the Magistrate Judge's recommendations.[7] The Court sustained the government's objections and ordered Eaton to produce the foreign employee performance evaluations.[8]

In doing so, the Court found that the government had satisfied the low summons enforcement burden. The Court also found that the GDPR did not prevent Eaton from producing the employee evaluations. And even if the GDPR had prohibited Eaton's evaluation production, the Court found that the international comity factors nonetheless required summons enforcement.

Eaton then asked the Court to stay its decision pending an anticipated post-judgment motion and potential appeal.[9] The Court stayed its decision pending Eaton's post-judgment motion but deferred ruling on whether the Court would give a stay pending appeal.[10]

Eaton subsequently filed its Rules 59(e) and 60(b)(1) post-judgment motion. In the motion, Eaton claims that the Court did not properly analyze the GDPR and comity factors.

## II.   LEGAL STANDARD

When deciding a Rule 59(e) motion, courts "will not address new arguments or evidence that the moving party could have raised before the decision issued."[11] As such, courts may only grant Rule 59(e) motions when there is "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice."[12] Here, Eaton argues clear legal error and new evidence.

---

[7] Doc. 18.
[8] Doc. 22.
[9] Doc. 24 at ¶ 3c. To narrow the issues, Eaton agreed to produce performance evaluations for certain India-based employees. *Id.* at ¶ 3d. Here, Eaton challenges only production of evaluations for its Europe-based employees.
[10] Doc. 31.
[11] *Banister v. Davis*, 590 U.S. 504, 508 (2020).
[12] *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005).

Rule 60(b)(1) motions are similar. Rule 60(b)(1) allows district courts "to vacate a final judgment because of 'mistake, inadvertence, surprise, or excusable neglect.'"[13] There are two circumstances that Rule 60(b)(1) applies to: "(1) when a party has made an excusable mistake or an attorney has acted without authority, or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order."[14] Eaton argues that the second circumstance applies.

## III.   DISCUSSION

### A. Procedural Issues

The government raises two procedural issues. First, Eaton attached an affidavit from a GDPR expert to its post-judgment motion.[15] In its opposition, the government requested that the Court strike this affidavit because Eaton could and should have offered the affidavit earlier. Nonetheless, the government provided its own GDPR-expert affidavit as well.[16]

While the government is correct that Eaton could have presented its GDPR-expert affidavit earlier, the affidavit is neither new evidence nor new argument. Under Rule 44.1, Eaton's expert affidavit is being offered only to resolve legal questions about foreign law, so it is not factual evidence.[17] The affidavit does not raise new arguments either because the affidavit addresses the same GDPR issues that the parties raised earlier and that the Court discussed in its earlier order granting the government's enforcement petition.

In any case, the government submitted its own expert affidavit, so the government is not prejudiced by Eaton's expert affidavit. Therefore, the Court **DENIES** the request to strike.

---

[13] *United States v. Reyes*, 307 F.3d 451, 455 (6th Cir. 2002) (quoting Fed. R. Civ. P. 60(b)(1)).

[14] *Reyes*, 307 F.3d at 455 (citing *Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000)).

[15] Doc. 32-2.

[16] Doc. 33-1.

[17] Fed. R. Civ. P. 44.1; *cf. Wang v. Gen. Motors, LLC*, No. 18-cv-10347, 2018 WL 4501487, at *5 (E.D. Mich. Sept. 20, 2018) (testimony about foreign law is not considered evidence outside the scope of pleading motions).

Second, the government moves for leave to file a sur-reply. However, sur-replies are disfavored and generally only permitted "when new submissions and/or arguments are included in a reply brief."[18] The government's proposed sur-reply responds to arguments that Eaton first raised in its opening post-judgment brief rather than any new arguments first raised on reply. Therefore, the Court **DENIES** the government's sur-reply motion.

### B. GDPR

Having resolved the procedural issues, the Court turns to Eaton's GDPR arguments. All agree that, unless a GDPR exception (known as a derogation) applies, the GDPR blocks Eaton from producing foreign employee performance evaluations. Where the parties disagree, and where the Court ruled in the government's favor, is that whether the GDPR's public interest derogation applies.

For the public interest derogation to apply, the requested document production must be (1) necessary or legally required and (2) based on important public interest grounds.[19]

The Court starts with the public interest element. In its earlier order, the Court held that a 1997 tax treaty between the United States and Ireland established that Ireland has a public interest in allowing information sharing between the two countries for income tax enforcement purposes.[20]

Eaton claims that the Court got it wrong. From Eaton's perspective, there is no public interest because the U.S.-Ireland tax treaty does not authorize the IRS summons in this case.

---

[18] *NOCO Co. v. Shenzhen Valuelink E-Com. Co.*, 550 F. Supp. 3d 488, 499 (N.D. Ohio 2021) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)).

[19] Eur. Data Prot. Bd., *Guidelines 2/2018 on Derogations of Article 49 Under Regulation 2016/679* at 10–11, https://www.edpb.europa.eu/sites/default/files/files/file1/edpb_guidelines_2_2018_derogations_en.pdf [hereinafter *GDPR Guidance*].

[20] Doc. 22 at 14–15.

Case No. 1:23-mc-00037
GWIN, J.

Eaton misses the point. The public interest derogation does not incorporate any treaty's procedures. Instead, the public interest derogation uses expansive language that allows parties to produce personal information whenever it "is necessary for important reasons of public interest."[21] Public interest is a broad concept that extends beyond what a treaty may expressly authorize. Had the European Union (EU) wanted to limit this derogation to apply when there is express authorization in a treaty or other law, the EU could have said so.

The EU's guidance reinforces this conclusion. The guidance explains that public interests can "be *deduced* from EU law or the law of the member state."[22] The guidance also states that treaties are an "*indicator* [for] the existence of a public interest."[23] In other words, the public interest derogation does not require express treaty authorization or other law—public interests can be *inferred* based on a treaty's or law's contents, underlying principles, or goals.

The U.S.-Ireland tax treaty states that its goal is to "prevent[] fiscal evasion with respect to taxes on income."[24] The tax treaty also contains provisions that allow for information sharing between the United States and Ireland.[25] From this, the Court infers that Ireland has a public interest in sharing information with United States tax authorities to prevent international companies from improperly manipulating their tax burden. That interest exists

---

[21] GDPR Art. 4(1)(d).
[22] *GDPR Guidance* 10 (emphasis added).
[23] *Id.* (emphasis added).
[24] *Convention Between the Government of the United States of America and the Government of Ireland for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital Gains*, S. Treaty Doc. No. 105-31, 1997 WL 602448, at *4 (July 28, 1997).
[25] *Id.* at *27–28.

Case No. 1:23-mc-00037
GWIN, J.

even though the IRS did not bring its request for employee evaluations under the U.S.-Ireland

tax treaty.

Although Eaton fails to show that the Court's public interest analysis was wrong, Eaton

successfully argues that the Court's "necessary or legally required" analysis was mistaken. In

its prior order, the Court found that Eaton was legally required to produce the requested

employee evaluations because the government had met its summons enforcement burden.[26]

However, the Court did not distinguish between the two separate entities involved in this

case: the U.S.-based Eaton and its Ireland-based affiliate, Eaton Ireland.

Eaton Ireland is the entity covered by the GDPR. Therefore, Eaton Ireland is the entity

that the Court must analyze the public interest derogation for. The IRS issued the summons

in this case to "Eaton Corporation and Includible Subsidiaries,"[27] not to Eaton Ireland.[28] So

even though the Court found the IRS summons to be enforceable, the summons does not

legally obligate Eaton Ireland.[29]

Having concluded that Eaton Ireland is not legally required to turn over employee

evaluations, the Court considers whether the employee evaluations are necessary. As the

EU's GDPR guidance explains, this requires "strict necessity."[30]

Nothing in this case suggests that the employee evaluations are strictly necessary for

the IRS's tax audit. As the Court previously found, the employee evaluations are only slightly

relevant to transfer pricing.[31] The IRS understandably wants contemporaneous documentary

---

[26] Doc. 22 at 13.
[27] Doc. 1-1 at PageID #: 9.
[28] Neither party directly addresses whether Eaton Ireland is an includible subsidiary of Eaton, but the parties' briefs suggest that Eaton Ireland is not such a subsidiary.
[29] The parties dispute whether the IRS has the power to issue binding summons to Eaton Ireland. Because the IRS summons here did not target Eaton Ireland, the Court declines to address this dispute.
[30] *GDPR Guidance* 11.
[31] Doc. 22 at 17.

Case No. 1:23-mc-00037
GWIN, J.

evidence about what Eaton Ireland's employees were doing. But the IRS can make do without that evidence.[32]

So, the Court finds that the GDPR blocks Eaton Ireland (and therefore blocks Eaton) from producing the requested employee evaluations. The Court, however, must also consider whether the evaluations should be produced after a comity analysis.

## C. Comity Analysis

Courts may enforce an IRS summons blocked by foreign law if the international comity factors favor enforcement. And in its prior order, the Court found that the comity factors favored enforcement. Eaton does not convince the Court otherwise.

Courts must weigh five comity factors:

> (1) the importance to the litigation of the documents or other information requested;
>
> (2) the degree of specificity of the request;
>
> (3) whether the information originated in the United States;
>
> (4) the availability of alternative means of securing the information; and
>
> (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interest of the state where the information is located.[33]

Eaton takes issue with how the Court weighed factors (4) and (5). Eaton also claims that the Court should have analyzed a sixth factor: good faith.

---

[32] Doc. 32-3 at ¶ 3 (explaining that the IRS was able to prepare a draft transfer pricing report without the employee performance evaluations at issue).

[33] *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa,* 482 U.S. 522, 544 n.28 (1987) (citation omitted).

- 8 -

Case No. 1:23-mc-00037
GWIN, J.

As before, the Court begins with factor (5) because it is the most important.[34]  Eaton's main argument is that the Court underappreciated the strength of the GDPR's privacy interest.[35]

To the contrary, the Court did not find that the GDPR's privacy interests are weak. The Court explained that the GDPR's privacy interests are not as strong in this case's specific circumstances because Ireland's tax cooperation interest, as evidenced by the U.S.-Ireland tax treaty, "significantly mitigate[s]" the GDPR's privacy interest.[36]

Eaton counters that the Court should not have looked to Ireland's interests but rather to the EU's interests because the GDPR is an EU law.  The distinction between Ireland and the EU is not important in this case, though.  The EU's own guidance incorporates its member states' interests into the GDPR public interest analysis.[37]  So, the relevant interests are the same whether the Court's comity analysis focuses on the EU or on Ireland as the appropriate sovereign.

Eaton also suggests that, because the GDPR's public interest derogation does not apply, the Court cannot find that Ireland's public tax cooperation interest mitigates against the GDPR's privacy interest.  Once again, Eaton takes too narrow of a view.  The comity analysis is separate from the GDPR analysis.  Indeed, comity is only relevant when the GDPR blocks summons enforcement.  So, to determine whether comity allows courts to enforce the summons despite the GDPR, courts are not limited to assessing whether a GDPR derogation expressly applies.

---

[34] Doc. 22 at 15 n.59 (collecting cases).
[35] Doc. 32-1 at 10–11.
[36] Doc. 22 at 16–17.
[37] *GDPR Guidance* 10 ("[T]he derogation only applies when it can also be deduced from EU law *or the law of the member state to which the controller is subject* that such data transfers are allowed for important public interest purposes including in the spirit of reciprocity for international cooperation.") (emphasis added)

Case No. 1:23-mc-00037
GWIN, J.

Had the government satisfied the public interest derogation, there would be *no* GDPR privacy interest. It follows, then, that partially satisfying the derogation reduces the GDPR privacy interest. That is what happened here. As the Court found above, the U.S.-Ireland tax treaty partially satisfies the public interest derogation, so Ireland's tax cooperation interest can reduce the GDPR's privacy interest.

The GDPR also explicitly recognizes that not all privacy interests are the same. For example, GDPR Article 9 creates especially restrictive rules protecting personal data about race, ethnicity, religion, and health, among other categories of particularly sensitive personal data. In this case, the Court has entered a protective order that allows for redaction of the most sensitive personal information,[38] so there is less of an interest in shielding the remaining unredacted portions of the employee evaluations from the IRS summons.

Eaton's last factor (5) argument is that the U.S.-Ireland tax treaty is not relevant to Ireland's sovereign interests because the tax treaty does not authorize the IRS summons here. The Court already rejected the same argument when evaluating whether the Court could infer a public interest from the tax treaty, and the Court rejects Eaton's argument again for the same reasons.

Therefore, the Court concludes that factor (5) still weighs strongly in favor of enforcement.

Turning to factor (4) (the availability of alternative information-gathering means) the Court finds that Eaton's arguments do not move the needle. Eaton correctly points out that courts evaluating this factor look for whether the alternative information-gathering means

---

[38] Doc. 30.

Case No. 1:23-mc-00037
GWIN, J.

will produce "substantially equivalent" information rather than if those alternative means are a "perfect substitute."

But Eaton overstates how permissive the substantial equivalence standard is. Eaton's cites to *Richmark Corp. v. Timber Falling Consultants*[39] as authority for the substantial equivalence standard. In turn, *Richmark* cites to *United States v. Vetco Inc.*[40] for that standard. And according to *Vetco*, alternative information-gathering means that "may limit the information obtainable by the IRS" or that take more time and money than an IRS summons are not substantially equivalent.[41]

Eaton's proposed alternative means— for the IRS to interview employees rather than review those employees' performance evaluations—fails the *Vetco* test. Because of fading memories, interviews may limit the information available to the IRS compared to contemporaneous documents.[42] And interviewing will take significantly more time and greater resources than reviewing performance evaluations would.

Thus, factor (4) still favors enforcement.

Finally, Eaton argues that the Court should have also considered Eaton's good faith when the Court weighed the comity factors. However, this is the first time Eaton has suggested that good faith is relevant to the comity analysis. In briefing before the Magistrate

---

[39] 959 F.2d 1468, 1475 (9th Cir. 1992).

[40] 691 F.2d 1281, 1290 (9th Cir. 1981).

[41] 691 F.2d at 1290. When district courts have applied the substantial equivalence standard, they generally use the Ninth Circuit's formulation. *E.g.*, *In re Flint Water Cases*, No. 5:16-cv-10444, 2024 WL 2725040, at *3 (E.D. Mich. May 28, 2024) (citing *Richmark* and *Vetco*); *Inventus Power v. Shenzhen Ace Battery*, 339 F.R.D. 487, 502 (N.D. Ill. 2021); *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, No. MDL 19-2875, 2021 WL 3604808, at *5 (D.N.J. Aug. 12, 2021), *aff'd*, 2021 WL 6010575 (D.N.J. Dec. 20, 2021); *In re: Xarelto (Rivaroxaban) Prods. Liab. Litig.*, No. MDL 2592, 2016 WL 3923873, at *16 (E.D. La. July 21, 2016).

[42] Interviews and documentary evidence play different, albeit complementary, roles in investigations. Documents help preserve information that might be lost to fading memories and provide a way for investigators to confirm the accuracy of a witness's testimony. Meanwhile, testimony can provide greater context and fill in the gaps that are inevitably present in documentary evidence. Because of these different roles, investigators cannot easily substitute one for the other.

Case No. 1:23-mc-00037
GWIN, J.

Judge, and in Eaton's objections before this Court, Eaton never raised good faith as a comity factor. It is too late now to raise this new good-faith argument in post-judgment proceedings.

More fundamentally, it does not appear that good faith is a relevant comity factor. Although some circuits have added good faith into the comity analysis, the Supreme Court did not identify good faith as a relevant factor in *Société Nationale*.[43] Nor has the Sixth Circuit ever endorsed good faith as a factor. In fact, the Court has only been able to find one district court decision within the Sixth Circuit applying good faith as a comity factor.[44]

There also does not appear to be much reason to consider good faith when deciding whether to compel production despite foreign law. While good faith can often *mitigate* the sanctions imposed for violating legal obligations, rarely does good faith *justify* noncompliance with legal obligations.[45]

In any case, even if the Court were to consider it, good faith would carry little weight in the Court's comity analysis. Although the Court agrees that Eaton has acted in good faith throughout this process, for the reasons just stated, good faith provides little justification for Eaton not to comply with an IRS summons that the Court has found to be enforceable.

As such, the Court's comity analysis still weighs in favor of enforcing the IRS summons.

### D. Stay Pending Appeal

Although the Court earlier indicated that it would allow Eaton to refile a motion for stay pending appeal once the Court decided Eaton's post-judgment motion, the Court finds

---

[43] 482 U.S. at 544 n.28.
[44] *Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.*, No. 3:16-cv-00024, 2019 WL 1261352, at *14 (W.D. Ky. Mar. 19, 2019).
[45] *Cf. Adams v. Penn Line Servs., Inc.*, 620 F. Supp. 2d 835, 838–39 (N.D. Ohio 2009) (good faith not a defense to Rule 11 sanctions).

Case No. 1:23-mc-00037
GWIN, J.

that further briefing from the parties would not be an efficient use of the parties' time and resources. The parties' existing stay briefing, coupled with the merits briefing on Eaton's post-judgment motion, is sufficient for the Court to decide the stay question.

When deciding whether to issue a stay pending appeal, courts balance four factors: (1) likelihood of prevailing on the merits of any appeal, (2) likelihood of irreparable harm absent a stay, (3) the prospect of harm to others if the court grants a stay, and (4) whether the public interest supports a stay.[46] The Court addresses the factors in order.

First, the Court finds that Eaton is not likely to succeed on appeal. For one, Eaton has already previewed some of its appeal arguments with its post-judgment motion, and the Court has not found those arguments convincing. Moreover, the standard of review for cases like this is the highly deferential "clear error" standard, making it less likely that the Circuit Court will reverse this Court's decision weighing the comity factors.[47]

Second, the Court finds that Eaton would be irreparably harmed because it would be forced to violate the GDPR. But the harm's magnitude is likely small.[48] Although Eaton references a recent billion-dollar GDPR fine against Meta Platforms Ireland Limited,[49] such a drastic penalty is unlikely here. Only a handful of employee evaluations are at issue, versus the systematic disclosure of millions of people's personal information in the Facebook example.

Eaton tries to call into question whether any GDPR fine will be reasonable here by referring to the complexity of calculating GDPR fines and by pointing to the maximum

---

[46] *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).
[47] *Byers v. U.S. Internal Revenue Serv.*, 963 F.3d 548, 552 (6th Cir. 2020) (citation omitted).
[48] *Griepentrog*, 945 F.2d at 154 (courts weighing the irreparable harm factor consider the "substantiality of the injury alleged").
[49] Doc. 34-1 at ¶¶ 10–11.

Case No. 1:23-mc-00037
GWIN, J.

possible fine.[50]  However, Eaton gives no reasons explaining why it believes a fine in this case could be disproportionately high.  In fact, Eaton acknowledges that punishment for violating the GDPR may be as little as a reprimand.[51]  Recall, the IRS seeks information on how much responsibility foreign employees had for developing the intellectual property later licensed to Eaton.  Absent specific reasons to believe that Eaton will receive a disproportionate fine, the Court expects that European authorities will act reasonably and proportionally.

Third, a stay would injure the IRS because it would hinder the IRS's tax audit.  And finally, the public interest in tax collection strongly supports denying a stay.[52]

Therefore, the Court **DENIES** Eaton's request for stay pending appeal.

## IV.    CONCLUSION

The Court **DENIES** Eaton's motion to alter or amend the judgment and **DENIES** a stay pending appeal.  Eaton shall produce the relevant employee performance evaluations to the government, in accordance with the protective order in this case, within **thirty (30) days** of this Order.

IT IS SO ORDERED.

Dated: August 19, 2024                    s/      _James S. Gwin_
                                          JAMES S. GWIN
                                          UNITED STATES DISTRICT JUDGE

---

[50] _Id._ at ¶ 12; Doc. 32-2 at ¶ 19.
[51] Doc. 32-2 at ¶ 19.
[52] _Vetco,_ 691 F.2d at 1289 ("There is a strong American interest in collecting taxes from and prosecuting tax fraud by its own nationals operating through foreign subsidiaries.").

**SECOND SUPPLEMENTAL AFFIDAVIT OF MINGHE (MARVIN) BAI,
DIST. CT. DOC. 32-3 (JUNE 13, 2024)**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:23-mc-00037-JG |
|     Petitioner, | Hon. James S. Gwin, U.S.D.J. |
|     v. | Hon. Jonathan D. Greenberg, U.S.M.J. |
| EATON CORPORATION, | |
|     Respondent. | |

**SECOND SUPPLEMENTAL AFFIDAVIT OF MINGHE (MARVIN) BAI**

I, Marvin Bai, swear and affirm under penalty of perjury that the following statements are true and accurate to the best of my knowledge:

1.     I have personal knowledge of the matters set forth in this affidavit and, if called upon, could and would testify concerning the same.

2.     A declaration submitted by the IRS in this case explains that the IRS seeks the evaluations at issue to obtain information regarding job functions and projects to determine whether Eaton in the United States "continued to exercise" "control" over the IP it transferred to Eaton Intelligent Power Limited ("Eaton Ireland") in 2017.  ECF No. 13-1 (Declaration of Senior IRS Revenue Agent Keith S. Griffith II), ¶ 10.

3.     In connection with the IRS's audit of Eaton's 2017-2019 tax years, on March 29, 2024—after all of the pre-judgment briefing in this case was completed—the IRS provided to Eaton a 201-page draft report by David W. Deramus, Ph.D., prepared on behalf of the IRS and dated as of March 28, 2024. In the draft report, Dr. Deramus preliminarily "conclude[s]" that after the transfer of the IP, Eaton Ireland "did not operationally control or manage the development" of

1

the transferred IP and that "Eaton US continued to control and manage the development" of the transferred IP. Dr. Deramus reached this preliminary conclusion in the draft report without having access to the evaluations at issue.

4.      Similarly, in connection with the IRS's audit of Eaton's 2017-2019 tax years, on or about April 12, 2024, the IRS provided to Eaton a draft Form 886-A (Explanation of Adjustment) containing the IRS's preliminary conclusion that "[Eaton Ireland] was not the owner of the [transferred IP] following the purported transfer" in 2017, citing the report of Dr. Deramus. The IRS reached this preliminary conclusion in the draft Form 886-A without having access to the evaluations at issue.

5.      Eaton disagrees with the preliminary conclusions of Dr. Deramus and the IRS. Eaton has remained amenable to the IRS conducting interviews of the employees whose evaluations are at issue (and other foreign employees) to allow the IRS to test its theories, but the IRS has to date refused all offers of such interviews.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Marvin Bai
Vice President of Tax, Eaton Corporation

Dated:   06/12/2024

2

**OPINION AND ORDER GRANTING PETITION TO
ENFORCE SUMMONS, DIST. CT. DOC. 22 (MAY 16, 2024)**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

---

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:23-mc-00037 |
|  | : |  |
| Petitioner, | : | OPINION & ORDER |
|  | : | [Resolving Docs. 1, 17, 18] |
| v. | : |  |
|  | : |  |
| EATON CORPORATION, | : |  |
|  | : |  |
| Respondent. | : |  |

---

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

In this case, the government petitions the Court to enforce an Internal Revenue Service (IRS) administrative summons issued to Respondent Eaton Corporation. The Court referred the government's petition to a Magistrate Judge for a report and recommendation (R&R).

Before the Magistrate Judge issued his R&R, the parties reached an agreement over many of the summonsed documents. After reaching this agreement, only a single dispute remained: whether Eaton needed to produce certain foreign employees' performance evaluations.

Respondent Eaton argues that the government has not satisfied its IRS summons enforcement burden as to those foreign employees' performance evaluations. And according to Eaton, even if the government had met its burden, the European Union's (EU) privacy law—the General Data Protection Regulation (GDPR)—prohibits Eaton from producing those performance evaluations to the IRS. So, Eaton says, comity requires the Court to not enforce the IRS summons as to those evaluations.

The Magistrate Judge agreed with Eaton and recommended that the Court deny the government's petition. The government timely filed objections.

Case No. 1:23-mc-00037
GWIN, J.

Because the government has met its burden to enforce the IRS summons and neither the GDPR nor comity prevent enforcement, the Court **SUSTAINS** the government's objections, **REJECTS** the R&R, and **ENFORCES** the IRS administrative summons as to the foreign employees' performance evaluations.

## I. BACKGROUND

The IRS is conducting a federal income tax audit for the 2017–19 tax years. The tax audit centers on whether Respondent Eaton violated transfer pricing rules after Eaton assigned certain intellectual property rights to Eaton's Irish affiliate. Specifically, the IRS is investigating whether, after it transferred ownership rights to its Irish affiliate, Eaton improperly lowered its United States tax burden by paying inflated royalties to its Irish affiliate for the right to use the intellectual property.

To understand why transfer pricing can be a concern, consider what happens when a U.S. company purchases supplies from foreign company. By spending money on purchasing supplies, the U.S. company incurs costs. Those costs are deductible,[1] so the costs reduce the U.S. company's taxable income. By the same token, the money that the foreign company receives for those supplies is taxable income, so the foreign company's tax burden increases.

There is nothing concerning about such a business transaction when the transaction runs between two independent companies and is negotiated at arm's length. But there is abuse potential when a company internally transfers assets between its U.S. and foreign affiliates. Especially when the foreign affiliate operates in a jurisdiction with lower corporate tax rates.

---

[1] *Eaton Corp. & Subsidiaries v. Comm'r*, 47 F.4th 434, 437 (6th Cir. 2022).

Case No. 1:23-mc-00037
GWIN, J.

Because the two affiliates are formally separate entities that pay taxes to different governments, the two affiliates must separately account for their profits and losses.

For example, if the U.S. affiliate pays royalties to use the foreign affiliate's intellectual property, those royalties are accounted for as costs to the U.S. affiliate (reducing tax burden) and profit to the foreign affiliate (increasing tax burden). Transfer price refers to this intracompany accounting.

However, the U.S. and foreign affiliate operate under the same corporate umbrella, so the profits and losses incurred by transferring assets between the two affiliates do not affect the parent company's bottom line. To save taxes for the parent company, the two affiliates could inflate transfer pricing to artificially reduce taxable income in high-tax countries while artificially increasing taxable income in low-tax countries.

Driven by these concerns, Congress enacted I.R.C. § 482.[2] Along with its implementing regulations, § 482 gives the IRS authority to adjust transfer price to what a "counterfactual arm's-length transaction 'with an uncontrolled taxpayer'" would have yielded.[3]

In seeking to determine the hypothetical transfer price that an arm's length negotiation between Eaton and its Irish affiliate would have yielded, the IRS served administrative summons on Eaton. The summons requested employee performance evaluations from certain domestic and foreign Eaton employees.

The IRS says that these performance evaluations will allow it to assess how much domestic employees contributed to the intellectual property at issue as compared to how

---

[2] *Eaton Corp. & Subsidiaries*, 47 F.4th at 437.
[3] *Id.* (quoting Treas. Reg. § 1.482-1(b)(1)).

- 3 -

Case No. 1:23-mc-00037
GWIN, J.

much foreign employees contributed.[4]  This, the IRS says, will allow it to determine the appropriate way to allocate that intellectual property's value between Eaton and Eaton's Irish affiliate for transfer pricing purposes.

Eaton did not comply with the IRS's summons, so the government filed a petition to enforce the summons.[5]  This Court referred the government's petition to a Magistrate Judge for an R&R.[6]  While the referral was pending, the parties settled regarding domestic employee performance evaluations.[7]

But the parties continued to disagree on whether Eaton needed to produce foreign employee performance evaluations.

The parties briefed this issue to the Magistrate Judge.[8]  The Magistrate Judge then issued an R&R recommending that the Court deny the government's enforcement petition as to Eaton's foreign employee performance evaluations.[9]  The government timely objected,[10] and the parties fully briefed the government's objections.[11]

## II.    DISCUSSION

Respondent Eaton makes two arguments against enforcing the IRS summons.  First, Eaton says that the government has failed to meet its burden for enforcing the IRS summons.  Second, Eaton says that even if the government met its burden, the Court should not enforce the summons under comity principles because EU privacy law (the GDPR) prohibits Eaton

---

[4] Doc. 13-1 at ¶ 10.
[5] Doc. 1.
[6] Doc. 2.
[7] Docs. 9, 11.
[8] Docs. 12, 13, 16.
[9] Doc. 17.
[10] Doc. 18.
[11] Docs. 19, 20-1.

Case No. 1:23-mc-00037
GWIN, J.

from sending employee performance evaluations to the United States. Neither argument succeeds.

### A. IRS Summons Enforcement

Congress has granted the IRS "expansive information-gathering authority" to determine if taxes have been properly paid.[12] Consistent with this information-gathering authority's expansiveness, the government must satisfy only a minimal burden before it can enforce an IRS summons.

Specifically, the government need only make a prima facie case showing "[1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the [IRS] Commissioner's possession, and [4] that the administrative steps required by the Code have been followed."[13]

The required prima facie showing is not very demanding.[14] Often, the government can make the necessary showing by simply submitting an affidavit from the IRS agent who issued the administrative summons.[15]

Once the government makes its prima facie showing, the burden shifts to the responding party. At this point, the responding party must show that enforcing the summons would be an "abuse of the court's process" in order to defeat enforcement.[16] In contrast to the government's light burden, the responding party's burden is "a heavy one."[17]

---

[12] *Byers v. U.S. Internal Revenue Serv.*, 963 F.3d 548, 552 (6th Cir. 2020) (quoting *United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984)).

[13] *Id.* (quoting *United States v. Powell*, 379 U.S. 48, 57–58 (1964)) (numberings added; other alterations in original).

[14] *Id.* ("[T]his prima-facie burden 'isn't much of a hurdle.'") (quoting *2121 Arlington Heights Corp. v. I.R.S.*, 109 F.3d 1221, 1224 (7th Cir. 1997)).

[15] *United States v. Monumental Life Ins. Co.*, 440 F.3d 729, 733 (6th Cir. 2006); *Kondik v. United States*, 81 F.3d 655, 656 (6th Cir. 1996); *United States v. Will*, 671 F.2d 963, 966 (6th Cir. 1982).

[16] *Kondik*, 81 F.3d at 656 (citation omitted).

[17] *Id.* (citing *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 316 (1978)).

Case No. 1:23-mc-00037
GWIN, J.

### 1. Prima Facie Case

Respondent Eaton focuses its challenge solely on the prima facie case's relevance element. Eaton argues that the summonsed foreign employee performance evaluations are not relevant enough to the IRS's transfer pricing investigation to justify enforcing the IRS summons. The Magistrate Judge agreed. But in reaching that conclusion, the Magistrate Judge placed too high a burden on the government.

The Magistrate Judge applied a heightened relevance standard to the IRS's summons because the summons involved employee personnel records.[18] The Magistrate Judge required this heightened relevance standard in reliance upon a district court's decision in a previous IRS summons dispute between Eaton and the government—*Eaton I*.[19]

In *Eaton I*, Respondent Eaton argued that federal law requires a "*compelling* showing of relevance" before courts can order personnel records to be produced.[20] The *Eaton I* court accepted that argument, denying the IRS's request for employee performance evaluations because the IRS failed to "persuasively demonstrate[] the relevance of [an employee]'s performance evaluations."[21]

The Court disagrees with *Eaton I*. To justify the higher relevance standard, *Eaton I* cited to a non-binding district court case involving civil discovery.[22] And in defending the *Eaton I* standard, Respondent Eaton similarly relies on cases about civil discovery.[23]

---

[18] Doc. 17 at 5–9.
[19] *United States v. Eaton Corp.*, Nos. 12-mc-24, 12-mc-25, 12-mc-26, 12-mc-27, 2012 WL 3486910 (N.D. Ohio Aug. 15, 2012) ("*Eaton I*").
[20] *Id.* at *13.
[21] *Id.* at *14.
[22] *Id.* at *13 (citing *Miller v. Fed. Express Corp.*, 186 F.R.D. 376, 384–85 (W.D. Tenn. 1999)).
[23] Doc. 19 at 5–6 (collecting cases).

- 6 -

Case No. 1:23-mc-00037
GWIN, J.

Civil discovery, though, operates under a different framework than IRS summons enforcement actions. Congress has not provided the same "expansive" investigative authority to civil litigants that Congress gave to the IRS.

Civil litigants can only seek discovery that "is relevant . . . and proportional to the needs of the case."[24] Put differently, civil discovery weighs relevance against burden. By contrast, the IRS's summons authority is much broader.

For one, the IRS summons standard does not require a court to weigh relevance against burden. In fact, the Supreme Court has rejected a requirement that "the IRS must conduct its investigations in the least intrusive way possible."[25]

The IRS summons relevance standard is also less demanding than the civil discovery relevance standard. I.R.C. § 7602, which creates the IRS's summons authority, allows the IRS to request any documents that "*may* be relevant" to the IRS's investigation.[26] This means that "even *potential* relevance to an ongoing [IRS] investigation" justifies an IRS summons.[27] Put differently, the IRS "should not be required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense."[28]

Given that IRS summons authority is broader than civil discovery, there is little reason to import civil discovery limitations into the IRS summons context. In fact, the opposite is true: courts should avoid bringing civil discovery limitations into IRS summons enforcement actions. That is because, "[w]hile § 7602 is subject to the traditional privileges and

---

[24] Fed. R. Civ. P. 26(b)(1).
[25] *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 323 (1985).
[26] I.R.C. § 7602(a)(1) (emphasis added).
[27] *Arthur Young*, 465 U.S. at 814.
[28] *Id.*

Case No. 1:23-mc-00037
GWIN, J.

limitations, any other restrictions upon the IRS summons power should be avoided absent unambiguous directions from Congress."[29]

The Court is not aware of any an unambiguous Congressional instruction protecting employee personnel records from IRS summons, nor has Eaton pointed to one. And at least one court has explicitly rejected the argument that employee privacy concerns defeat an IRS summons.[30]

As that court observed, "IRS investigations 'unquestionably involve some invasion of privacy.'"[31] The IRS regularly handles sensitive and private taxpayer financial information. It would be strange to carve out employee personnel records for greater protection from IRS summons authority while allowing equally (or more) sensitive financial records to be requested under the usual low IRS summons relevance bar.

Applying the correct "may be relevant" standard, the Court finds that the government has made a prima facie relevance showing.

Through an IRS agent declaration, the government explained that, according to multiple Eaton employee interviews, Eaton's employee performance evaluations are likely to contain information about employees' work on the intellectual property at issue in this IRS investigation.[32] Specifically, the performance evaluations might quantify how much an employee matured a technology, track technology project milestones, or document how successfully an employee completed her projects.[33]

---

[29] *Arthur Young*, 465 U.S. at 816 (internal quotation marks and citations omitted).
[30] *2121 Arlington Heights*, 109 F.3d at 1225.
[31] *Id.* (quoting *United States v. Bisceglia*, 420 U.S. 141, 146 (1975)).
[32] Doc. 13-1 at ¶¶ 5–9.
[33] *Id.*

- 8 -

Case No. 1:23-mc-00037
GWIN, J.

The IRS agent said that this type of information could show how much control Eaton maintained over its intellectual property even after that intellectual property was transferred to Eaton's Irish affiliate.[34] In turn, information about Eaton's control level over the transferred intellectual property could help the IRS determine how much of that intellectual property's value should be attributed to Eaton.

The government did not need to establish relevance with any particular certainty. The government needed only to show that the performance evaluations sought *might* be relevant. The IRS's reasons for requesting those evaluations, backed by interviews, are enough to make out the necessary prima facie case.[35]

## 2. Burden Shifting

Respondent Eaton's two counterarguments against enforcement also do not meet Eaton's heavy burden to show an abuse of process.

To begin, Eaton argues that its employee performance evaluations are not relevant to the IRS's transfer pricing investigation. To make this argument, Eaton relies on affidavits from its Vice President of Tax. With those affidavits, Eaton's Vice President points to evidence suggesting that the requested performance evaluations do not contain the information that the IRS seeks.[36]

But Eaton's burden is not simply to negate the government's prima facie case.[37] Eaton must go further and show that there is an abuse of process. Perhaps a lack of relevance could

---

[34] Doc. 13-1 at ¶ 10.

[35] Respondent Eaton did not contest the other three prima facie elements, and the Court notes that the government satisfied those elements through an IRS agent's declaration. *See* Doc. 1-1.

[36] Doc. 16-1 at ¶¶ 6–7.

[37] Parties cannot offer opposing evidence to defeat a prima facie case. *See Prima Facie Case, Black's Law Dictionary* (11th ed. 2019) (noting that the prima facie standard tests whether the proponent of the prima facie case has "produc[ed] enough evidence to allow the fact-finder to infer the fact at issue," not whether the opposing party has rebutted the proponent's argument with the opposing party's own evidence); *cf. Cline v. Cath. Diocese of Toledo,* 206 F.3d 651, 663 n.7 (6th Cir. 2000) (collecting cases holding that courts should not consider a defendant's opposing evidence at the prima facie stage of

Case No. 1:23-mc-00037
GWIN, J.

support an abuse of process argument if the requested performance evaluations were so obviously irrelevant that the IRS's request would do nothing more than harass Eaton. That is not the case here.

At most, the competing IRS and Eaton declarations and affidavits show a legitimate disagreement about what information the evaluations contain and their relevance. Because § 7602 authorizes the IRS to summons even *potentially* relevant documents,[38] mere disagreement does not show an abuse of process. If the IRS has a good faith belief in the requested documents' relevance, § 7602 expressly allows the IRS to summons those documents even if the IRS's belief ends up being misplaced. As the Court discussed above, the government has met that low relevance bar.

Eaton's second counterargument fares no better. Eaton says that instead of producing the requested employee performance evaluations, Eaton is willing to make those employees available for interviews. Eaton suggests that the IRS's refusal to take Eaton's offer should defeat the government's enforcement action.

Again, this argument is not enough to show an abuse of process. The IRS has legitimate reasons to request the performance evaluations rather than employee interviews. Employee interviews might not be as useful as the contemporaneous employee performance evaluations because the employees' memories might have faded. And the performance evaluations might also help guide the IRS's questions during later employee interviews.

---

a Title VII *McDonnell Douglas* analysis). Rather, parties must show that the government's own affidavits and evidence are insufficient to establish a prima facie case. Therefore, Eaton's arguments based on Eaton's own opposing evidence go towards Eaton's burden to show abuse of process, not towards the government's prima facie burden.

[38] I.R.C. § 7602(a)(1) (the IRS can summons documents that "may be relevant" to the IRS's investigation).

Case No. 1:23-mc-00037
GWIN, J.

More fundamentally, the IRS does not need to conduct its investigation in the least intrusive way.[39]  There is no abuse of process when the IRS turns down a potentially less intrusive avenue for investigation.

Perhaps if the IRS's chosen investigative methods were significantly more intrusive than reasonable alternatives, that fact might support an abuse of process finding.  But that is not the case here.

In some ways, making employees available for interview is *more* intrusive than producing the employees' performance evaluations because such interviews distract the employees from their job duties.  And those distractions multiply if Eaton needs to take the time to prepare the employees for interviews as well.

Producing a small set of documents, on the other hand, would take less time and would allow Eaton's employees to continue working on their responsibilities.

Respondent Eaton is effectively arguing that the IRS must follow Eaton's preferred investigatory methods.  There is no authority justifying that stance.

*          *          *

The government has met its burden to show a prima facie case for enforcing the IRS summons at issue here.  And Eaton has failed to rebut that showing by demonstrating enforcement would be an abuse of process.  Therefore, the IRS can enforce its summons against Eaton.

---

[39] *Tiffany Fine Arts,* 469 U.S. at 323.

Case No. 1:23-mc-00037
GWIN, J.

### B. Foreign Law Considerations

Next, Eaton argues that whether the government has met its enforcement burden, European privacy law blocks Eaton from producing the foreign employee performance evaluations.

However, "[f]oreign 'blocking statutes' do not 'deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute.'"[40]

Although foreign law may bar an American court from ordering a document production, foreign law does so only when (1) producing the requested documents would violate foreign law, and (2) comity analysis weighs in favor of denying the requested documents.[41] The party opposing production bears the burden of satisfying this two-part test.[42]

#### 1. Foreign Privacy Law

Respondent Eaton says that producing the foreign employee performance evaluations would violate a European Union (EU) regulation known as the GDPR.[43]

The GDPR is a comprehensive privacy regulation that protects European citizens' personal data. The GDPR's scope is broad, covering "any information relating to an

---

[40] *Owen v. Elastos Found.*, 343 F.R.D. 268, 282 (S.D.N.Y. 2023) (quoting *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987)).

[41] *Kashef v. BNP Paribas S.A.*, No. 16-cv-3228 (AKH) (JW), 2022 WL 1617489, at *2 (S.D.N.Y. May 23, 2022) (citations omitted).

[42] *Knight Cap. Partners Corp. v. Henkel Ag & Co., KGaA*, 290 F. Supp. 3d 681, 689 (E.D. Mich. 2017) (citation omitted); *In re Air Crash at Taipei, Taiwan on Oct. 31, 2000*, 211 F.R.D. 374, 377 (C.D. Cal. 2002) (quoting *United States v. Vetco, Inc.*, 691 F.2d 1281, 1288 (9th Cir. 1981)).

[43] The IRS requested performance evaluations for two Indian employees not covered by the GDPR. While Eaton says that India recently passed a GDPR-like privacy law, that privacy law has not yet come into effect. So, Eaton must produce the Indian employees' performance evaluations because the government has met its enforcement burden.

- 12 -

Case No. 1:23-mc-00037
GWIN, J.

identified or identifiable natural person."[44]  Employee performance evaluations are protected

personal data under the GDPR's broad scope.

As relevant in this case, the GDPR generally prevents companies from transferring

European citizens' personal data outside of EU member states.[45]  This general prohibition on

transfer includes transfers to the United States.[46]

So, unless a GDPR exception (known as a derogation) applies, Respondent Eaton

would be violating the GDPR by producing its foreign employee performance evaluations to

the IRS.

Here, the GDPR Article 49(1)(d) derogation applies, which permits personal-data

transfers out of the EU when "the transfer is necessary for important reasons of public

interest."[47]

The European Data Protection Board has promulgated guidance regarding this

"important public interest derogation."[48]  In its guidance, the Data Protection Board explains

that this derogation has two elements: (1) that the transfer is necessary or legally required,

and (2) that the transfer is based on important public interest grounds.[49]

In this case, producing the foreign employee performance evaluations is legally

required because the government has satisfied its summons enforcement burden.

The remaining issue is whether such production is based on an important public

interest.  On this point, the Data Protection Board's guidance makes clear that "only public

---

[44] *In re Mercedes-Benz Emissions Litig.*, No. 16-cv-881 (KM) (ESK), 2020 WL 487288, at *1 (D.N.J. Jan. 30, 2020) (quoting GDPR Art. 4(1)).
[45] *Id.*
[46] *Id.*
[47] GDPR Art. 49(1)(d).
[48] Eur. Data Prot. Bd., *Guidelines 2/2018 on Derogations of Article 49 Under Regulation 2016/679* at 10–11, https://www.edpb.europa.eu/sites/default/files/files/file1/edpb_guidelines_2_2018_derogations_en.pdf [hereinafter *GDPR Guidance*].
[49] *Id.* at 10.

Case No. 1:23-mc-00037
GWIN, J.

interests recognized in [European] Union law or in the law of the Member State to which the [personal data's] controller is subject can lead to the application of this derogation."[50]

It is not enough that an EU member state and the country seeking the European personal data share a common public interest in the abstract.[51]  For example, the fact that both the United States and Ireland have an interest in accurately collecting taxes does not support applying the public interest derogation.

Rather, the public interest derogation applies only when "it can also be deduced from EU law or the law of the member state to which the controller is subject that such data transfers are allowed for important public interest purposes including in the spirit of reciprocity for international cooperation."[52]  "The existence of an international agreement or convention which recognises a certain objective and provides for international cooperation to foster that objective can be an indicator when assessing the existence of a public interest . . . as long as the EU or the Member States are a party to that agreement or convention."[53]

Such an international convention exists between Ireland (the EU member state where Eaton's foreign affiliate is located) and the United States.  Specifically, the two countries signed a tax convention in 1997.[54]

As the tax convention's preamble indicates, the convention's objective is "the prevention of fiscal evasion with respect to taxes on income and capital gains."[55]

---

[50] *GDPR Guidance* 10.
[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] *Convention Between the Government of the United States of America and the Government of Ireland for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital Gains*, S. Treaty Doc. No. 105-31, 1997 WL 602448 (July 28, 1997) ("*U.S.-Ireland Tax Convention*").
[55] *Id.* at *4.

Case No. 1:23-mc-00037
GWIN, J.

Significantly, Article 7 offers principles for how business profits should be attributed between affiliated U.S. and Irish entities,[56] the crux of the IRS's tax investigation in this case.

Moreover, Article 27 expressly provides for cooperation and information sharing between the United States and Ireland to achieve the tax convention's purposes.[57]

The U.S.-Ireland tax convention therefore satisfies the important public interest derogation. Eaton would not violate European law by producing foreign employee performance evaluations, and Eaton must produce those evaluations.

### 2. Comity Analysis

Even if producing the foreign employee performance evaluations would violate the GDPR, the comity analysis weighs in favor of enforcing the IRS summons. The comity analysis requires the Court to weigh five factors:

> (1) the importance to the litigation of the documents or other information requested;
>
> (2) the degree of specificity of the request;
>
> (3) whether the information originated in the United States;
>
> (4) the availability of alternative means of securing the information; and
>
> (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interest of the state where the information is located.[58]

Of these factors, balancing the relevant countries' national interests is the most important.[59] So, the Court begins with the countries' interests.

---

[56] *U.S.-Ireland Tax Convention*, 1997 WL 602448 at *9–10.

[57] *Id.* at *27–28.

[58] *Société Nationale*, 482 U.S. at 544 n.28 (citation omitted).

[59] *In re Grand Jury Investigation of Possible Violations of 18 U.S.C. § 1956 & 50 U.S.C. § 1705*, 381 F. Supp. 3d 37, 77 (D.D.C. 2019) (holding that "the interests of the relevant countries" is the "most important factor"), *aff'd sub nom. In re Sealed Case*, 932 F.3d 915 (D.C. Cir. 2019); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1476 (9th Cir. 1992) (the "balance of national interests" is "the most important factor"); *Inventus Power v. Shenzhen Ace Battery*, 339 F.R.D. 487. 504 (N.D. Ill. 2021) (quoting *Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548, 558 (S.D.N.Y. 2012)).

Case No. 1:23-mc-00037
GWIN, J.

The United States has a paramount interest in collecting taxes, including investigating

potential underpayment. That is because taxes and their collection are "the lifeblood of

government."[60] So, compared to civil discovery, "[IRS] summonses appear to serve a more

pressing national function."[61] And "[s]uch summonses are also more widely recognized in

the international community than the broad civil discovery permitted in American courts."[62]

Along those lines, Ireland has little interest in blocking the United States' tax

investigation. The U.S.-Ireland tax convention shows that Ireland has an interest in

cooperating with the United States to ensure that taxes are appropriately allocated between

the two countries.

True, the GDPR suggests that Ireland has an interest in protecting its citizens' private

information, such as the performance evaluations at issue here. But Ireland's tax cooperation

interest outweighs Ireland's privacy interest.

As discussed above, the GDPR's important public interest derogation allows

European entities to send personal data abroad to serve interests found in an EU member

state's treaty.[63] This shows that Ireland's specific treaty-based interests trump Ireland's

general privacy interest.

Even if the public interest derogation did not formally apply, the derogation's

existence suggests that Ireland's treaty-based interests at least significantly mitigate Ireland's

---

[60] *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350 (1977) (quoting *Bull v. United States*, 295 U.S. 247, 259 (1935));
*see also Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 21 (2000) (the government has a "vital interest . . . in acquiring
its lifeblood, revenue").
[61] *Vetco*, 691 F.2d at 1288.
[62] *Id.* (citations omitted).
[63] *Supra* Section II.B.1.

- 16 -

privacy interest. So, the United States' tax collection interest in this case would still be far greater than Ireland's countervailing privacy interests.[64]

Therefore, the fifth factor—the countries' interests—weighs strongly in favor of enforcing the IRS summons.

However, the first four factors mostly cancel each other out.

The first factor weighs against enforcement because the performance evaluations are not particularly important to the IRS's investigation. Although the government has shown that the evaluations may be relevant to the IRS investigation, that relevancy showing is weak.

The second factor weighs in favor of enforcement because the IRS summons is requesting a discrete and narrow document set. The IRS requested 43 total performance evaluations over a three-year period.[65] Because that number includes U.S. employee evaluations, the number of European employee evaluations at issue here is even less.

The third factor weighs against enforcement because the performance evaluations were created in Europe, not in the United States.

And the fourth factor weighs in favor of enforcement. Although Eaton offers employee interviews as an alternative to producing performance evaluations, the Court explained above that interviews are not a perfect substitute.[66] And the parties have not identified any other potential alternative to the performance evaluations.

Because two of the first four comity factors weigh in favor of enforcement while two weigh against, the first four factors are roughly are roughly neutral when taken together. At best for Eaton, the four factors weigh slightly against enforcement.

---

[64] The government has also offered to allow Eaton to redact irrelevant but private information from the employee performance evaluations. Doc. 18 at 11 n.6. This further reduces Ireland's privacy interest in this case.
[65] Doc. 1-1 at PageID #: 9–12.
[66] *Supra* Section II.A.2.

Case No. 1:23-mc-00037
GWIN, J.

But the fifth comity factor weighs strongly in favor of enforcement. Adding the fifth (and most important) comity factor into the mix tilts the weighing towards enforcement.

For these reasons, the comity analysis favors enforcing the IRS summons.

### III.    CONCLUSION

The Court **GRANTS** the government's petition to enforce the IRS summons. Because the government has offered to allow Eaton to redact some irrelevant but private information from the requested performance evaluations, the parties shall submit a stipulated protective order to the Court within **fourteen (14) days** of this Order. The stipulated protective order should specify the redaction scope and any other privacy limitations that the parties agree are appropriate. Eaton shall produce the requested foreign employee performance evaluations to the IRS within **fourteen (14) days** after the Court enters the parties' stipulated protective order.

IT IS SO ORDERED.

Dated: May 16, 2024                              *s/     James S. Gwin*
                                                 JAMES S. GWIN
                                                 UNITED STATES DISTRICT JUDGE

**SUPPLEMENTAL DECLARATION OF SENIOR IRS REVENUE AGENT
KEITH S. GRIFFITH II, DIST. CT. DOC. 13-1 (NOV. 22, 2023)**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 1:23-mc-37-JG |
| Petitioner, | ) | |
| | ) | Hon. James S. Gwin, U.S.D.J. |
| v. | ) | |
| | ) | Hon. Jonathan D. Greenberg, U.S.M.J. |
| EATON CORPORATION, | ) | |
| | ) | |
| Respondent. | ) | |

**DECLARATION OF SENIOR IRS REVENUE AGENT KEITH S. GRIFFITH II**

I, Keith S. Griffith II, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a duly commissioned Senior Revenue Agent employed in the Internal

Revenue Service's Transfer Pricing Operations group, Large Business & International Division,

1919 Smith Street, Houston, Texas 77002.

2.      In my capacity as Senior Revenue Agent, I am conducting an investigation into

the federal tax liability of Eaton Corporation ("Eaton") for the 2017, 2018, and 2019 tax years.

3.      Depending on the results of the investigation, it could result in several billion

dollars of additional tax, penalties and interest.

4.      Through that investigation, I have conducted interviews of various Eaton

employees and assisted other IRS personnel with interviews of Eaton employees.

5.      In those interviews, I and my colleagues have asked some Eaton employees what

kinds of information might be found in their annual performance evaluations.

6.      One senior Eaton employee testified that Eaton's performance evaluations

typically include "some level of quantitative reporting as to how [the employee] matured

technology or did what we said at [the] beginning of the year was your goals"; in some instances,

an evaluation might also include "a guess at the revenue we thought we were going to hit as just a place holder that represents the maturity of the product."

7.    Another employee, a vice president, testified that Eaton's annual performance evaluations would include the employee's "accomplishments" for the year, and that Eaton uses the evaluations to "track milestones in the projects because that's how you make people accountable."

8.    Another Eaton employee, a senior vice president, testified that evaluations were used to "look at the objectives, and we can state, did you hit them and then say, okay, you did or you didn't."

9.     Similarly, an engineering manager confirmed that annual evaluations "definitely" contained information about "specific projects, products, product lines" and further added that, "[i]f an employee was assigned to work on a certain project during the year, . . . he or she's going to be evaluated on how well he did towards completing that project."

10.    Based on these and other interviews, the IRS believes the employee evaluations requested by the summons in this case are likely to contain project-specific, contemporaneous documentation of employee roles and responsibilities for the employees at issue. I believe this kind of information may be relevant to the audit because it may help show what kind of control Eaton continued to exercise over the transferred intellectual property assets after they were transferred to a lower-tax jurisdiction (Ireland).

11.    To develop the list of employees whose evaluations are sought by the summons, the IRS used a spreadsheet that Eaton produced to the IRS that identified thousands of Eaton global R&D personnel, ranked by authority with level 2 employees (of which there was only one, Eaton's CTO) being the highest-ranked and level 12 employees the lowest. The IRS then

filtered that list down to all level 3 employees (during the 2017 through 2019 years) and all level 4 employees based in Ireland (for the 2018 and 2019 years only, as there were no Ireland-based level 4 employees for the entirety of the 2017 year, the year the transaction at issue took place). The resulting list produced the set of 43 annual evaluations at issue.

12.     I have reviewed the affidavit of Minghe (Marvin) Bai that Eaton filed with the Court at ECF No. 12-1. Paragraph 17 of that affidavit states that "Eaton has also remained willing to make its foreign employees and/or their supervisors available for virtual interviews with the IRS in lieu of providing the performance evaluations."

13.     The IRS has decided to defer interviewing the foreign employees whose evaluations are requested by the summons until after we (hopefully) obtain their evaluations because we believe that reviewing the evaluations will help us make more informed decisions about which of those employees to interview and will help us better prepare for the interviews we decide to conduct.

14.     For example, given the passage of time, the IRS is concerned that the employees at issue might not recall exactly what projects they worked on during the 2017-2019 years, or might not remember with precision where in the development cycle those projects were during the 2017-2019 years. If we are able to obtain the evaluations, we will be able to use them to refresh the employees' recollections about these issues and can otherwise ask more effective questions in the interviews we choose to prioritize.

15.     For that reason, interviews of the foreign employees would not on their own be an adequate substitute for production of the requested evaluations. The IRS believes it would be more effective to first obtain the evaluations, then make decisions about which foreign employees to interview and how to proceed with those interviews.

16.     Also, interviewing an employee's supervisor is not always an acceptable substitute for interviewing the employee himself or herself. We believe the evaluations at issue will likely contain relevant information in their own right, but they will also help us determine how best to allocate our investigative resources.

17.     The IRS also does not view obtaining the employees' job descriptions or written statements from Eaton about their roles and responsibilities as acceptable substitutes for the evaluations. A job description will not tell us what an employee actually worked on and when. And the entire reason for requesting the evaluations is to obtain contemporaneous documentation of the employees' roles and responsibilities. A statement prepared by Eaton as part of the audit will not serve the same purpose.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___17___ day of ___November___, 2023.

_____
KEITH S. GRIFFITH II

**AFFIDAVIT OF MINGHE (MARVIN) BAI,
DIST. CT. DOC. 12-1 (NOV. 15, 2023)**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:23-mc-00037-JG |
|     Petitioner, | |
| | Judge James S. Gwin |
|     v. | |
| | Magistrate Judge Jonathan D. Greenberg |
| EATON CORPORATION, | |
|     Respondent. | |

**AFFIDAVIT OF MINGHE (MARVIN) BAI**

I, Marvin Bai, swear and affirm under penalty of perjury that the following statements are true and accurate to the best of my knowledge:

1.      I have personal knowledge of the matters set forth in this affidavit and, if called upon, could and would testify concerning the same.

2.      I am an employee of Eaton Corporation ("Eaton") and have been employed by Eaton since November 2015.

3.      I am currently Vice President of Tax, overseeing Eaton's United States Tax Controversy team, a position I have held since June 2018.

4.      In my role as Vice President of Tax, I am responsible for overseeing Eaton's responses to audit-related correspondence from the IRS.

5.      Eaton has been under audit by the IRS for well over a decade, with in-depth examinations of each tax year from 2005 through 2019.

6.      In the current audit of Eaton's 2017 through 2019 tax years, Eaton has responded to over 400 IRS "Information Document Requests" ("IDRs") since July 1, 2021.  In response to

1

the IRS's first IDR alone (which was labeled "TPP-001"), Eaton produced nearly 9,000 pages of responsive documents. Altogether, Eaton has provided over 13 GB of data to the IRS in the current audit, including over 44,000 pages of PDF documents in addition to Excel and other types of files.

7.      In addition to Eaton's IDR responses, in the current audit Eaton has conducted six presentations for the IRS on requested topics, provided the IRS in-person tours of six Eaton facilities in four different cities, and allowed the IRS forty interviews (transcribed and under oath) with Eaton employees and service providers, including six interviews with individuals in foreign countries or Puerto Rico.

8.      The present summons enforcement dispute relates to an IDR the IRS presented to Eaton in draft form on October 20, 2022. That IDR requested, among other things, job descriptions and annual performance evaluations during the years 2017 through 2019 for seventeen foreign Eaton employees. These employees were based in Ireland (13), Austria (1), the Czech Republic (1), and India (2). Eaton provided the job descriptions for each employee but has not provided the performance evaluations.

9.      Based on my experience at Eaton, employee performance evaluations are character- or byte-limited, and contain qualitative reviews from the employees and their supervisors. The typical performance evaluation also contains sensitive information regarding job performance.

10.      Eaton keeps all personnel files, including performance evaluations, strictly confidential.

11.      For each of the aforementioned foreign employees who are residents of EU member states, Eaton is subject to the EU's "General Data Protection Regulation" ("GDPR"), which imposes serious fines and administrative penalties for unlawful disclosures of confidential personnel records.

12.     On October 27, 2022, Eaton representatives met with the IRS exam team to explain why Eaton could not produce the requested foreign employee performance evaluations.

13.     As an alternative to providing the evaluations, Eaton has offered to answer in writing any questions the IRS has regarding the foreign employees' job functions, projects, and responsibilities, and to make its foreign employees and/or their supervisors available to the IRS for transcribed virtual interviews.

14.     On April 10, 2023, the IRS interviewed the manager and direct supervisor of many of the foreign employees in question.  The IRS declined Eaton's offer of an in-person interview, instead conducting the interview virtually.  Eaton provided the full amount of time for this interview as was requested by the IRS.  In the two-hour interview, the IRS did not ask questions about the foreign employees at issue or their roles or projects, with the exception of a few questions relating to one intellectual property attorney.  The interviewee substantively and fully answered each such question.

15.     Eaton has also implored the IRS to interview the supervisor of many of the Irish employees whose performance evaluations have been requested in this case.  The IRS initially requested an interview with this supervisor (whose performance evaluation has also been summonsed and is at issue) but later withdrew the request and has since declined Eaton's repeated offers of a virtual interview.

16.     Eaton has at all times remained willing to provide written explanations of any requested details regarding its foreign employees' job functions or projects.

17.     Eaton has also remained willing to make its foreign employees and/or their supervisors available for virtual interviews with the IRS in lieu of providing the performance evaluations.  Some of the foreign employees at issue are no longer employed by Eaton, but in all

- SA46 -

cases either the employee, the employee's direct supervisor, or both remain at Eaton available for a virtual interview. The IRS has declined Eaton's offers of these interviews.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

 

_____
Marvin Bai
Vice President of Tax, Eaton Corporation

Dated: _11/15/2023_ _____

4

**DECLARATION OF SENIOR IRS REVENUE AGENT
KEITH S. GRIFFITH II, DIST. CT. DOC. 1-1 (JUNE 9, 2023)**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | )    Case No. |
|      Petitioner, | ) |
| | ) |
|      v. | ) |
| | ) |
| EATON CORPORATION, | ) |
| | ) |
|      Respondent. | ) |
| ———————————————— | ) |

## DECLARATION OF SENIOR IRS REVENUE AGENT KEITH S. GRIFFITH II

I, Keith S. Griffith II, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am a duly commissioned Senior Revenue Agent employed in the Internal Revenue Service's Transfer Pricing Operations group, Large Business & International Division, 1919 Smith Street, Houston, Texas 77002.

2.     In my capacity as Senior Revenue Agent, I am conducting an investigation into the federal tax liability of Eaton Corporation (Eaton) for the 2017, 2018, and 2019 tax years.

3.     More specifically, the IRS is investigating whether Eaton's sale of certain intellectual property assets to non-U.S. affiliates and subsequent royalty payments to those affiliates were conducted on an arm's length basis as required by section 482 of the Internal Revenue Code.

4.     In furtherance of the above investigation and in accordance with 26 U.S.C. § 7602, on February 15, 2023, I issued an Internal Revenue Service summons to Eaton requiring an Eaton representative to appear before me or my designee on March 2, 2023, at 600 North Travis Street, #6350, Houston, Texas, to give testimony and produce for examination certain books and records as described in the summons. The summons also informed Eaton that it could

1

produce the requested documents in lieu of providing a representative to testify. A true and correct copy of the summons is attached hereto as Exhibit A.

5. On February 15, 2023, IRS Supervisory Tax Law Specialist Dennis K. Warren served the Summons by handing it to Mary Kim Elkins, an Eaton officer. A true and correct copy of the completed *Service of Summons, Notice and Recordkeeper Certificates* form is attached hereto as Exhibit B.

6. On March 13, 2023, the IRS Office of Chief Counsel sent a "last chance" letter informing Eaton that legal proceedings would be initiated to compel compliance with the Summons unless Eaton provided the requested documents and testimony by March 27. A true and correct copy of the last chance letter is attached hereto as Exhibit C.

7. The books and records responsive to the summons attached as Exhibit A may be relevant to, and can reasonably be expected to cast light upon, the investigation described in Paragraph 3, above.

8. All administrative steps required by the Internal Revenue Code for issuance of a summons have been taken.

9. The documents sought by the summons are not already in the possession of the Internal Revenue Service.

10. Eaton did not appear before the IRS or produce the requested documents on the date listed on the summons.

11. As of date I signed this declaration, Eaton has not produced the documents sought by the summons.

12. As of the date that the summons was issued and served, and as of the date I signed this declaration, no recommendation for criminal prosecution of Eaton has been made by the IRS

2

to the United States Department of Justice. In addition, no Department of Justice referral, as

described in 26 U.S.C. § 7602(d), is in effect with respect to Eaton.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _____9 th_____ day of _____June_____, 2023.

KEITH S. GRIFFITH II

3

# Exhibit A

# **Summons**

In the matter of   Eaton Corporation and Includible Subsidiaries (a consolidated group), 601 Travis Street, #1850, Houston TX 77002

Internal Revenue Service *(division)*   Large Business and International

Industry/Area *(name or number)*   Transfer Pricing Practice

Periods  Tax Years Ending December 31, 2017, December 31, 2018, and December 31, 2019

## **The Commissioner of Internal Revenue**

To  Eaton Corporation and Includible Subsidiaries (a consolidated group)

At  601 Travis Street, #1850, Houston TX 77002

You are hereby summoned and required to appear before  Keith S. Griffith II, Badge #1000534593, or his designee
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books,
records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any
offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the
periods shown.

In lieu of personal appearance, you may have the following requested documents delivered to Kevin W. Terpening, Senior Revenue Agent, Badge
#1000326198, at 600 North Travis Street, #6350, Houston TX 77002.

Produce for examination the annual performance evaluation for each employee identified under "Employee" in the third column, for the year
identified under "Year" in the first column, of the table on each page in Attachment 1. For certain employees, more than one year's evaluations are
requested.

The employees listed in Attachment 1 represent a subset of those listed in "IDR TPP-063_Exhibit B", which was provided with Information
Document Request TPP-084. See attachment 2.

**Do not write in this space**

**Business address and telephone number of IRS officer before whom you are to appear**
1919 Smith Street, Houston, TX 77002, MS-4407HOU

**Place and time for appearance at**  600 North Travis Street, #6350, Houston TX 77002

| on the | 2nd | day of | March | , | 2023 | at | 3:00 | o'clock P | .m. |
| | | | | | *(year)* | | | | |

**Issued under authority of the Internal Revenue Code this**   15   day of   February   ,   2023
*(year)*

| Signature of issuing officer | Keith S. Griffith II | Digitally signed by Keith S. Griffith II Date: 2023.02.14 10:59:38 -08'00' | Title |
| | | | Senior Revenue Agent, Badge #1000534593 |
| Signature of approving officer *(if applicable)* | | | Title |
| | | | Supervisory Tax Law Specialist, Badge #1001717892 |

Form **2039** (Rev. 3-2020)    Catalog Number 21405J      publish.no.irs.gov      Department of the Treasury - Internal Revenue Service
**Original** — to be kept by IRS

**ATTACHMENT 1 of Summons to Eaton Corporation dated Feb. 15, 2023.**

| YEAR | ACTIVITY_CENTER_DESC | EMPLOYEE | JOB TITLE | ORG/LOCATION | SUPERVISOR_NAME |
|---|---|---|---|---|---|
| 2017 | R & D - Corporate | Mr. Sudhakar Potukuchi | VP.ENG.No Sub-Function. | 0238 CP IN CTO EIEC Pune ENG | Ramakrishnan, Mr. Ramanath Iyer |
| 2017 | Office of CTO | Herbst, Mr. Christopher A. | Director.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2017 | Allocated R & D #6 | Froehlich, Mr. Michael John | Director.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2017 | Controls - Decision & Reliability | Nowak, Mr. Michael P | Senior Specialist.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2017 | Prod Line Engineering #20 | Piyabongkarn, Mr. Damrongrit (Neng Piyabongkarn) | Manager.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2017 | Service Center R & D  #3 | Hetzmannseder, Doctor Engelbert Engelbert | Director.ENG.No Sub-Function. | 0011 GCP AT EMEA Vienna OFC | Ramakrishnan, Mr. Ramanath Iyer |
| 2017 | FFC Technology | Garimella, Mr. Srinivas S | Senior Manager.ENG.No Sub-Function. | 0271 CP US AMCoE Southfield MI ENG | Ramakrishnan, Mr. Ramanath Iyer |
| 2017 | Office of Director of R & D | Stamenkovic, Igor | Director.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2017 | Controls - Decision & Reliability | Yousuf, Ms. Aisha (Aisha) | Specialist.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2017 | Office of Director of R & D | Carroll, Mr. Jason William (Jason) | Director.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2017 | Office of CTO | Natarajan, Mr. Kalyanasundaram (Kalyan) | Senior Manager.FIN.Financial Planning. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |

**ATTACHMENT 1 of Summons to Eaton Corporation dated Feb. 15, 2023.**

| YEAR | ACTIVITY_CENTER_DESC | EMPLOYEE | JOB TITLE | ORG/LOCATION | SUPERVISOR_NAME |
|---|---|---|---|---|---|
| 2018 | R & D - Corporate | Mr. Sreekumar Cherilkunnil Krishna Panicker | Director.ENG.No Sub-Function. | 0238 CP IN CTO EIEC Pune ENG | Ramakrishnan, Mr. Ramanath Iyer |
| 2018 | Office of CTO | Herbst, Mr. Christopher A. | Director.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2018 | Allocated R & D #6 | Froehlich, Mr. Michael John | Director.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2018 | Service Center R & D #3 | Hetzmannseder, Doctor Engelbert Engelbert | Director.ENG.No Sub-Function. | 5088 ES AT EMEA PDCD SLRY Vienna HQ | Ramakrishnan, Mr. Ramanath Iyer |
| 2018 | Office of Director of R & D | Stamenkovic, Igor | Director.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2018 | Office of Director of R & D | Carroll, Mr. Jason William (Jason) | Director.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2018 | Product Integrity | Tyler, Ms. Carole Carole | Coordinator.BSVC.Facility Services. | 0510 CP IE Intelligent Power ENG | Ramakrishnan, Mr. Ramanath Iyer |
| 2018 | Service Center R & D #5 | Kelly, Mr. Mark | Director.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Ramakrishnan, Mr. Ramanath Iyer |
| 2018 | Service Center R & D #1 | Nolan, Mr. Keith | Manager.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Kelly, Mr. Mark |
| 2018 | Service Center R & D #3 | Berlingerio, Mr. Michele | Manager.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Kelly, Mr. Mark |
| 2018 | Service Center R & D #2 | Ryan, Mr. Eugene | Manager.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Kelly, Mr. Mark |
| 2018 | Service Center R & D #4 | Feeney, Mr. Brendan Brendan | Engineer.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Kelly, Mr. Mark |
| 2018 | Service Center R & D #4 | Byrne, Ms. Laura | Engineer.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Kelly, Mr. Mark |
| 2018 | Service Center R & D #5 | Carr, Mr. Hugh Martin | Manager.ENG.Product/Program Management. | 0510 CP IE Intelligent Power ENG | Kelly, Mr. Mark |

**ATTACHMENT 1 of Summons to Eaton Corporation dated Feb. 15, 2023.**

| YEAR | ACTIVITY_CENTER_DESC | EMPLOYEE | JOB TITLE | ORG/LOCATION | SUPERVISOR_NAME |
|---|---|---|---|---|---|
| 2019 | R & D - Corporate | Mr. Sreekumar Cherilkunnil Krishna Panicker | Director.ENG.No Sub-Function. | 0238 CP IN CTO EIEC Pune ENG | Ramakrishnan, Mr. Ramanath Iyer |
| 2019 | Office of CTO | Herbst, Mr. Christopher A. | Director.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2019 | Office of Director of R & D | Trujillo Rosales, Mr. Jose Antonio | Manager.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2019 | New Product R & D #1 | Janík, Mr. Luděk | Manager.ENG.No Sub-Function. | 0407 GCP CZ INNOV CTO EEEC Prague OFC | Ramakrishnan, Mr. Ramanath Iyer |
| 2019 | Office of Director of R & D | Carroll, Mr. Jason William (Jason) | Director.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2019 | Product Integrity | Tyler, Ms. Carole Carole | Coordinator.BSVC.Facility Services. | 0510 CP IE Intelligent Power ENG | Ramakrishnan, Mr. Ramanath Iyer |
| 2019 | Service Center R & D #5 | Kelly, Mr. Mark | Director.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Ramakrishnan, Mr. Ramanath Iyer |
| 2019 | Service Center R & D #7 | Harte, Mr. Seán Paul | Director.LAW.Intellectual Property. | 0510 CP IE Intelligent Power ENG | Ramakrishnan, Mr. Ramanath Iyer |
| 2019 | Office of Director of R & D | Jennings, Mr. John Norman | Director.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2019 | Digital Healthcare | Lassance Dibbin, Ms. Luciana | Senior Administrative Assistant.SCM.No Sub-Function. | 0004 CP US Cleveland OH EC | Branco, Mr. Rogerio |
| 2019 | Service Center R & D #5 | Geraghty, Ms. Aoife Aoife | Executive Assistant.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Tyler, Ms. Carole Carole |
| 2019 | Transmission Automation | Mccann, Mr. Simon | Lead Analyst.FIN.Accounting. | 0510 CP IE Intelligent Power ENG | Kavanagh, Mr. John John |
| 2019 | Service Center R & D #1 | Nolan, Mr. Keith | Manager.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Kelly, Mr. Mark |
| 2019 | Service Center R & D #3 | Berlingerio, Mr. Michele | Manager.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Kelly, Mr. Mark |
| 2019 | Service Center R & D #2 | Ryan, Mr. Eugene | Manager.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Kelly, Mr. Mark |
| 2019 | Service Center R & D #5 | Carr, Mr. Hugh Martin | Manager.ENG.Product/Program Management. | 0510 CP IE Intelligent Power ENG | Kelly, Mr. Mark |
| 2019 | Service Center R & D #4 | Tandon, Mr. Om Om | Specialist.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Kelly, Mr. Mark |
| 2019 | Service Center R & D #7 | Farrell, Ms. Leona | Director.HR.Corporate.Site | 0510 CP IE Intelligent Power ENG | Peterson, Mr. Steven E. |

**ATTACHMENT 2 of Summons to Eaton Corporation dated Feb. 15, 2023**

| Form **4564**<br>(Rev. September 2006) | Department of the Treasury — Internal Revenue Service<br>**Information Document Request** | Request Number<br>TPP-84 |
|---|---|---|

| To: *(Name of Taxpayer and Company Division or Branch)*<br>**EATON US HOLDINGS INC**<br>601 Travis St.<br>Suite 1850<br>Houston, Texas 77002<br><br>*Please return Part 2 with listed documents to requester identified below* | Subject<br>Transfer Pricing- R&D Personnel Information |
|---|---|

| | | |
|---|---|---|
| | SAIN Number<br>706.10 | Submitted To:<br>Ching, Jason |
| | Dates of Previous Requests | |

Description of documents requested

**Tax Years:** 2017-2019

**Taxpayers:** 1) Eaton US Holdings Inc. & Includible Subs; 2) Eaton Industrial Corporation & Includible Subs; and 3) Eaton Corporation & Includible Subs (collectively referred to as "Eaton").

**Issue:** Transfer Pricing - R&D Personnel Information

A draft IDR meeting was conducted with the Taxpayer on 10/20/2022 and the IDR Taxpayer feedback meeting was conducted on 10/XX/2022.

**Purpose:** The purpose of this request is to gather facts regarding intercompany pricing related to the 201712, 201812, and 201912 audit cycle. Specifically, to gather additional research and development ("R&D") personnel information related to the 2017 intangible property ("IP") sale of U.S. owned technology to Eaton Intelligent Power Limited ("EIPL") and the subsequent license of technology back to the U.S. in 2018 and 2019.

If the requested documents are in the possession or custody of Eaton Corporation, plc or any legal entity within Eaton Corporation, plc's chain of ownership, please secure the requested documents from Eaton Corporation, plc and provide them to the IRS examination team. If the Taxpayer asserts privilege rather than providing the requested information or documents, please contact the IRS examination team to discuss the elements of a privilege log prior to finalizing and providing the Taxpayer's response to the Information Document Request.

**Description of Documents/Information Requested:**

Please provide a version of this material in electronic format, such as a MS Word file or PDF that is both text searchable and text copiable. Any material in the form of a spreadsheet should be left in native format (including underlying formulas).

Information Due By 12/05/2022    At Next Appointment ☐    Mail in ☐

| | | | |
|---|---|---|---|
| **From:** | Name and Title of Requester<br>Griffith II, Keith S<br><br>Internal Revenue Agent | Employee ID number<br>1000534593 | Date *(mmddyyyy)*<br>10/27/2022 |
| | Office Location<br>1919 Smith<br>Houston, Texas 77002-8049 | | Telephone Number<br>346-227-6928 |

Catalog Number 23145K        www.irs.gov        Part 1 - Taxpayer's File Copy        Form **4564** (Rev. 9-2006)

**ATTACHMENT 2 of Summons to Eaton Corporation dated Feb. 15, 2023**

| Form **4564**<br>(Rev. September 2006) | Department of the Treasury — Internal Revenue Service<br>**Information Document Request** | Request Number<br>TPP-84 |
| --- | --- | --- |

Please provide the following:

IDR TPP-63 (Attachment 1 for reference) requested information related to R&D personnel.

Taxpayer response to IDR TPP-63 indicates Chief Technology Officer ("CTO"), Mr. Ramanath Ramakrishnan, is an employee of region "America," country "US," whose primary responsibility is "Corporate Americas Region." .

Please respond to the following:

1. What is the office address of Mr. Ramakrishnan for the years under examination?

2. Where was Mr. Ramakrishnan physically employed during the years under examination?

3. What percent of time did Mr. Ramakrishnan spend in Ireland in the years under examination? Indicate your response by tax year: 2017, 2018, and 2019.
    a. Provide evidence supporting the percentage indicated in your response to Item 3, above, e.g. employee calendar.

4. In the years under examination, did any of Mr. Ramakrishnan's visits to Ireland relate to discussions or meetings concerning the IP transferred to EIPL in 2017?
    a. If yes, identify the visits and all relevant meeting dates.
    b. Provide evidence of the visits and the meetings, including but not limited to:
        • Calendar invites related to meetings.
        • Attendees of the meetings.
        • Meeting agendas.
        • Minutes of the meetings.

5. Your response to IDR TPP-63, with respect to Exam's requested employee secondment data, states: ***"The Human Resources department that supplied this data does not track whether an employee is seconded or transferred between entities. This departments only tracks certain movements including termination, transfer to a different division, and assignment changes."*** Indicate the department(s) responsible for tracking employee secondment data. If this response varies by/for department, provide specificity as to where this data is kept by/for department for the personnel requested in IDR TPP-63.

| Information Due By | 12/05/2022 | | At Next Appointment | ☐ | Mail in | ☐ |
| --- | --- | --- | --- | --- | --- | --- |

| **From:** | Name and Title of Requester<br>Griffith II, Keith S<br><br>Internal Revenue Agent | Employee ID number<br>1000534593 | Date *(mmddyyyy)*<br>10/27/2022 |
| --- | --- | --- | --- |
| | Office Location<br>1919 Smith<br>Houston, Texas 77002-8049 | | Telephone Number<br>346-227-6928 |

| Catalog Number 23145K | www.irs.gov | Part 1 - Taxpayer's File Copy | Form **4564** (Rev. 9-2006) |
| --- | --- | --- | --- |

**ATTACHMENT 2 of Summons to Eaton Corporation dated Feb. 15, 2023**

| Form **4564** (Rev. September 2006) | Department of the Treasury --- Internal Revenue Service **Information Document Request** | Request Number **TPP-84** . |
|---|---|---|

6. Provide the secondment data requested in IDR TPP-63 for all employees, specifically items "e" and "f" from IDR TPP-63 follow-up:
   - Item e: Is the employee transferred or seconded? Please respond with yes or no.
   - Item f: Entity from where employee is being seconded/transferred (indicate the entity from where the employee is coming).

7. Provide all secondment, transfer, or temporary work assignment agreements (including amendments) for Mr. Ramakrishnan for each year under examination. If not provided in the agreements, identify the start/end date of the secondment, transfer or temporary work assignment.

8. Provide all secondment, transfer, or temporary work assignment agreements (including amendments) for all "Level 3" employees identified in your response to IDR TPP-63 file "IDR TPP-063_Exhibit B" for each year under examination. If not provided in the agreements, identify the start/end date of the secondment, transfer, or temporary work assignment.

9. Provide job descriptions for all "Level 3" employees identified in your response to IDR TPP-63 file "IDR TPP-063_Exhibit B" for each year under examination. Include the following:
   - Public recruitment announcements for the position
   - Internal job postings related to the position
   - Defined core competencies for the position (e.g. Human Resources definitions of the position's core competencies or requirements for the position role (certification, knowledge, experience, etc.))

10. Provide job descriptions for all "Level 4" employees coded to country "IE" identified in your response to IDR TPP-63 file "IDR TPP-063_Exhibit B" for each year under examination. Include the following:
   - Public recruitment announcements for position
   - Internal job postings related to the position
   - Defined core competencies for the position (e.g. Human Resources definitions of the position's core competencies or requirements for the position role (certification, knowledge, experience, etc.))

11. Provide annual performance evaluations for employees identified in Items 9 and 10, above for each tax year under examination.

The IRS examination team will review the response to this IDR for completeness within ten calendar days from the day of receipt.

| Information Due By 12/05/2022 | | At Next Appointment ☐ | Mail in ☐ |
|---|---|---|---|

| From: | Name and Title of Requester Griffith II, Keith S Internal Revenue Agent | Employee ID number 1000534593 | Date *(mmddyyyy)* 10/27/2022 |
|---|---|---|---|
| | Office Location 1919 Smith Houston, Texas 77002-8049 | | Telephone Number 346-227-6928 |

Catalog Number 23145K     www.irs.gov     Part 1 - Taxpayer's File Copy     Form **4564** (Rev. 9-2006)

# Exhibit B

## Service of Summons, Notice and Recordkeeper Certificates
### (Pursuant to Section 7603, Internal Revenue Code)

I certify that I served the summons shown on the front of this form on

| Date | Time |
|---|---|
| 02/15/2023 | 8:30 AM |

**How Summons Was Served**

[X] 1. I certify that I handed a copy of the summons, which contained the attestation required by § 7603, to the person to whom it was directed

[ ] 2. I certify that I left a copy of the summons, which contained the attestation required by § 7603, at the last and usual place of abode of the person to whom it was directed. I left the copy with the following person *(if any)*

[ ] 3. I certify that I sent a copy of the summons, which contained the attestation required by § 7603, by certified or registered mail to the last known address of the person to whom it was directed, that person being a third-party recordkeeper within the meaning of § 7603(b). I sent the summons to the following address

[ ] 4. I certify that I served a copy of the summons, which contained the attestation required by § 7603, by a method not listed above that is in conformity with established IRS procedures to the person to whom it was directed and with the consent of the witness, *(e.g. facsimile transmission)*

| Signature | Title |
|---|---|
| | Supervisory Tax Law Specialist, TPP Team 1458 |

5. This certificate is made to show compliance with IRC Section 7609. This certificate does not apply to summonses served on any officer or employee of the person to whose liability the summons relates nor to summonses in aid of collection, to determine the identity of a person having a numbered account or similar arrangement, or to determine whether or not records of the business transactions or affairs of an identified person have been made or kept.

I certify that, within 3 days of serving the summons, I gave notice (Part D of Form 2039) to the person named below on the date and in the manner indicated.

| Date of giving notice | Time |
|---|---|
| | |

Name of noticee

Address of noticee *(if mailed)*

**How Notice Was Given**

[ ] I gave notice by certified or registered mail to the last known address of the noticee

[ ] I left the notice at the last and usual place of abode of the noticee. I left the copy with the following person *(if any)*

[ ] I gave notice by handing it to the noticee

[ ] In the absence of a last known address of the noticee, I left the notice with the person summoned

[X] No notice is required

| Signature | Title |
|---|---|
| | Supervisory Tax Law Specialist, TPP Team 1458 |

I certify that the period prescribed for beginning a proceeding to quash this summons has expired and that no such proceeding was instituted or that the noticee consents to the examination.

| Signature | Title |
|---|---|
| | Supervisory Tax Law Specialist, March 8, 2023 |

Form **2039** (Rev. 3-2020)   Catalog Number 21405J   publish.no.irs.gov   Department of the Treasury - **Internal Revenue Service**

# Exhibit C



OFFICE OF THE CHIEF COUNSEL

**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
OFFICE OF DIVISION COUNSEL
LARGE BUSINESS & INTERNATIONAL
8701 S. GESSNER, SUITE 710
HOUSTON, TEXAS 77074
(281) 721-7380
EFAX: (855) 633-0095

March 13, 2023

CC:LB&I:4:HOU:1:DQCao
GL-104917-23

**Via UPS**

Eaton Corporation
1000 Eaton Blvd.
Cleveland, OH 44122

Re: Summons
Date served: February 15, 2023
Appearance Date: March 2, 2023

Attention: Mary Kim Elkins
Senior Vice President,
Taxes and Finance Technology

Or: Corporate Officer

Dear Ms. Elkins or Corporate Officer:

The Commissioner of Internal Revenue has notified our office that you did not comply with the provisions of the Summons (copy enclosed) served on you on February 15, 2023. Under the terms of the Summons, you were required to appear before Revenue Agent Keith Griffith or, in lieu of personal appearance, have the requested documents delivered to Revenue Agent Kevin Terpening, at 600 Travis Street, #6350, Houston, TX 77002, on March 2, 2023.

Legal proceedings may be brought against you in the United States District Court for not complying with this Summons. To avoid such proceedings, you are to appear before, or have the requested documents in the summons delivered to:

Senior Revenue Agent Kevin Terpening
Date: Monday, March 27, 2023
Time: 10:00 A.M.
Address: 600 Travis Street, Suite #6350
Houston, TX 77002

GL- 104917-23                    2

Any books, records or other documents called for in the Summons should be produced at that time. If you have any questions, please contact Supervisory Tax Law Specialist Dennis K. Warren at 346-227-6634 (office) or 832-614-4856 (cell).

Sincerely,

CAROL B. MCCLURE
Associate Area Counsel
(Large Business & International)

By:

David Q. Cao
Senior Counsel (Houston)
(Large Business & International)

Enclosure:
Summons including Attachments 1 and 2 thereto.

Cc: Dennis K. Warren, Kevin Terpening, and Bridget Thompson of LB&I, IRS.

# Summons

In the matter of ___Eaton Corporation and Includible Subsidiaries (a consolidated group), 601 Travis Street, #1850, Houston TX 77002___

Internal Revenue Service *(division)* ___Large Business and International___

Industry/Area *(name or number)* ___Transfer Pricing Practice___                                                             ,

Periods ___Tax Years Ending December 31, 2017, December 31, 2018, and December 31, 2019___

## The Commissioner of Internal Revenue

To ___Eaton Corporation and Includible Subsidiaries (a consolidated group)___

At ___601 Travis Street, #1850, Houston TX 77002___

You are hereby summoned and required to appear before ___Keith S. Griffith II, Badge #1000534593, or his designee___
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

In lieu of personal appearance, you may have the following requested documents delivered to Kevin W. Terpening, Senior Revenue Agent, Badge #1000326198, at 600 North Travis Street, #6350, Houston TX 77002.

Produce for examination the annual performance evaluation for each employee identified under "Employee" in the third column, for the year identified under "Year" in the first column, of the table on each page in Attachment 1. For certain employees, more than one year's evaluations are requested.

The employees listed in Attachment 1 represent a subset of those listed in "IDR TPP-063_Exhibit B", which was provided with Information Document Request TPP-084. See attachment 2.

**Do not write in this space**

Business address and telephone number of IRS officer before whom you are to appear
1919 Smith Street, Houston, TX 77002, MS-4407HOU

Place and time for appearance at ___600 North Travis Street, #6350, Houston TX 77002___

on the ___2nd___ day of ___March___ , ___2023___ at ___3:00___ o'clock P .m.
                                              *(year)*

Issued under authority of the Internal Revenue Code this ___15___ day of ___February___ , ___2023___
                                                                                        *(year)*

| Signature of issuing officer | Keith S. Griffith II | Digitally signed by Keith S. Griffith II Date: 2023.02.14 10:59:38 -05'00' | Title Senior Revenue Agent, Badge #1000534593 |
|---|---|---|---|
| Signature of approving officer *(if applicable)* | | | Title Supervisory Tax Law Specialist, Badge #1001717892 |

Form **2039** (Rev. 3-2020)      Catalog Number 21405J      publish.no.irs.gov      Department of the Treasury - Internal Revenue Service
Original — to be kept by IRS

**ATTACHMENT 1 of Summons to Eaton Corporation dated Feb. 15, 2023.**

| YEAR | ACTIVITY_CENTER_DESC | EMPLOYEE | JOB TITLE | ORG/LOCATION | SUPERVISOR_NAME |
|------|----------------------|----------|-----------|--------------|-----------------|
| 2017 | R & D - Corporate | Mr. Sudhakar Potukuchi | VP.ENG.No Sub-Function. | 0238 CP IN CTO EIEC Pune ENG | Ramakrishnan, Mr. Ramanath Iyer |
| 2017 | Office of CTO | Herbst, Mr. Christopher A. | Director.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2017 | Allocated R & D #6 | Froehlich, Mr. Michael John | Director.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2017 | Controls - Decision & Reliability | Nowak, Mr. Michael P | Senior Specialist.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2017 | Prod Line Engineering #20 | Piyabongkarn, Mr. Damrongrit (Neng Piyabongkarn) | Manager.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2017 | Service Center R & D #3 | Hetzmannseder, Doctor Engelbert Engelbert | Director.ENG.No Sub-Function. | 0011 GCP AT EMEA Vienna OFC | Ramakrishnan, Mr. Ramanath Iyer |
| 2017 | FFC Technology | Garimella, Mr. Srinivas S | Senior Manager.ENG.No Sub-Function. | 0271 CP US AMCoE Southfield MI ENG | Ramakrishnan, Mr. Ramanath Iyer |
| 2017 | Office of Director of R & D | Stamenkovic, Igor | Director.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2017 | Controls - Decision & Reliability | Yousuf, Ms. Aisha (Aisha) | Specialist.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2017 | Office of Director of R & D | Carroll, Mr. Jason William (Jason) | Director.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2017 | Office of CTO | Natarajan, Mr. Kalyanasundaram (Kalyan) | Senior Manager.FIN.Financial Planning. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |

**ATTACHMENT 1 of Summons to Eaton Corporation dated Feb. 15, 2023.**

| YEAR | ACTIVITY_CENTER_DESC | EMPLOYEE | JOB TITLE | ORG/LOCATION | SUPERVISOR_NAME |
|---|---|---|---|---|---|
| 2018 | R & D - Corporate | Mr. Sreekumar Cherilkunnil Krishna Panicker | Director.ENG.No Sub-Function. | 0238 CP IN CTO EIEC Pune ENG | Ramakrishnan, Mr. Ramanath Iyer |
| 2018 | Office of CTO | Herbst, Mr. Christopher A. | Director.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2018 | Allocated R & D #6 | Froehlich, Mr. Michael John | Director.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2018 | Service Center R & D #3 | Hetzmannseder, Doctor Engelbert Engelbert | Director.ENG.No Sub-Function. | 5088 ES AT EMEA PDCD SLRY Vienna HQ | Ramakrishnan, Mr. Ramanath Iyer |
| 2018 | Office of Director of R & D | Stamenkovic, Igor | Director.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2018 | Office of Director of R & D | Carroll, Mr. Jason William (Jason) | Director.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2018 | Product Integrity | Tyler, Ms. Carole Carole | Coordinator.BSVC.Facility Services. | 0510 CP IE Intelligent Power ENG | Ramakrishnan, Mr. Ramanath Iyer |
| 2018 | Service Center R & D #5 | Kelly, Mr. Mark | Director.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Ramakrishnan, Mr. Ramanath Iyer |
| 2018 | Service Center R & D #1 | Nolan, Mr. Keith | Manager.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Kelly, Mr. Mark |
| 2018 | Service Center R & D #3 | Berlingerio, Mr. Michele | Manager.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Kelly, Mr. Mark |
| 2018 | Service Center R & D #2 | Ryan, Mr. Eugene | Manager.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Kelly, Mr. Mark |
| 2018 | Service Center R & D #4 | Feeney, Mr. Brendan Brendan | Engineer.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Kelly, Mr. Mark |
| 2018 | Service Center R & D #4 | Byrne, Ms. Laura | Engineer.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Kelly, Mr. Mark |
| 2018 | Service Center R & D #5 | Carr, Mr. Hugh Martin | Manager.ENG.Product/Program Management | 0510 CP IE Intelligent Power ENG | Kelly, Mr. Mark |

- SA67 -

**ATTACHMENT 1 of Summons to Eaton Corporation dated Feb. 15, 2023.**

| YEAR | ACTIVITY_CENTER_DESC | EMPLOYEE | JOB TITLE | ORG/LOCATION | SUPERVISOR_NAME |
|---|---|---|---|---|---|
| 2019 | R & D - Corporate | Mr. Sreekumar Cherikunnil Krishna Panicker | Director.ENG.No Sub-Function. | 0238 CP IN CTO EIEC Pune ENG | Ramakrishnan, Mr. Ramanath Iyer |
| 2019 | Office of CTO | Herbst, Mr. Christopher A. | Director.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2019 | Office of Director of R & D | Trujillo Rosales, Mr. Jose Antonio | Manager.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2019 | New Product R & D #1 | Janík, Mr. Luděk | Manager.ENG.No Sub-Function. | 0407 GCP CZ INNOV CTO EEEC Prague OFC | Ramakrishnan, Mr. Ramanath Iyer |
| 2019 | Office of Director of R & D | Carroll, Mr. Jason William (Jason) | Director.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2019 | Product Integrity | Tyler, Ms. Carole Carole | Coordinator.BSVC.Facility Services. | 0510 CP IE Intelligent Power ENG | Ramakrishnan, Mr. Ramanath Iyer |
| 2019 | Service Center R & D #5 | Kelly, Mr. Mark | Director.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Ramakrishnan, Mr. Ramanath Iyer |
| 2019 | Service Center R & D #7 | Harte, Mr. Seán Paul | Director.LAW.Intellectual Property. | 0510 CP IE Intelligent Power ENG | Ramakrishnan, Mr. Ramanath Iyer |
| 2019 | Office of Director of R & D | Jennings, Mr. John Norman | Director.ENG.No Sub-Function. | 0011 CP US CTO Innov VIR | Ramakrishnan, Mr. Ramanath Iyer |
| 2019 | Digital Healthcare | Lassance Dibbin, Ms. Luciana | Senior Administrative Assistant.SCM.No Sub-Function. | 0004 CP US Cleveland OH EC | Branco, Mr. Rogerio |
| 2019 | Service Center R & D #5 | Geraghty, Ms. Aoife Aoife | Executive Assistant.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Tyler, Ms. Carole Carole |
| 2019 | Transmission Automation | Mccann, Mr. Simon | Lead Analyst.FIN.Accounting. | 0510 CP IE Intelligent Power ENG | Kavanagh, Mr. John John |
| 2019 | Service Center R & D #1 | Nolan, Mr. Keith | Manager.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Kelly, Mr. Mark |
| 2019 | Service Center R & D #3 | Berlingerio, Mr. Michele | Manager.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Kelly, Mr. Mark |
| 2019 | Service Center R & D #2 | Ryan, Mr. Eugene | Manager.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Kelly, Mr. Mark |
| 2019 | Service Center R & D #5 | Carr, Mr. Hugh Martin | Manager.ENG.Product/Program Management. | 0510 CP IE Intelligent Power ENG | Kelly, Mr. Mark |
| 2019 | Service Center R & D #4 | Tandon, Mr. Om Om | Specialist.ENG.No Sub-Function. | 0510 CP IE Intelligent Power ENG | Kelly, Mr. Mark |
| 2019 | Service Center R & D #7 | Farrell, Ms. Leona | Director.HR.Corporate.Site | 0510 CP IE Intelligent Power ENG | Peterson, Mr. Steven E. |

**ATTACHMENT 2 of Summons to Eaton Corporation dated Feb. 15, 2023**

| Form **4564** (Rev. September 2006) | Department of the Treasury — Internal Revenue Service **Information Document Request** | | Request Number **TPP-84** |
|---|---|---|---|

| To: (Name of Taxpayer and Company Division or Branch) EATON US HOLDINGS INC 601 Travis St. Suite 1850 Houston, Texas 77002 | Subject Transfer Pricing- R&D Personnel Information | |
|---|---|---|
| | SAIN Number 708.10 | Submitted To: Ching, Jason |
| | Dates of Previous Requests | |
| Please return Part 2 with listed documents to requester identified below | | |

Description of documents requested

**Tax Years:** 2017-2019

**Taxpayers:** 1) Eaton US Holdings Inc. & Includible Subs; 2) Eaton Industrial Corporation & Includible Subs; and 3) Eaton Corporation & Includible Subs (collectively referred to as "Eaton").

**Issue:** Transfer Pricing - R&D Personnel Information

A draft IDR meeting was conducted with the Taxpayer on 10/20/2022 and the IDR Taxpayer feedback meeting was conducted on 10/XX/2022.

**Purpose:** The purpose of this request is to gather facts regarding intercompany pricing related to the 201712, 201812, and 201912 audit cycle. Specifically, to gather additional research and development ("R&D") personnel information related to the 2017 intangible property ("IP") sale of U.S. owned technology to Eaton Intelligent Power Limited ("EIPL") and the subsequent license of technology back to the U.S. in 2018 and 2019.

If the requested documents are in the possession or custody of Eaton Corporation, plc or any legal entity within Eaton Corporation, plc's chain of ownership, please secure the requested documents from Eaton Corporation, plc and provide them to the IRS examination team. If the Taxpayer asserts privilege rather than providing the requested information or documents, please contact the IRS examination team to discuss the elements of a privilege log prior to finalizing and providing the Taxpayer's response to the Information Document Request.

**Description of Documents/Information Requested:**

Please provide a version of this material in electronic format, such as a MS Word file or PDF that is both text searchable and text copiable. Any material in the form of a spreadsheet should be left in native format (including underlying formulas).

| Information Due By 12/05/2022 | At Next Appointment ☐ | Mail in ☐ | |
|---|---|---|---|

| From: | Name and Title of Requester Griffith II, Keith S Internal Revenue Agent | Employee ID number 1000534593 | Date (mmddyyyy) 10/27/2022 |
|---|---|---|---|
| | Office Location 1919 Smith Houston, Texas 77002-8049 | | Telephone Number 346-227-6928 |

Catalog Number 23145K    www.irs.gov    Part 1 - Taxpayer's File Copy      Form **4564** (Rev 9-2006)

**ATTACHMENT 2 of Summons to Eaton Corporation dated Feb. 15, 2023**

| Form **4564**<br>(Rev. September 2006) | Department of the Treasury — Internal Revenue Service<br>**Information Document Request** | Request Number<br>TPP-84 |
|---|---|---|

Please provide the following:

IDR TPP-63 (Attachment 1 for reference) requested information related to R&D personnel.

Taxpayer response to IDR TPP-63 indicates Chief Technology Officer ("CTO"), Mr. Ramanath Ramakrishnan, is an employee of region "America," country "US," whose primary responsibility is "Corporate Americas Region.".

Please respond to the following:

1. What is the office address of Mr. Ramakrishnan for the years under examination?

2. Where was Mr. Ramakrishnan physically employed during the years under examination?

3. What percent of time did Mr. Ramakrishnan spend in Ireland in the years under examination? Indicate your response by tax year: 2017, 2018, and 2019.
    a. Provide evidence supporting the percentage indicated in your response to Item 3, above, e.g. employee calendar.

4. In the years under examination, did any of Mr. Ramakrishnan's visits to Ireland relate to discussions or meetings concerning the IP transferred to EIPL in 2017?
    a. If yes, identify the visits and all relevant meeting dates.
    b. Provide evidence of the visits and the meetings, including but not limited to:
        • Calendar invites related to meetings.
        • Attendees of the meetings.
        • Meeting agendas.
        • Minutes of the meetings.

5. Your response to IDR TPP-63, with respect to Exam's requested employee secondment data, states: *"The Human Resources department that supplied this data does not track whether an employee is seconded or transferred between entities. This departments only tracks certain movements including termination, transfer to a different division, and assignment changes."* Indicate the department(s) responsible for tracking employee secondment data. If this response varies by/for department, provide specificity as to where this data is kept by/for department for the personnel requested in IDR TPP-63.

| Information Due By 12/05/2022 | | At Next Appointment ☐ | Mail In ☐ | |
|---|---|---|---|---|
| **From:** | Name and Title of Requester<br>Griffith II, Keith S<br><br>Internal Revenue Agent | | Employee ID number<br>1000534593 | Date *(mmddyyyy)*<br>10/27/2022 |
| | Office Location<br>1919 Smith<br>Houston, Texas 77002-8049 | | | Telephone Number<br>346-227-6928 |

Catalog Number 23145K    www.irs.gov    Part 1 - Taxpayer's File Copy    Form **4564** (Rev. 9-2006)

**ATTACHMENT 2 of Summons to Eaton Corporation dated Feb. 15, 2023**

| | | |
|---|---|---|
| Form **4564**<br>(Rev. September 2006) | Department of the Treasury — Internal Revenue Service<br># **Information Document Request** | Request Number<br>TPP-84<br>. |

6. Provide the secondment data requested in IDR TPP-63 for all employees, specifically items "e" and "f" from IDR TPP-63 follow-up:
   - Item e: Is the employee transferred or seconded? Please respond with yes or no.
   - Item f: Entity from where employee is being seconded/transferred (indicate the entity from where the employee is coming).

7. Provide all secondment, transfer, or temporary work assignment agreements (including amendments) for Mr. Ramakrishnan for each year under examination. If not provided in the agreements, identify the start/end date of the secondment, transfer or temporary work assignment.

8. Provide all secondment, transfer, or temporary work assignment agreements (including amendments) for all "Level 3" employees identified in your response to IDR TPP-63 file "IDR TPP-063_Exhibit B" for each year under examination. If not provided in the agreements, identify the start/end date of the secondment, transfer, or temporary work assignment.

9. Provide job descriptions for all "Level 3" employees identified in your response to IDR TPP-63 file "IDR TPP-063_Exhibit B" for each year under examination. Include the following:
   - Public recruitment announcements for the position
   - Internal job postings related to the position
   - Defined core competencies for the position (e.g. Human Resources definitions of the position's core competencies or requirements for the position role (certification, knowledge, experience, etc.))

10. Provide job descriptions for all "Level 4" employees coded to country "IE" identified in your response to IDR TPP-63 file "IDR TPP-063_Exhibit B" for each year under examination. Include the following:
   - Public recruitment announcements for position
   - Internal job postings related to the position
   - Defined core competencies for the position (e.g. Human Resources definitions of the position's core competencies or requirements for the position role (certification, knowledge, experience, etc.))

11. Provide annual performance evaluations for employees identified in Items 9 and 10, above for each tax year under examination.

The IRS examination team will review the response to this IDR for completeness within ten calendar days from the day of receipt.

| Information Due By 12/05/2022 | | At Next Appointment ☐ | Mail in ☐ | |
|---|---|---|---|---|

| | | | |
|---|---|---|---|
| **From:** | Name and Title of Requester<br>Griffith II, Keith S<br><br>Internal Revenue Agent | Employee ID number<br>1000534593 | Date *(mmddyyyy)*<br>10/27/2022 |
| | Office Location<br>1919 Smith<br>Houston, Texas 77002-8049 | | Telephone Number<br>346-227-6928 |

Catalog Number 23145K     www.irs.gov     Part 1 - Taxpayer's File Copy     Form **4564** (Rev. 9-2006)

**PETITION TO ENFORCE INTERNAL REVENUE SUMMONS,
DIST. CT. DOC. 1 (JUNE 9, 2023)**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 1:23-cv-1165 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EATON CORPORATION, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**PETITION TO ENFORCE INTERNAL REVENUE SERVICE SUMMONS**

Petitioner the United States of America petitions this Court for an order enforcing the

Internal Revenue Service administrative summons served on Respondent Eaton Corporation

("Eaton"). In support of this Petition, the United States alleges as follows:

**Jurisdiction and Parties**

1.       The Court has jurisdiction over this proceeding pursuant to 26 U.S.C. §§ 7402(b)

and 7604(a) and 28 U.S.C. §§ 1331, 1340, and 1345.

2.       Respondent Eaton Corporation maintains its headquarters in Cleveland, Ohio,

within this district.

**The Summons**

3.       As set forth in the attached declaration of IRS Senior Revenue Agent Keith S.

Griffith II (the "Griffith Declaration"), in connection with an IRS civil examination of Eaton's

tax liability for the 2017, 2018, and 2019 years, the IRS is investigating whether Eaton's sale of

certain intellectual property assets to non-U.S. affiliates and subsequent royalty payments to

those affiliates were conducted on an arm's length basis as required by section 482 of the

Internal Revenue Code.

4.      As part of that investigation, on February 15, 2023, Agent Griffith issued an attested summons (the "Summons") to Eaton requiring an Eaton representative to appear before Agent Griffith or his designee on March 2, 2023, at 600 North Travis Street, #6350, Houston, Texas, to give testimony and produce for examination certain books and records as described in the Summons.  The Summons also informed Eaton that it could produce the requested documents in lieu of providing a representative to testify.  A true and correct copy of the Summons is attached as Exhibit A to the Griffith Declaration.

5.      On February 15, 2023, IRS Supervisory Tax Law Specialist Dennis K. Warren served the Summons by handing it to Mary Kim Elkins, an Eaton officer.  A true and correct copy of the certificate of service is attached as Exhibit B to the Griffith Declaration.

6.      Eaton did not provide a representative for testimony on the requested date, nor did Eaton produce the requested documents.

7.      On March 13, 2023, the IRS Office of Chief Counsel sent a "last chance" letter informing Eaton that legal proceedings would be initiated to compel compliance with the Summons unless Eaton provided the requested documents and testimony by March 27.  A true and correct copy of the last chance letter is attached as Exhibit C to the Griffith Declaration.

8.      Eaton did not produce documents by the deadline established in the last chance letter.

9.      As of the date of this petition, Eaton has not complied with the Summons.

10.      The summonsed documents may be relevant to, and can reasonably be expected to cast light upon, the investigation described in Paragraph 3, above.

11.      The books, papers, records, and other data sought by the Summons are not already in the possession of the Internal Revenue Service.

12. All administrative steps required by the Internal Revenue Code for the issuance of the Summons have been taken.

13. No Justice Department referral, as defined by 26 U.S.C. § 7602(d)(2), is in effect with regard to Respondent Eaton Corporation for the years under investigation.

14. In order to obtain enforcement of a summons, the United States must establish that the summons: (1) is issued for a legitimate purpose; (2) seeks information that may be relevant to that purpose; (3) seeks information that is not already within the IRS's possession; and (4) satisfies all administrative steps required by the Internal Revenue Code. *United States v. Powell*, 379 U.S. 48, 57–58 (1964).

15. The attached Declaration of IRS Senior Revenue Agent Keith S. Griffith II establishes the government's prima facie showing under *Powell*.

WHEREFORE, the United States respectfully requests the following relief:

(a) That this Court enter the attached Order to Show Cause directing Respondent Eaton Corporation to show cause in writing why it should not comply with and obey the Internal Revenue Service Summons and every requirement thereof;

(b) That this Court enter an order enforcing the Summons and directing Respondent Eaton Corporation to fully comply with the Summons and each requirement thereof, by ordering Respondent Eaton Corporation to appear before IRS Senior Revenue Agent Keith S. Griffith II (or any other authorized official of the IRS) to give testimony (although the IRS may accept production of documents in lieu of testimony); and by ordering Respondent Eaton Corporation to produce the documents requested in the Summons to Agent Griffith (or any other authorized official of the IRS), with both testimony and document production to be at such time and place as may be set by Agent Griffith (or any other authorized official of the IRS);

(c)     That the United States recover its costs in maintaining this proceeding; and

(d)     That the Court grant such other and further relief as the Court deems proper or justice may require.


Dated: June 9, 2023

                        Respectfully submitted,

                        DAVID A. HUBBERT
                        Deputy Assistant Attorney General
                        U.S. Department of Justice, Tax Division

                        */s/ Anderson P. Heston*
                        ANDERSON P. HESTON (NY 5177837)
                        Trial Attorney, Tax Division
                        U.S. Department of Justice
                        P.O. Box 55
                        Washington, D.C. 20044
                        T: (202) 451-7362
                        F: (202) 514-5238
                        Anderson.P.Heston@usdoj.gov

**CIVIL DOCKET, *UNITED STATES V. EATON CORP.*, NO. 1:23-MC-00037-JG (N.D. OHIO, JAMES S. GWIN, D.J.; FILED JUNE 9, 2023)**

**Query**   **Reports**   **Utilities**   **Help**   **Log Out**

Appeal,Greenberg,Protect,R&R,Termed

# U.S. District Court
# NORTHERN DISTRICT OF OHIO (Cleveland)
# CIVIL DOCKET FOR CASE #: 1:23-mc-00037-JG

| | |
|---|---|
| United States of America v. Eaton Corporation | Date Filed: 06/09/2023 |
| Assigned to: Judge James S. Gwin | Date Terminated: 05/16/2024 |
| Case in other court: 6th Circuit, 24-03732 | |

**Petitioner**

**United States of America**                    represented by **Anderson P. Heston**
U.S. Department of Justice
Civil Tax Division
P.O. Box 55
Washington, DC 20044
202-307-6010
Fax: 202-514-5238
Email: anderson.p.heston@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**Eaton Corporation**                    represented by **Garrett L. Brodeur**
Skadden, Arps, Slate, Meagher & Flom -
Washington
1440 New York Avenue, NW
Washington, DC 20005
202-371-7377
Fax: 202-661-8377
Email: garrett.brodeur@skadden.com
*ATTORNEY TO BE NOTICED*

**Juliana D. Hunter**
Skadden, Arps, Slate, Meagher & Flom -
Houston
Ste. 6800
1000 Louisiana
Houston, TX 77002
713-655-5119
Fax: 713-483-9119
Email: juliana.hunter@skadden.com
*ATTORNEY TO BE NOTICED*

**Nadiya F. Beckwith-Stanley**
Skadden, Arps, Slate, Meagher & Flom -
Washington

1440 New York Avenue, NW
Washington, DC 20005
202-371-7545
Fax: 202-661-0545
Email: nadiya.beckwith-
stanley@skadden.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/09/2023 | 1 | **Petition** to Enforce IRS Summons filed by United States of America. (Attachments: # 1 Declaration of Senior IRS Revenue Agent Keith S. Griffith II, # 2 Proposed Order) (S,HR) (Entered: 08/29/2023) |
| 06/09/2023 | | Judge James S. Gwin assigned to case. (S,HR) (Entered: 08/29/2023) |
| 06/09/2023 | | Random Assignment of Magistrate Judge pursuant to Local Rule 3.1. In the event of a referral, case will be assigned to Magistrate Judge Jonathan D. Greenberg. (S,HR) (Entered: 08/29/2023) |
| 08/29/2023 | 2 | **Order** referring case to Magistrate Judge Jonathan D. Greenberg for show cause hearing. Judge James S. Gwin on 8/29/23. (T,A) (Entered: 08/29/2023) |
| 09/01/2023 | 3 | **Order** to Show Cause with hearing to be held on 11/1/2023 at 10:00 AM in Courtroom 10B before Magistrate Judge Jonathan D. Greenberg. Signed by Magistrate Judge Jonathan D. Greenberg on 9/1/23. (D,Ky) (Entered: 09/01/2023) |
| 09/28/2023 | 4 | Notice of Service of Order to Show Cause, Petition to Enforce IRS Summons, and Declaration of Senior IRS Revenue Agent Keith S. Griffith II filed by United States of America. (Heston, Anderson) (Entered: 09/28/2023) |
| 09/28/2023 | 5 | Joint **Motion** to continue Order to Show Cause Hearing *and Request to Modify Briefing Schedule* filed by Petitioner United States of America. (Heston, Anderson) Modified docket text on 10/3/2023 (H,Ch). (Entered: 09/28/2023) |
| 09/29/2023 | | **Order** [non-document] granting Joint 5 Motion to continue order to show cause hearing and set briefing schedule. Show Cause Hearing reset for 11/6/2023 at 02:00 PM in Courtroom 10B before Magistrate Judge Jonathan D. Greenberg. Eaton's opposition to the petition will be due on October 20, 2023, and the government's reply memorandum will be due on October 27, 2023. Magistrate Judge Jonathan D. Greenberg on 9/29/23.(D,Ky) (Entered: 09/29/2023) |
| 10/13/2023 | 6 | **Motion** for attorney Nadiya F. Beckwith-Stanley to Appear Pro Hac Vice. Filing fee $120, receipt number 148054, filed by Respondent Eaton Corporation. (Attachments: # 1 Exhibit A - Distict of Columbia Bar Certificate of Good Standing) (M,CE) (Entered: 10/13/2023) |
| 10/13/2023 | 7 | **Motion** for attorney Juliana D. Hunter to Appear Pro Hac Vice. Filing fee $120, receipt number 148054, filed by Respondent Eaton Corporation. (Attachments: # 1 Exhibit A - State Bar of Texas Certificate of Good Standing) (M,CE) (Entered: 10/13/2023) |
| 10/16/2023 | | **Order** [non-document] granting Motion for appearance pro hac vice by attorney Nadiya F. Beckwith-Stanley for Eaton Corporation. Local Rule 5.1(c) requires that attorneys register for NextGen CM/ECF and file and receive all documents electronically. NextGen CM/ECF registration can be done online at www.pacer.gov. Login with your PACER credentials, go to the Maintenance tab, click Attorney Admissions/E-File Registration, select Ohio Northern District Court and then select Pro Hac Vice. If you were previously granted pro |

| | | |
|---|---|---|
| | | hac vice status and are already registered to file electronically, it is not necessary to register again. Judge James S. Gwin on 10/16/23. (Related Doc # 6 )(T,A) (Entered: 10/16/2023) |
| 10/16/2023 | | **Order** [non-document] granting Motion for appearance pro hac vice by attorney Juliana D. Hunter for Eaton Corporation. Local Rule 5.1(c) requires that attorneys register for NextGen CM/ECF and file and receive all documents electronically. NextGen CM/ECF registration can be done online at www.pacer.gov. Login with your PACER credentials, go to the Maintenance tab, click Attorney Admissions/E-File Registration, select Ohio Northern District Court and then select Pro Hac Vice. If you were previously granted pro hac vice status and are already registered to file electronically, it is not necessary to register again. Judge James S. Gwin on 10/16/23. (Related Doc # 7 ) (T,A) (Entered: 10/16/2023) |
| 10/18/2023 | 8 | Joint **Motion** for relief *to modify briefing schedule and set procedures for November 6, 2023 hearing* filed by Petitioner United States of America. (Heston, Anderson) (Entered: 10/18/2023) |
| 10/19/2023 | | **Order** [non-document] Scheduling Telephonic Status Conference for 10/19/2023 at 02:30 PM before Magistrate Judge Jonathan D. Greenberg. Call-in information will be emailed to counsel. Magistrate Judge Jonathan D. Greenberg on 10/19/23. (D,Ky) (Entered: 10/19/2023) |
| 10/19/2023 | | **Minutes of proceedings** [non-document] before Magistrate Judge Jonathan D. Greenberg. The Court held a telephone status conference on October 19, 2023. Present for the Petitioner was Anderson Heston. Present for the Respondent were Juliana Hunter and Nadiya F. Beckwith-Stanley. Given the information discussed during the conference, the Court ORDERS as follows. The November 6, 2023 show cause hearing is converted to a settlement conference. The settlement conference shall begin at 10:00 a.m. All counsel and all persons with settlement authority shall attend in person. By close of business (5:00 p.m.) on November 1, 2023, the parties shall submit a five page confidential settlement statement to chambers by email to Greenberg_chambers@ohnd.uscourts.gov. The joint motion at Doc. No. 8 is DENIED AS MOOT. Time: 20 minutes. (D,Ky) (Entered: 10/19/2023) |
| 11/06/2023 | 9 | **Minutes of proceedings** before Magistrate Judge Jonathan D. Greenberg. A settlement conference was held. The parties were able to reach an agreement on some of the outstanding issues. The parties shall file a joint notice of resolution as to the matters resolved by close of business (5:00 p.m.) on November 15, 2023. The parties stipulate that the remaining issues shall be resolved on briefs. Respondent shall file its brief on the merits by close of business (5:00 p.m.) on November 15, 2023. Petitioner shall file its response by close of business (5:00 p.m.) on November 22, 2023. The briefs shall not exceed ten pages. Time: 9 hours. (D,Ky) (Entered: 11/07/2023) |
| 11/09/2023 | 10 | **Motion** for attorney Garrett L. Brodeur to Appear Pro Hac Vice. Filing fee $ 120, receipt number 148546, filed by Respondent Eaton Corporation. (Attachments: # 1 Exhibit A - DC Bar Certificate of Good Standing). (H,Ch) (Entered: 11/09/2023) |
| 11/14/2023 | | **Order** [non-document] granting Motion for appearance pro hac vice by attorney Garrett L. Brodeur for Eaton Corporation. Local Rule 5.1(c) requires that attorneys register for NextGen CM/ECF and file and receive all documents electronically. NextGen CM/ECF registration can be done online at www.pacer.gov. Login with your PACER credentials, go to the Maintenance tab, click Attorney Admissions/E-File Registration, select Ohio Northern District Court and then select Pro Hac Vice. If you were previously granted pro hac vice status and are already registered to file electronically, it is not necessary to register again. Judge James S. Gwin on 11/14/23. (Related Doc # 10 ) (T,A) (Entered: 11/14/2023) |
| 11/15/2023 | 11 | Joint Notice Regarding Resolution of Matters Discussed During Settlement Conference of November 6, 2023 filed by United States of America. (Heston, Anderson) (Entered: |

| | | |
|---|---|---|
| | | 11/15/2023) |
| 11/15/2023 | 12 | Brief filed by Eaton Corporation. (Attachments: # 1 Affidavit of Minghe Bai) (Hunter, Juliana) (Entered: 11/15/2023) |
| 11/22/2023 | 13 | Reply Memorandum *in Support of Petition to Enforce IRS Summons* filed by United States of America. (Attachments: # 1 Supplemental Declaration of Senior IRS Revenue Agent Keith Griffith) (Heston, Anderson) (Entered: 11/22/2023) |
| 11/29/2023 | 14 | **Motion** for leave *to File Response to Petitioner's Reply Memorandum* filed by Respondent Eaton Corporation. Related document(s) 13 . (Hunter, Juliana) (Entered: 11/29/2023) |
| 11/30/2023 | | **Order** [non-document] granting Respondent's 14 Motion for leave to File Response to Petitioner's Reply Memorandum. Magistrate Judge Jonathan D. Greenberg on 11/30/23. (D,Ky) (Entered: 11/30/2023) |
| 12/01/2023 | 15 | **Motion** for the Court to Set Deadline of 5:00pm on December 4, 2023, for Filing of Sur-Reply filed by Petitioner United States of America. (Attachments: # 1 October 12, 2023 Letter to Juliana Hunter)(Heston, Anderson) (Entered: 12/01/2023) |
| 12/04/2023 | | **Order** [non-document] granting Petitioner's Unopposed 15 Motion for the Court to Set Deadline of 5:00pm on December 4, 2023, for Filing of Sur-Reply. Magistrate Judge Jonathan D. Greenberg on 12/4/23.(D,Ky) (Entered: 12/04/2023) |
| 12/04/2023 | 16 | **Response** to 13 Reply Brief in Support of Petition to Enforce IRS Summons filed by Eaton Corporation. (Attachments: # 1 Supplemental Affidavit of Marvin Bai)(Hunter, Juliana) (Entered: 12/04/2023) |
| 01/04/2024 | 17 | **Report and Recommendation** that the Court DENY the Petition toEnforce IRS Summons. (Doc. No. 1 .) (Objections to Report & Recommendation due by 1/18/2024), Referral Terminated. Signed by Magistrate Judge Jonathan D. Greenberg on 1/4/24. (D,Ky) (Entered: 01/04/2024) |
| 01/18/2024 | 18 | **Objection** to Report and Recommendation filed by United States of America. Related document(s) 17 . (Heston, Anderson) (Entered: 01/18/2024) |
| 02/01/2024 | 19 | Response to Petitioner's Objection to Report and Recommendation filed by Eaton Corporation. Related document(s) 18 . (Hunter, Juliana) (Entered: 02/01/2024) |
| 02/08/2024 | 20 | **Motion** for leave *to file Reply Brief in Support of Objection to Report and Recommendation* filed by Petitioner United States of America. (Attachments: # 1 Proposed Reply Brief in Support of Objection to Report and Recommendation)(Heston, Anderson) (Entered: 02/08/2024) |
| 02/13/2024 | 21 | **Marginal Entry Order** signed by Judge James S. Gwin on 2/13/24 granting Motion for leave. (Related Doc 20 )(T,A) (Entered: 02/13/2024) |
| 05/16/2024 | 22 | **Opinion and Order** signed by Judge James S. Gwin on 5/16/24. The Court SUSTAINS the government's objections and GRANTS the government's petition to enforce the IRS summons. Because the government has offered to allow Eaton to redact some irrelevant but private information from the requested performance evaluations, the parties shall submit a stipulated protective order to the Court within fourteen (14) days of this Order. The stipulated protective order should specify the redaction scope and any other privacy limitations that the parties agree are appropriate. Eaton shall produce the requested foreign employee performance evaluations to the IRS within fourteen (14) days after the Court enters the parties' stipulated protective order. re 1 , 17 , 18 (T,A) (Entered: 05/16/2024) |
| 05/16/2024 | 23 | **Judgment Entry** signed by Judge James S. Gwin on 5/16/24. The Court having entered an Opinion and Order on May 16, 2024. Accordingly, the Court dismisses this case pursuant |

| | | |
|---|---|---|
| | | to Rule 58 of the Federal Rules of Civil Procedure. re 22 Order (T,A) (Entered: 05/16/2024) |
| 05/30/2024 | 24 | Joint Status Report filed by Eaton Corporation. (Hunter, Juliana) (Entered: 05/30/2024) |
| 05/30/2024 | 25 | Notice of Filing Proposed Protective Order for Production of Foreign Employee Evaluations filed by United States of America. (Attachments: # 1 Proposed protective order)(Heston, Anderson) (Entered: 05/30/2024) |
| 06/04/2024 | 26 | **Order** signed by Judge James S. Gwin on 6/4/24. The parties shall proceed as directed in the attached order. (T,A) (Entered: 06/04/2024) |
| 06/07/2024 | 27 | Notice of Filing of Proposed Protective Order filed by Eaton Corporation. (Attachments: # 1 Proposed Protective Order)(Hunter, Juliana) (Entered: 06/07/2024) |
| 06/07/2024 | 28 | Response in Opposition to Request to Stay Execution filed by United States of America. (Heston, Anderson) (Entered: 06/07/2024) |
| 06/10/2024 | 29 | Amended Response to Request to Stay Execution of Judgment (supersedes ECF No. 28) filed by United States of America. (Heston, Anderson) (Entered: 06/10/2024) |
| 06/11/2024 | 30 | **Protective Order** regarding confidential documents signed by Judge James S. Gwin on 6/11/24. (T,A) (Entered: 06/11/2024) |
| 06/11/2024 | 31 | **Order** signed by Judge James S. Gwin on 6/11/24. After considering Eaton's request and the government's response, the Court STAYS execution of judgment as to the Europe-based employee evaluations pending resolution of Eaton's anticipated post-judgment motion. Eaton may move for a further stay pending potential appeal after the Court rules on Eaton's anticipated motion. Eaton shall produce the India-based employee evaluations at issue within fourteen (14) days of this Order. Eaton shall produce those India-based evaluations in accordance with the Protective Order at Document 30. re 30 Protective Order (T,A) (Entered: 06/11/2024) |
| 06/13/2024 | 32 | **Motion** to alter/amend judgment filed by Respondent Eaton Corporation. Related document(s) 22 . (Attachments: # 1 Memorandum in Support, # 2 Affidavit of Colin Rooney, # 3 Affidavit of Minghe (Marvin) Bai) (Hunter, Juliana) (Entered: 06/13/2024) |
| 07/01/2024 | 33 | **Response** in opposition to 32 **Motion** to alter/amend judgment filed by United States of America. (Attachments: # 1 Exhibit 1 - Affidavit of Laura Fannin) (Heston, Anderson) (Entered: 07/01/2024) |
| 07/08/2024 | 34 | **Reply** in support of 32 **Motion** to alter/amend judgment filed by Eaton Corporation. (Attachments: # 1 Supplemental Affidavit of Colin Rooney) (Hunter, Juliana) (Entered: 07/08/2024) |
| 07/15/2024 | 35 | **Motion** for leave *to file surreply in further opposition to motion to amend or alter Court's judgment* filed by Petitioner United States of America. (Related document(s) 34 , 32 ). (Attachments: # 1 Proposed surreply brief, # 2 Exhibit 1 - EIPL authorization) (Heston, Anderson) (Entered: 07/15/2024) |
| 07/15/2024 | 36 | Notice of Receipt of Indian Employee Evaluations Requested by IRS Summons filed by United States of America. (Heston, Anderson) (Entered: 07/15/2024) |
| 07/22/2024 | 37 | **Opposition** to 35 **Motion** for leave *to file surreply in further opposition to motion to amend or alter Court's judgment* filed by Eaton Corporation. (Attachments: # 1 Third Supplemental Affidavit of Marvin Bai)(Hunter, Juliana) (Entered: 07/22/2024) |
| 07/29/2024 | 38 | **Reply** Brief in support of 35 **Motion** for leave *to file surreply in further opposition to motion to amend or alter Court's judgment* filed by United States of America. (Heston, Anderson) (Entered: 07/29/2024) |

| 08/19/2024 | [39](#) | **Opinion and Order** signed by Judge James S. Gwin on 8/19/24. The Court DENIES Eaton's motion to alter or amend the judgment and DENIES a stay pending appeal. Eaton shall produce the relevant employee performance evaluations to the government, in accordance with the protective order in this case, within thirty (30) days of this Order. re [32](#), [35](#) (T,A) (Entered: 08/19/2024) |
| --- | --- | --- |
| 08/19/2024 | [40](#) | **Motion** to stay *Orders administratively pending resolution of Sixth Circuit stay motion* filed by Respondent Eaton Corporation. Related document(s) [23](#) , [22](#) , [39](#) . (Attachments: # [1](#) Proposed Order)(Hunter, Juliana) (Entered: 08/19/2024) |
| 08/19/2024 | [41](#) | **NOTICE OF APPEAL** to the Sixth Circuit Court of Appeals from the [22](#) Opinion and Order and [23](#) Judgment Entry of 5/16/24, [39](#) Opinion and Order of 8/19/24, filed by Eaton Corporation. (Filing fee $605, receipt number AOHNDC-12698569) (Hunter, Juliana) (Entered: 08/19/2024) |
| 08/20/2024 | | Acknowledgment from the USCA for Sixth Circuit of receipt of [41](#) Notice of Appeal (USCA# 24-3732). Date filed in USCA 8/20/24. (H,SP) (Entered: 08/20/2024) |
| 08/21/2024 | | **Order** [non-document] entered by Judge James S. Gwin on 8/21/24 denying respondent's [40](#) Motion to stay. (T,A) (Entered: 08/21/2024) |

| PACER Service Center | | | |
| --- | --- | --- | --- |
| **Transaction Receipt** | | | |
| | | | |
| | | | |
| | | **Search Criteria:** | 1:23-mc-00037-JG |
| | | | |