SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 NEW YORK AVENUE, N.W.
WASHINGTON, D.C. 20005-2111
———
TEL: (202) 371-7000
FAX: (202) 393-5760
www.skadden.com

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
202-371-7061
EMAIL ADDRESS
PARKER.RIDER-LONGMAID@SKADDEN.COM

October 11, 2024

Kelly L. Stephens
Clerk of Court
U.S. Court of Appeals for the Sixth Circuit
540 Potter Stewart U.S. Courthouse
100 E. Fifth Street
Cincinnati, Ohio 45202

    RE:    *United States v. Eaton Corp.*, No. 24-3732 (6th Cir.): Respondent-Appellant's letter brief addressing the Court's October 9, 2024, Order, Doc. 23-1

Dear Ms. Stephens:

Eaton Corporation writes to respond to the potential solution the Court set out in its October 9, 2024, Order. *See* Doc. 23-1. In brief, and as explained further below, Eaton submits that the potential solution appears to be a reasonable approach so long as (a) Eaton is allowed to pre-redact a small amount of certain highly-sensitive personal data, consistent with the district court's previous protective order, Dist. Ct. Doc. 30, ¶ 1; (b) Eaton has an opportunity to review the redacted documents in the event the district court

proposes to disclose them to the government; (c) Eaton has the right to object to any proposed disclosure by the district court and obtain a ruling on whether disclosure, even with redactions, violates the GDPR and is warranted under a comity analysis; (d) Eaton has the right to pursue an appeal to this Court of any adverse ruling or objected-to disclosure by the district court; and (e) the district court's orders enforcing the summons, including any new orders on disclosure it may issue, are stayed until Eaton can seek this Court's review.

**1.** The Court's potential solution is a reasonable path forward if subject to the conditions set out below. Transferring the evaluations to the district court for in camera review will in itself constitute a transfer and the review itself will constitute additional processing falling under the General Data Protection Regulation (GDPR). But based on study by Eaton's Irish counsel, Eaton believes that the transfer would be covered by GDPR Article 49(1)(e), the "legal claim derogation," and thus be permissible under the GDPR, because it would be ordered by a court; the additional processing would be limited to the court's in camera review; and Eaton has determined that the transfer to the district court is necessary for the legal defense of Eaton Inc., the related Irish entity whose evaluations are at issue. Add. 1-2,

¶ 6. As the attached affidavit from Eaton's Irish counsel explains, unlike previous IRS requests, the transfer to the district court would meet the GDPR's legal claim derogation's "necessity" test under Article 49(e)(1), because "there is no alternative way for the District Court" to conduct the proposed in camera review. *See* Add. 4, ¶ 17. Critically, however, the legal claim derogation would not cover any transfer from Eaton or the district court *to the IRS*, principally because such a transfer would not meet the GDPR's strict necessity test, as the attached affidavit further explains. Add. 4, ¶ 15.

Importantly, Eaton's GDPR counsel has preliminarily reviewed the evaluations and has informed Eaton that a handful of the evaluations contain highly-sensitive personal data that *must* be redacted *before* transferring the evaluations to the district court in order to comply with the legal claim derogation. *See* Add. 3-4, ¶ 13-14. These very targeted, limited pre-redactions would comport with, or be of the same nature as, the redactions the district court previously approved of in its protective order applying to non-U.S. evaluations and directing the redaction of "home addresses (except that city and county shall remain visible to the extent they appear), family information (including marital status), medical history, employee telephone

numbers, credit history, and non-performance-related complaints raised against the employees." Dist. Ct. Doc. 30, ¶ 1.

**2.** Eaton respectfully submits that for the potential solution to work, a stay of the district court's current enforcement orders would need to be extended to preserve the status quo. Eaton would also need an opportunity to review the district court's proposed redactions to any evaluations to be disclosed to the Internal Revenue Service (IRS), with an opportunity to object and obtain a ruling and then seek this Court's review, all while a stay of any disclosure remains in place pending a ruling from this Court.

That's because, while transferring the evaluations to a U.S. court for in camera review may be a reasonable path forward, that solution could result in the same dilemma that Eaton is currently in: comply with a summons enforcement order that would require Eaton to violate the GDPR, or comply with the GDPR by refusing to comply with a summons enforcement order. If the district court, after conducting its in camera review, orders Eaton to disclose the evaluations either without redactions or with redactions that would not satisfy the GDPR, then the parties will be in the same position they are in now. Indeed, particularly given the small number of employees to whom the summonsed evaluations relate, each employee may still be

readily identifiable despite some redactions—for example, because employees' names are redacted but not other information from which those employees can be identified, such as their job title, manager's name, or other context clues. In addition, the definition of personal data under the GDPR is broad and incorporates not only objective (factual) information but also subjective opinions about an individual—which is the main substance of an evaluation. Thus, data may remain personal data even when names are removed. It is only when data is truly anonymized, and cannot be traced back to an individual, that the GDPR no longer applies. Notably, the threshold for anonymization under the GDPR is high. Thus, despite redactions, in many cases the bulk of the content of evaluations may remain "personal data" protected under the GDPR. Accordingly, Eaton respectfully requests that the Court ensure that Eaton's right to seek appellate review is fully protected.

If the redactions are insufficient, the "status quo" will have remained materially unchanged, Doc. 16-1 at 1, because disclosure would still violate the GDPR, and the significant need and justification for a stay pending appeal will be just as strong as it is now: given the European Union's critical interest in ensuring compliance with the GDPR and the IRS's alternative means of obtaining the information it seeks, the comity analysis weighs

against disclosure. Doc. 13 at 18-26. That's especially true given that Eaton has repeatedly urged the IRS to interview the subjects of the evaluations or their managers, and has offered to answer in writing the IRS's questions about those employees and their projects and responsibilities. *See id.* at 23. What's more, the IRS could have pursued the proper procedures under the U.S.–Ireland Tax Convention for seeking information in the summonsed Evaluations. *See* Dist. Ct. Doc. 32-1, at 5-7. Assuming this Court orders the district court to conduct an in camera review, the district court can—and should—consider instructing the IRS to pursue those substantially equivalent alternatives rather than continue seeking disclosure of documents containing GDPR-protected information. Eaton expects any in camera review to show that there is little if any information in the evaluations relevant to the IRS's transfer-pricing audit that the IRS could not obtain (and then some) from live interviews, and Eaton stands and has stood ready to facilitate those interviews. Indeed, the district court already found that because the evaluations "are not particularly important to the IRS's investigation" and the "relevancy showing is weak," "the IRS can make do without" the evaluations. Doc. 13 at SA9, SA36.

If, after the in camera review, the district court nonetheless orders disclosure that violates the GDPR, the proposed solution would require that disclosure to be stayed until this Court can hear Eaton's appeal (just as this Court has had an opportunity to consider Eaton's arguments with the current enforcement order administratively stayed). Eaton thus respectfully requests that the Court also stay the district court's order and judgment, as well as any adverse order following in camera review (or order the district court to issue such a stay), pending Eaton's return to this Court for review.

3.  Eaton further respectfully requests that the Court not allow the current administrative stay to expire on October 18, 2024. Eaton respectfully submits that the Court should extend the administrative stay as necessary either to rule on its request for a stay pending appeal, if the Court does not implement the proposed solution; that the Court implement the proposed solution before October 18, including by issuing a stay or directing the district court to enter a stay of the current enforcement order and any adverse order resulting from the proposed solution; or that the Court extend the administrative stay until it can implement the proposed solution. The Court should also reset the briefing schedule accordingly so that Eaton's opening merits brief is no longer due November 15, 2024. *See* Doc. 22.

**4.** Eaton respectfully suggests that the easiest way to implement the proposed solution would be to order the parties to comply with its proposed solution, subject to the qualifications discussed above, by limited remand. *See, e.g., Super X Drugs Corp. v. Federal Deposit Insurance Corp.*, 862 F.2d 1252, 1256 (6th Cir. 1988); *Grano v. Department of Development of City of Columbus*, 637 F.2d 1073, 1082 (6th Cir. 1980); *United States v. Lanier*, 870 F.3d 546, 547 (6th Cir. 2017). Under 28 U.S.C. § 2106, this Court has authority to "remand the cause and … require such further proceedings to be had as may be just under the circumstances." Under that authority, the Court may direct a district court to amplify the record, make findings, provide further explanation, or reach conclusions. *See Super X Drugs*, 862 F.2d at 1256; *Grano*, 637 F.2d at 1082; *Lanier*, 870 F.3d at 547. The statute also allows the Court to "direct the entry of such appropriate … order … as may be just under the circumstances," 28 U.S.C. § 2106, meaning the Court can also direct the district court to stay its current enforcement orders and stay any resulting adverse orders until Eaton can return to this Court for appellate review if necessary.

Respectfully submitted,

*/s/ Parker Rider-Longmaid*

Parker Rider-Longmaid
  *Counsel of Record*
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, D.C. 20005
Telephone: 202-371-7000
parker.rider-longmaid@skadden.com

*Counsel for Respondent-Appellant*
  *Eaton Corp.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this letter brief complies with the type-volume limitation of the Court's October 9, 2024, Order, Doc. 23-1, because the body of the letter brief does not exceed ten double-spaced pages.

Dated: October 11, 2024          */s/ Parker Rider-Longmaid*

                                 Parker Rider-Longmaid

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2024, I electronically filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: October 11, 2024          */s/Parker Rider-Longmaid*

                                 Parker Rider-Longmaid

# ADDENDUM

Affidavit of Colin Rooney Supporting Appellant's Letter Brief (Oct. 11, 2024)

**AFFIDAVIT OF COLIN ROONEY SUPPORTING APPELLANT'S LETTER BRIEF**

I, Colin Rooney, swear and affirm under penalty of perjury that the following statements are true and accurate to the best of my knowledge:

1. I have personal knowledge of the matters set forth in this affidavit and, if called upon, could and would testify concerning the same.

2. I previously submitted two affidavits in this matter (the "**Prior Affidavits**"), Dist. Ct. ECF Nos. 32-2 and 34-1, concerning the implications of the District Court's Opinion and Order (the "**Order**"), Dist. Ct. ECF No. 22, including whether the District Court correctly applied the "public interest" derogation under Article 49(1)(d) (the "**Public Interest Derogation**") of the European Union's (the "**EU**") General Data Protection Regulation (Regulation EU (No) 2016/679) (the "**GDPR**") ("**First Affidavit**") and addressing Ms Fannin's affidavit ("**Second Affidavit**").

3. I have been asked to consider the arrangement proposed by this Court in its October 9, 2024, Order ("**October Order**") and whether the transfer of performance evaluations of Irish-based Eaton employees, which contain personal data as defined under the GDPR ("**Requested Data**") to the District Court, in accordance with the process set out in the October Order, would be permissible under the GDPR. For the avoidance of doubt, this Affidavit does not purport to address the lawfulness of any subsequent transfer or disclosure of the Requested Data to the Internal Revenue Service (IRS).

4. Without prejudice to any further requests regarding process made by Eaton in the letter to which this Affidavit is appended, I understand that this Court has proposed the following:

    4.1  Eaton Ireland would permit the District Court to review the Requested Data "in camera", that is to say, privately in chambers before the judge, and without disclosure to the IRS or any other person or entity, for the purpose of the District Court's making its own determination "whether any [evaluations] are sufficiently relevant to the audit to justify production, and, if so, redact[ing] any irrelevant material that is protected by the GDPR before the evaluations, if any, are provided to the IRS," per the October Order (the "**Purpose**");

    4.2  the District Court would make that determination about the Requested Data; and

    4.3  if any Requested Data is "sufficiently relevant to the audit to justify production," the District Court would "redact any irrelevant material that is protected by the GDPR," before the Requested Data, if any, are provided to the IRS

    ("**Proposed Arrangement**").

5. It must be noted that permitting the District Court to review the evaluations in this way is additional processing of the personal data within the Requested Data and would constitute a "transfer" of personal data under the GDPR. As such, in absence of an adequacy decision pursuant to GDPR Article 45(3) or appropriate safeguards pursuant to GDPR Article 46 (including, for example the Court concluding the Standard Contractual Clauses for the transfer of personal data to third countries with Eaton Ireland), the transfer may only take place where a derogation under GDPR Article 49 applies.

6. In this instance, in my view, GDPR Article 49(1)(e) is applicable, which provides a transfer shall take place only where "*the transfer is necessary for the establishment,*

*exercise or defence of legal claims*" ("**Legal Claim Derogation**"). Recital 111 of the GDPR states that a transfer can be made where it is "***occasional* and *necessary*** *in relation to a contract or a legal claim, regardless of whether in a judicial procedure or whether in an administrative or any out-of-court procedure, including procedures before regulatory bodies*" (emphasis added). It is noted that U.S. courts do not have jurisdiction over Eaton Ireland. However, the presence of a binding legal obligation is not a prerequisite for the application of the Legal Claim Derogation. Eaton Ireland can share the data under the Legal Claim Derogation if it determines that doing so is necessary for the establishment, exercise or defence of legal claims made against its related entity, Eaton Inc. Both Eaton Inc. and Eaton Ireland share a common parent, Eaton Corporation plc, making such a determination reasonable.

7. As I stated in my Prior Affidavits, and as further explained in paragraphs 16 and 17 below, in my view the Legal Claim Derogation was not applicable to the previous Order but is applicable to the October Order.

Establishment, exercise of defence of legal claims

8. As noted in the First Affidavit, the European Data Protection Board's (the "**EDPB**") Guidelines 2/2018 on Derogations of Article 49 Under Regulation 2016/679 (the "**Derogation Guidelines**") indicate that these derogations must be applied "restrictively." The EDPB notes that this is supported by the wording of the title of Article 49 which states that derogations are to be used for specific situations. The EDPB's Derogations Guidance provides that an overarching condition for the reliance on several of the derogations set out in Article 49 GDPR is that the data transfer must be "*necessary*" for a certain purpose.

9. The Derogation Guidelines at paragraph 2.5 provide further guidance on the application of the Legal Claim Derogation. The Derogation Guidelines state that:

   > "*This covers a range of activities for example, in the context of a criminal or administrative investigation in a third country (e.g. anti-trust law, corruption, insider trading or similar situations), where the derogation may apply to a transfer of data for the purpose of defending oneself or for obtaining a reduction or waiver of a fine legally foreseen e.g. in anti-trust investigations. … The derogation cannot be used to justify the transfer of personal data on the grounds of the mere possibility that legal proceedings or formal procedures may be brought in the future.*
   >
   > ….
   >
   > *The combination of the terms "legal claim" and "procedure" implies that the relevant procedure must have a basis in law, including a formal, legally defined process, but is not necessarily limited to judicial or administrative procedures ("or any out of court procedure"). As a transfer needs to be made **in** a procedure, a close link is necessary between a data transfer and a specific procedure regarding the situation in question. The abstract applicability of a certain type of procedure would not be sufficient.*"

10. The applicability of the October Order is not abstract but is concretely articulated in the October Order as a request from the Court. Therefore, in my view, the Court's request for the Proposed Arrangement would form part of a legal process of the nature identified by the EDPB in the Derogation Guidelines and there is a sufficiently close link between the data transfer and the specific procedure in question.

- Add. 2 -

<u>Necessity of the data transfer</u>

11. In addition to forming part of a legal procedure, the transfer of the personal data must be strictly necessary for the establishment, exercise or defence of the legal claim in question - in this instance, specifically for the Purpose. The Derogation Guidelines provides as follows regarding application of the necessity test with regard to the Legal Claim Derogation:

    "*A data transfer in question may only take place when it is **necessary** for the establishment, exercise or defense of the legal claim in question. This "necessity test" requires a close and substantial connection between the data in question and the specific establishment, exercise or defense of the legal position. The mere interest of third country authorities or possible "good will" to be obtained from the third country authority as such would not be sufficient.*"

12. The Derogation Guidelines continues to elaborate, stating that a transfer will only be necessary where the personal data is adequate, relevant and limited to what is necessary for the Purpose:

    "***Whilst there may be a temptation for a data exporter to transfer all possibly relevant personal data in response to a request** or for instituting legal procedures, this would not be in line with this derogation or with the GDPR more generally as this (in the principle of data minimization) **emphasizes the need for personal data to be adequate, relevant and limited to what is necessary in relation to the purposes for which they are processed***.

    *In relation to litigation proceedings the WP29, predecessor of the EDPB, has already set out a layered approach to the question of whether the personal data should be transferred, including the application of this principle. As a first step, there should be a careful assessment of whether anonymized data would be sufficient in the particular case. If this is not the case, then transfer of pseudonymized data could be considered. **If it is necessary to send personal data to a third country, its relevance to the particular matter should be assessed before the transfer – so only a set of personal data that is actually necessary is transferred and disclosed**.*" (emphasis added)

13. Therefore, for the transfer to be necessary, Eaton Ireland must, in the first instance, determine whether there is any personal data which is patently not necessary for the Purpose and to exclude this personal data from the Requested Data via redaction prior to transfer to the District Court. This accords with one of the core principles of lawful processing in the GDPR, being the principle of data minimisation (GDPR Article 5(1)(c)). I would expect that such redactions may include "special categories of personal data" which are deemed to be of a higher level of sensitivity and which are therefore subject to further restrictions on processing under Article 9 GDPR. Special category data is personal data revealing racial or ethnic origin, political opinions, religious or philosophical beliefs, or trade union membership, and the processing of genetic data, biometric data for the purpose of uniquely identifying a natural person, data concerning health, or data concerning a natural person's sex life or sexual orientation (GDPR Article 9(1)).

14. I would expect that the proposed pre-redactions would fit within or be of the same nature as the redactions that the District Court approved of in its protective order applying to non-EU evaluations and directing redaction of "*home addresses (except that city and county shall remain visible to the extent they appear), family information (including marital status), medical history, employee telephone numbers, credit history,*

- Add. 3 -

*and non-performance-related complaints raised against the employees.*" Dist. Ct. Doc. 30, 1-2.

15. Separate, and in addition to, any pre-redactions which may be applied by Eaton Ireland in the first instance, I am of the view that there may be necessity for further redactions to be applied prior to any disclosure to the IRS, because while Article 49(1)(e) GDPR allows Eaton Ireland to disclose certain personal data in the performance evaluations to the District Court, a further transfer of these documents to the IRS does not meet the Article 49(1)(e) standard as further described in paragraphs 16 and 17 below, without redaction of all personal data within such documents prior to such a disclosure occurring.

16. I am of the view that, provided Eaton Ireland conducts the exercise referred to in paragraph 13 above, the necessity test of the Legal Claim Derogation is met in this instance. This is because, unlike in the prior Order issued by the District Court, the transfer envisaged by the Proposed Arrangement is distinct in two important respects:

    16.1 the personal data would not be transferred to the IRS but to the District Court; and

    16.2 the purpose of the transfer would not be for the IRS to use the personal data in its audit (the relevancy to which the IRS has admitted is low and for which alternative sources such as employee interviews are available), which as I noted in my Second Affidavit means that the transfer to the IRS cannot meet the strict necessity test of the Legal Claim Derogation. In contrast, the transfer to the District Court would be for the District Court to make the required determination about the relevancy of the Requested Data to the present case and, if sufficiently relevant, to implement any redactions where possible. To undertake this task, it is strictly necessary for the District Court to receive access to the Requested Data, and as such the transfer to the District Court can meet the necessity test of the Legal Claim Derogation.

17. Considering the above, I am of the view that the transfer envisaged by the October Order, but not the previous Order, meets the necessity test of the Legal Claim Derogation. Unlike for the IRS, which has many alternative options available to it, there is no alternative way for the District Court to achieve the Purpose.

18. It must be noted, however, that the transfer of the Requested Data is necessary for the Purpose and the processing of the District Court must be strictly limited to the Purpose. Any other use of the Requested Data outside of the Purpose (including any onward transfers of the pseudonymised data) may not be lawful under the GDPR.

Occasional transfer

19. In addition to the requirements above, the transfer must be "occasional". The Derogation Guidelines clarify that whether a transfer is "occasional" or "non-occasional" must be determined on a case-by-case basis. In this instance, the transfer is a once-off transfer of the Requested Data and will not, for example, take place in "*the framework of a stable cooperation relationship*" (paragraph 2.2 of the Derogation Guidelines) or be "*systematic and repeated*" (paragraph 2.2 of the Derogations Guidelines). In this case, in my view, the transfer will be "occasional".

In light of the above, I am of the view that the Requested Data can be transferred to the District Court for the Purpose under GDPR Article 49(1)(e).

- Add. 4 -

I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 11, 2024.

*/s/ Colin Rooney*
_____
Colin Rooney

- Add. 5 -