

**U.S. Department of Justice**

**Tax Division**

*Please reply to: Appellate Section*
P.O. Box 502
Washington, D.C. 20044

*Facsimile No. (202) 514-8456*
*Telephone No.(202) 514-3361*

MJH:DCRennie
5-57-18788
CMN 2023100692

October 11, 2024

Kelly L. Stephens, Clerk
United States Court of Appeals for the Sixth Circuit
100 East Fifth Street, Room 540
Potter Stewart U.S. Courthouse
Cincinnati, OH 45202-3988

    Re:    *United States v. Eaton Corp.*
           (6th Cir. – No. 24-3732)

Dear Ms. Stephens:

We write in response to the Court's order dated October 9, 2024. The Court invited the parties to address a potential resolution to this case whereby the District Court would conduct an in camera review of the performance evaluations at issue and determine whether they are "relevant to the audit" and, if so, redact irrelevant material protected by the European Union's privacy regulation (the "GDPR"). The Government has several concerns with the Court's proposal.

First, the Court's order appears to misstate the applicable standard for relevance. Congress empowered the IRS to examine any materials "'which *may be relevant* or material' to an investigation." *Byers v. IRS*, 963 F.3d 548,

558 (6th Cir. 2020) (quoting I.R.C. § 7602(a)(1)). Thus, the Government does not need to establish that the "documents it seeks are actually relevant in any technical, evidentiary sense" because "'even *potential* relevance' is sufficient." *Id.* (quoting *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984)). As such, some courts have characterized the summons power as a "license[ ] to fish." *United States v. Giordano*, 419 F.2d 564, 568 (8th Cir. 1969); *accord United States v. Luther*, 481 F.2d 429, 432 (9th Cir. 1973). And the potential infringement of employee "privacy rights" does not preclude enforcement of a summons. *2121 Arlington Heights Corp. v. IRS*, 109 F.3d 1221, 1225 (7th Cir. 1997).

In contrast, the Court's order implies that any performance evaluations must be "sufficiently relevant to the audit to justify production." It thus appears to invoke the type of proportionality analysis contemplated in the civil discovery rules. *See* Fed. R. Civ. P. 26(b)(1). Civil discovery standards are not applicable here—an IRS summons is more analogous to a grand-jury subpoena than a civil document request. *United States v. McKay*, 372 F.2d 174, 176 (5th Cir. 1967); *accord United States v. Widelski*, 452 F.2d 1, 4 (6th Cir. 1971). The District Court recognized this when it rejected the magistrate's report and recommendation, which was based on civil discovery caselaw. (*See* Opinion, R. 22, #167–68.) The District Court has already applied these standards and found that they were satisfied. (Opinion, R. 22,

#167–70.)  Thus, although any in camera review should be guided by the "may be relevant or material" standard applicable under § 7602, the Government does not believe that any further review for potential relevance is required.

Second, the District Court does not currently possess enough information to make line-by-line determinations as to potential relevance. Summons-enforcement proceedings are "summary in nature," *United States v. Clarke*, 573 U.S. 248, 254, (2014), and the prima-facie showing that the Government must make to obtain judicial enforcement "isn't much of a hurdle," *Byers*, 963 F.3d at 553 (citation omitted).  Significantly, "it requires no explication of a factual basis for why the IRS has commenced an investigation in a particular case." *Id*.  The Government need only show, through an agent's declaration, that the materials sought "will assist the investigation." *Id.* at 558.

Accordingly, the Government commenced this action with a petition addressing the required prima facie showing.  (*See* Petition, R. 1, #1–4.)  That petition does not provide a detailed factual basis for the audit since there was no requirement for it to do so.  As such, there is no complaint setting forth claims for relief and supporting factual matter that the District Court can use to assess relevance.  And the parties' briefing below only referred to the intellectual property at issue and the transaction(s) that are the subject of

the transfer-pricing audit in a summary manner. (*See, e.g.*, Decl., R. 1-1, #5 (referring to "Eaton's sale of certain intellectual property assets to non-U.S. affiliates and subsequent royalty payments to those affiliates").) Thus, the District Court would not presently be able to recognize, for example, whether a reference to a project within an evaluation concerns the same technology or transaction at issue in the audit.

Moreover, we note that the *absence* of any reference to the technologies or transactions in these employees' performance evaluations would be relevant to the audit. The performance evaluations at issue relate to 14 employees who work for Eaton's Irish affiliate. Based on the information that Eaton has provided to the IRS regarding the Irish affiliate's employees, these are the individuals that would be expected to work on the technologies and transactions at issue. (*See* Decl., R. 13-1, #89–90.) But if those foreign employees have not been directly working with those technologies, it would suggest—among other things—that Eaton continues to control the technologies through its *domestic* employees after transferring ownership to the Irish affiliate. Thus, the absence of any reference to the technologies or transactions in the performance evaluations at issue would not be a reason to withhold those evaluations from the IRS; rather, the opposite would be true.

To address these concerns, the District Court would need access to more information to implement any solution along the lines of the Court's

proposal. Although the District Court could request further briefing from the parties on these issues, requiring the parties to submit additional (and potentially, quite lengthy) materials to the District Court providing the necessary background on the audit, transactions, and technologies at issue could consume more court and party resources than litigating this appeal.

As an alternative, the Government proposes that inherently personal information (relating to medical history, street addresses, sexual orientation, gender identity, disability status, pregnancy status, religion, and credit information) be redacted and the documents turned over to the IRS. The parties then would continue to have the right, if necessary, to appeal the District Court's decisions on redaction. Although the Government maintains that the E.U. regulation does not apply here, we believe this proposal would address the privacy concerns implicated by that regulation.

Finally, because the issues raised by these proposals are somewhat complex, we respectfully suggest that the Court may wish to refer them to the Mediation Office for further discussions with the parties.

If you have any questions, please feel free to call me at (202) 305-7546, or my colleague, Michael J. Haungs, at (202) 514-4343.

Sincerely yours,

/s/ Douglas C. Rennie

DOUGLAS C. RENNIE
Attorney
Appellate Section

## CERTIFICATE OF SERVICE

It is hereby certified that I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system on October 11, 2024. I further certify that the CM/ECF system will serve counsel for the appellant, who are registered CM/ECF users.

       /s/ Douglas C. Rennie
       DOUGLAS C. RENNIE
       *Attorney*