# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

### UNITED STATES OF AMERICA,

*Petitioner-Appellee*,

v.

### EATON CORPORATION,

*Respondent-Appellant.*

On Appeal from the United States District Court for the
Northern District of Ohio, Case No. 1:23-mc-37
Hon. James S. Gwin, United States District Judge

## BRIEF OF THE CHAMBER OF COMMERCE
## OF THE UNITED STATES OF AMERICA AND
## THE NATIONAL ASSOCIATION OF MANUFACTURERS
## AS AMICI CURIAE IN SUPPORT OF APPELLANT

Stephanie A. Maloney
Jordan L. Von Bokern
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
(202) 463-5337

Erica Klenicki
NAM LEGAL CENTER
733 10th Street NW, Suite 700
Washington, DC 20001
(202) 637-3000

Gregory G. Garre
Eric J. Konopka
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
eric.konopka@lw.com

Kavya R. Dunn
S.Y. Jessica Hui
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 24-3732          Case Name: United States v. Eaton Corp.

Name of counsel: Eric J. Konopka

Pursuant to 6th Cir. R. 26.1, The Chamber of Commerce of the United States of America
*Name of Party*

makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No

## CERTIFICATE OF SERVICE

I certify that on _____ June 30, 2025 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Eric J. Konopka

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 24-3732      Case Name: United States v. Eaton Corp.

Name of counsel: Erica Klenicki

Pursuant to 6th Cir. R. 26.1, The National Association of Manufacturers

*Name of Party*

makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

> No

CERTIFICATE OF SERVICE

I certify that on _____ June 30, 2025 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Eric J. Konopka

_____

_____

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

Page

DISCLOSURES OF CORPORATE AFFILIATIONS AND FINANCIAL
      INTEREST ..................................................................................i

TABLE OF AUTHORITIES ...................................................................iv

INTERESTS OF AMICI CURIAE...........................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................3

ARGUMENT ...........................................................................................5

I.     INTERNATIONAL COMITY REQUIRES COURTS TO PROCEED
      CAUTIOUSLY WHEN ISSUING ORDERS THAT WOULD
      REQUIRE VIOLATIONS OF FOREIGN LAW ...........................5

II.    THE DISTRICT COURT'S ORDER INAPPROPRIATELY
      WATERS DOWN THE INTERNATIONAL COMITY STANDARD .........9

      A.    The District Court Gave Too Much Weight To The United
           States' Abstract Interest In Tax Collection And Too Little
           Weight To Other Nations' Interest In Protecting Privacy..................10

      B.    The District Court Did Not Adequately Consider Alternatives..........16

      C.    The District Court Improperly Refused To Credit Eaton's
           Good Faith ......................................................................19

CONCLUSION.......................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AtriCure, Inc. v. Jian Meng,*
842 F. App'x 974 (6th Cir. 2021) ...............................................................7

*Bank of Augusta v. Earle,*
38 U.S. (13 Pet.) 519 (1839) ....................................................................6

*Canada South Railway Co. v. Gebhard,*
109 U.S. 527 (1883) ...............................................................................15

*Chavez v. Carranza,*
559 F.3d 486 (6th Cir. 2009) ....................................................................7

*Chris-Marine USA, Inc. v. United States,*
892 F. Supp. 1437 (M.D. Fla. 1995) .........................................................15

*Daimler AG v. Bauman,*
571 U.S. 117 (2014) .................................................................................7

*F. Hoffman-La Roche Ltd. v. Empagran S.A.,*
542 U.S. 155 (2004) .................................................................................7

*Gau Shan Co. v. Bankers Trust Co.,*
956 F.2d 1349 (6th Cir. 1992) ..................................................................7

*Green Gas Delaware Statutory Trust v. Commissioner,*
147 T.C. 1 (2016), *aff'd*, 903 F.3d 138 (D.C. Cir. 2018) .........................14

*Hartford Fire Insurance Co. v. California,*
509 U.S. 764 (1993) ...............................................................................6, 7

*Hilton v. Guyot,*
159 U.S. 113 (1895) .............................................................................6, 15

*Intel Corp. v. Advanced Micro Devices, Inc.,*
542 U.S. 241 (2004) .................................................................................8

*Linde v. Arab Bank, PLC*,
706 F.3d 92 (2d Cir. 2013) ...........................................................8, 13

*Richmark Corp. v. Timber Falling Consultants*,
959 F.2d 1468 (9th Cir. 1992) .................................8, 10, 16, 17, 19

*The Santissima Trinidad*,
20 U.S. (7 Wheat.) 283 (1822) .....................................................6

*The Sapphire*,
78 U.S. (11 Wall.) 164 (1871) .....................................................6

*In re Sealed Case* (*Sealed Case I*),
825 F.2d 494 (D.C. Cir. 1987)................................................16, 17

*In re Sealed Case* (*Sealed Case II*),
932 F.3d 915 (D.C. Cir. 2019).........................................3, 8, 9, 11

*Societe Internationale pour Participations Industrielles et
Commerciales, S.A. v. Rogers*,
357 U.S. 197 (1958).....................................................................20

*Société Nationale Industrielle Aérospatiale v. United States District
Court*,
482 U.S. 522 (1987)..........................................5, 7, 8, 11, 16

*Standing Akimbo, LLC v. United States*,
955 F.3d 1146 (10th Cir. 2020) ..................................................12

*United States v. Arthur Young & Co.*,
465 U.S. 805 (1984)......................................................................12

*United States v. First National Bank of Chicago*,
699 F.2d 341 (7th Cir. 1983) ................................................12, 14

*Welch v. Helvering*,
290 U.S. 111 (1933).......................................................................14

*WP Realty, LP v. Commissioner*,
T.C. Memo. 2019-120, 2019 WL 4415275 ................................14

## STATUTES

26 U.S.C. § 982(a) ...............................................................................15

26 U.S.C. § 6212(a) .............................................................................14

26 U.S.C. § 6213(a) .............................................................................14

## OTHER AUTHORITIES

William S. Dodge, *International Comity in American Law*, 115
    Colum. L. Rev. 2071 (2015) .............................................................6

H.R. Rep. No. 97-760 (1982) (Conf. Rep.) ..........................................15

Restatement (Fourth) of the Foreign Relations Law of the United
    States (2018, Westlaw) .............................................................8, 20

Restatement (Second) of Conflict of Laws (1971, Westlaw) .................16

# INTERESTS OF AMICI CURIAE[1]

The Chamber of Commerce of the United States of America ("the Chamber") is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files amicus briefs in cases, like this one, that raise issues of concern to the business community.

The National Association of Manufacturers ("NAM") is the largest manufacturing association in the United States, representing small and large manufacturers in all 50 states and in every industrial sector. Manufacturing employs 13 million men and women in the United States, contributes $2.94 trillion to the U.S. economy annually, has the largest economic impact of any major sector, and accounts for over half of all private sector research and development in the nation. The NAM is the voice of the manufacturing community and the leading advocate for a policy agenda that helps manufacturers compete in the global economy and

---

[1] Amici curiae state that no counsel for any party authored this brief in whole or in part, and no entity or person, aside from amici curiae, their members, or their counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

create jobs across the United States. The NAM regularly files amicus briefs in cases presenting issues of importance to manufacturers.

Amici's members (or their subsidiaries or affiliates) regularly face audits by the Internal Revenue Service ("IRS") involving international transfer pricing and other tax issues. These audits are often multi-year affairs and may involve hundreds of detailed information requests from the IRS. While these requests are burdensome on their own, they create a serious dilemma when they force taxpayers to choose between responding and violating foreign law.

Amici's members take seriously their obligation to comply with both domestic and foreign law. International comity principles aim to strike a balance between the two. When properly balanced, the relevant comity factors may require a taxpayer or other regulated entity to violate foreign law to produce information, but only when the production is necessary or—at the very least—will serve a valuable purpose. But here, the district court ordered Eaton Corporation ("Eaton") to turn over documents to the IRS in violation of the European Union's General Data Protection Regulation ("GDPR") even though the documents are of marginal relevance to the IRS's ongoing audit and the IRS could have gotten the information it wanted another way. Amici are concerned that the court's decision will make it too easy for the IRS and other government agencies to force companies to provide

information that is protected by foreign law and will unnecessarily expose taxpayers and other regulated parties to penalties and sanctions from other nations.

## INTRODUCTION AND SUMMARY OF ARGUMENT

International comity refers to a set of reciprocal norms that call for one nation to recognize, respect, and sometimes defer to the laws, judgments, or interests of another. U.S. courts have incorporated comity into almost all aspects of U.S. law that affect the interests of foreign nations—including, as relevant here, when determining whether a party can be ordered to produce documents held abroad in contravention of foreign law. Comity principles instruct courts to "proceed with extreme caution" before ordering the production of documents that would "violate a foreign sovereign's domestic laws." *In re Sealed Case* (*Sealed Case II*), 932 F.3d 915, 939 (D.C. Cir. 2019). But here, rather than heed such caution, the district court espoused a standard that would *create* unnecessary conflicts with foreign law by essentially always putting the interests of domestic law ahead of foreign law—the opposite of comity.

As part of an audit into Eaton's transfer pricing of certain transactions with its Irish affiliate involving intellectual property, the IRS issued Eaton a summons seeking, as relevant here, performance evaluations for certain employees in Ireland and other European countries that are protected by the GDPR. Griffith Decl., RE 1-1, Page ID #5-6; Amended Enforcement Order, RE 55, Page ID #364-66. The IRS

thought that these evaluations might "help it assess how much Eaton (as opposed to its Irish affiliate) contributed to the intellectual property in question." Amended Enforcement Order, RE 55, Page ID #365. After reviewing them, however, the district court found that they are of "marginal relevance" because they "do not convey how much time or effort an employee spent on a project" and any "inferences that the IRS could draw from [them] are weak." *Id.*, Page ID #369. What's more, not only did the court find that "the IRS *can* make do without" these evaluations, Order on Mot. to Alter or Amend J., RE 39, Page ID #317 (emphasis added), but the IRS in fact *has* developed its transfer pricing position without them, *see* Bai Second Suppl. Aff., RE 32-3, Page ID #234-35. The IRS, in short, has little to no need for these evaluations—and certainly no need that would justify ordering Eaton to violate foreign law to produce them.

In ordering Eaton to turn over the evaluations, the district court significantly diluted the comity standard. Most critically, the court gave far too much weight to the United States' interest in tax collection. While that interest is undoubtedly important, it is several notches too general. The comity analysis focuses on the competing domestic and foreign interests in the *specific* documents in dispute—*i.e.*, the GDPR-protected employee evaluations that the IRS seeks. Since the court found that the evaluations would not meaningfully assist the IRS, its conclusion that producing them would serve the United States' interests was unreasonable.

The district court also failed to give reasonable consideration to factors that outweigh whatever interest the United States may have. The court improperly substituted its own judgment for the judgment of other governments as to the importance of the privacy interests in the employee evaluations. It discounted alternatives offered by Eaton that would not violate the GDPR and appear *more* helpful to the IRS. And it disregarded Eaton's consistent cooperation, erroneously believing that Eaton's "good faith throughout this process" is not "a relevant comity factor." Order on Mot. to Alter or Amend J., RE 39, Page ID #321.

Businesses like Eaton respect their obligations under foreign law and take the possibility of violating them seriously. Comity principles similarly counsel against ordering parties to violate foreign law without good reason. There is no such good reason here, and the standard applied by the district court invites future conflicts. This Court should reverse.

## ARGUMENT

### I. INTERNATIONAL COMITY REQUIRES COURTS TO PROCEED CAUTIOUSLY WHEN ISSUING ORDERS THAT WOULD REQUIRE VIOLATIONS OF FOREIGN LAW

"Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." *Société Nationale Industrielle Aérospatiale v. United States Dist. Ct.*, 482 U.S. 522, 544 n.28 (1987). Comity is embedded in numerous legal principles and

obliges domestic courts to consider and respect foreign law. *See* William S. Dodge, *International Comity in American Law*, 115 Colum. L. Rev. 2071, 2072 (2015). Comity also advises courts to proceed with caution when faced with potential conflicts between domestic law and foreign law—and to avoid such conflicts when possible.

Traditionally, comity was most commonly invoked for purposes of reciprocity, serving as the basis for respecting foreign sovereigns, enforcing foreign laws, and recognizing foreign judgments in domestic courts. *See, e.g.*, *Hilton v. Guyot*, 159 U.S. 113, 166 (1895) (comity is a practice "by which the final judgments of foreign courts of competent jurisdiction are reciprocally carried into execution, under certain regulations and restrictions, which differ in different countries" (citation omitted)); *Bank of Augusta v. Earle*, 38 U.S. (13 Pet.) 519, 526 (1839) (as a matter of comity, "assignees appointed under the bankrupt laws of England may sue in the Courts of the United States"); *see also, e.g.*, *The Sapphire*, 78 U.S. (11 Wall.) 164, 167 (1871) (denying "[a] foreign sovereign" the "privilege" of suing in U.S. court "would manifest a want of comity and friendly feeling"); *The Santissima Trinidad*, 20 U.S. (7 Wheat.) 283, 353 (1822) (foreign sovereign immunity "stands upon principles of public comity").

More recently, comity has served as a reason to limit the international reach of domestic laws and courts out of respect for other nations. *See Hartford Fire Ins.*

*Co. v. California*, 509 U.S. 764, 799 (1993); *AtriCure, Inc. v. Jian Meng*, 842 F. App'x 974, 982-83 (6th Cir. 2021). For instance, courts consider comity when determining the extraterritorial reach of statutes, the limits of general jurisdiction, and whether to issue foreign antisuit injunctions. *See, e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117, 141 (2014); *F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 164-65 (2004); *Gau Shan Co. v. Bankers Tr. Co.*, 956 F.2d 1349, 1352-53 (6th Cir. 1992).

Issues of comity arise when there is "an actual conflict between the domestic and foreign law." *Chavez v. Carranza*, 559 F.3d 486, 495 (6th Cir. 2009). "[W]here a person subject to regulation by two states can comply with the laws of both," a court need not abstain from exercising its authority due to comity concerns. *Hartford Fire Ins.*, 509 U.S. at 799 (citation omitted). When there is a conflict, however, a court must consider comity in an effort to reach "a reasonable accommodation that reconciles the central concerns of both [U.S. and foreign] laws" and interests. *Société Nationale*, 482 U.S. at 555 (Blackmun, J., concurring in part).

The comity test at the heart of this case aims to achieve such a reasonable accommodation. Before ordering someone to produce documents in contravention of foreign law, a court must "scrutin[ize] . . . the particular facts, sovereign interests, and likelihood that resort to [alternative] procedures will prove effective." *Id.* at 544

(majority opinion).[2] The factors "relevant to any comity analysis" include: (1) the importance of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located. *Id.* at 544 n.28; *see* Restatement (Fourth) of the Foreign Relations Law of the United States § 426 cmt. a (2018, Westlaw) ("Restatement (Fourth)").

This "list of factors is not exhaustive." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992). Indeed, courts regularly consider other factors, including "whether compliance would impose hardship on the party targeted by [a document request] and whether that party has acted in good faith." *In re Sealed Case* (*Sealed Case II*), 932 F.3d 915, 932 (D.C. Cir. 2019); *see Linde v. Arab Bank, PLC*, 706 F.3d 92, 110 (2d Cir. 2013) ("[A] district court should also examine the hardship of the party facing conflicting legal obligations . . . .").

---

[2] Reflecting comity's roots in reciprocity, a comity analysis is also required before a court permits the production of evidence in the United States for use in foreign courts. *See, e.g.*, *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 261 (2004).

After considering and balancing these factors, along with any other case-specific circumstances, a court might determine that it is appropriate to order a party to produce documents even though the production would contravene foreign law. When properly applied, however, these factors should cause courts to "proceed with extreme caution" before ordering the production of documents that would "violate a foreign sovereign's domestic laws." *Sealed Case II*, 932 F.3d at 939.

## II. THE DISTRICT COURT'S ORDER INAPPROPRIATELY WATERS DOWN THE INTERNATIONAL COMITY STANDARD

The district court in this case did not properly consider and weigh the comity factors. And as a result, it opened the door to requiring businesses to produce all sorts of documents in violation of foreign law—even when there is little to no domestic interest on the other side of the scale.

This appeal concerns confidential performance evaluations of ten foreign employees totaling 47 pages. Amended Enforcement Order, RE 55, Page ID #368; Order on Second Mot. to Alter or Amend J., RE 60, Page ID #397. The district court found that these evaluations "are protected personal data" under the GDPR, and that Eaton would have to violate—and potentially face monetary or other penalties under—the GDPR to produce them to the IRS. Enforcement Order, RE 22, Page ID #174; *see* Order on Mot. to Alter or Amend J., RE 39, Page ID #314-17; *see also* ECF No. 44, at 9-14. It also found that these evaluations are of "marginal relevance" to the IRS's transfer pricing audit, Amended Enforcement Order, RE 55, Page

ID #370, and that "the IRS can make do without" them, Order on Mot. to Alter or Amend J., RE 39, Page ID #317. The court nonetheless ordered Eaton to produce these evaluations.

The district court erred in at least three respects. *First*, it misapplied the fifth comity factor by mischaracterizing and overweighting the United States' interest in tax collection and underweighting other nations' interests in protecting what they judge to be employees' privacy interests in their performance evaluations. *Second*, the court imposed too high of a standard at the fourth comity factor, discounting available alternatives because they were not a "perfect substitute" for the performance evaluations. And *third*, the court refused to consider Eaton's consistent good faith, erroneously concluding that good faith is not a factor in the comity analysis. Both individually and cumulatively, these errors inappropriately diluted the comity standard and caused the court to order Eaton to turn over GDPR-protected documents that the IRS does not really need.

## A. The District Court Gave Too Much Weight To The United States' Abstract Interest In Tax Collection And Too Little Weight To Other Nations' Interest In Protecting Privacy

The district court committed its most significant misstep at the fifth comity factor, which is "the most important." *Richmark Corp.*, 959 F.2d at 1476. That factor considers "the extent to which noncompliance with [a document] request would undermine important interests of the United States, or compliance with the

request would undermine important interests of the state where the information is located." *Société Nationale*, 482 U.S. at 544 n.28 (citation omitted). It requires a "particularized analysis" of domestic and foreign interests in the specific "request." *Id.* at 543-44 & n.28. So, here, the interests of the United States and other nations must be considered in the context of the "'factual circumstances' of the case at hand." *Sealed Case II*, 932 F.3d at 931 (citation omitted). The district court erred as to both sides of this analysis.

1.     The district court's biggest mistake was in framing the domestic interests at too high a level of generality. At the fifth comity factor, the court was supposed to consider "the extent to which noncompliance with the request would undermine" the United States' interest against "the extent to which . . . compliance with the request would undermine" other nations interests. *Société Nationale*, 482 U.S. at 544 n.28 (citation omitted). This balancing is not abstract; it focuses on the specific documents sought by the IRS. On the foreign side of the scale, the court correctly focused on how producing "the evaluations at issue" would undermine the interests of the European Union and the employees' home nations "in protecting [their] citizens' privacy." Amended Enforcement Order, RE. 55, Page ID #367. But when it came to the domestic side, the court considered only the United States' *general* interest "in tax collection and investigating tax avoidance"—not its tax

collection interest in these specific evaluations.  *Id.*; *see* Order on Second Mot. to Alter or Amend J., RE 60, Page ID #401.  That was error.

Contrary to the district court's suggestion, a particularized approach would not "conflate[] the first comity factor (importance) with the fifth comity factor (countries' interests)" or otherwise "result[] in double-counting."  Order on Second Mot. to Alter or Amend J., RE 60, Page ID #402.  For instance, a document could potentially be important to the IRS's ability to determine the transfer pricing of a particular piece of intangible property (the first factor), but that intangible might be "comparatively small," such that nondisclosure would only minimally affect the United States' tax collection interest (the fifth factor).  *United States v. First Nat'l Bank of Chi.*, 699 F.2d 341, 346 (7th Cir. 1983).

Casting the United States' interest at too high a level, as the district court did, is problematic because it steers courts into requiring unnecessary violations of foreign law.  The IRS's burden to obtain documents by summons is "slight," and the agency will usually be able to come up with some tax-related justification for seeking particular documents.  *Standing Akimbo, LLC v. United States*, 955 F.3d 1146, 1155 (10th Cir. 2020); *see, e.g.*, *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984) (the IRS may seek "items of even *potential* relevance to an ongoing investigation"); *see also* Opp. to Stay Mot. 15, 19, ECF No. 18 (the IRS suggesting that "deference" is owed to the United States' tax collection interest).  In an ordinary

case, that fairly low burden may be justifiable. When production of documents would violate foreign law, however, comity requires more. Yet under the district court's approach, the fifth factor would begin and end with a general national interest—regardless of the content of the specific documents at issue—and put a thumb on the scale in favor of *creating* conflict with foreign law. That approach is wholly inconsistent with comity principles, which guide courts toward "interpretations of domestic law that *avoid* conflict with foreign law." *Linde*, 706 F.3d at 111 (emphasis added).

2. No tax collection interest would be undermined by not producing the employee evaluations at issue. The IRS has claimed that it wants the evaluations to "help it assess how much Eaton (as opposed to its Irish affiliate) contributed to the intellectual property in question." Amended Enforcement Order, RE 55, Page ID #365. But as the district court itself found, the evaluations are "very short" and of "marginal relevance," "do not convey how much time or effort" the employees spent on that intellectual property, and permit at most "weak" inferences by the IRS. *Id.*, Page ID #369-70. In fact, the IRS evidently has had little problem auditing Eaton's transfer pricing without these evaluations. *See* Bai Second Suppl. Aff., RE 32-3, Page ID #234-35 (describing 201-page draft report and draft notice of proposed adjustment issued by the IRS). This shows that production of these evaluations is not necessary to satisfy the United States' interest in tax collection.

*See First Nat'l Bank*, 699 F.2d at 346 ("In connection with this factor it seems significant that the amount of tax liability . . . has already been determined . . . .").

The United States' interest in these documents is especially attenuated given the posture of this dispute. According to record evidence, the IRS issued Eaton a draft notice of proposed adjustment on the transfer pricing issue over a year ago. *See* Bai Second Suppl. Aff., RE 32-3, Page ID #235. That suggests that the IRS has staked out a position on this issue that will be included in a forthcoming notice of deficiency—the IRS's final determination of tax adjustments that triggers the right to seek Tax Court review. *See* 26 U.S.C. §§ 6212(a), 6213(a); *see also, e.g.*, *WP Realty, LP v. Commissioner*, T.C. Memo. 2019-120, 2019 WL 4415275, at *9 (2019). In tax litigation, the taxpayer (here, Eaton) presumptively bears the burden of proving that the IRS's adjustments are incorrect. *See, e.g.*, *Welch v. Helvering*, 290 U.S. 111, 115 (1933); *Green Gas Del. Statutory Tr. v. Commissioner*, 147 T.C. 1, 33 (2016), *aff'd*, 903 F.3d 138 (D.C. Cir. 2018). Since the IRS did not need the evaluations to develop its position, and is unlikely to need them to satisfy a litigation burden, it is hard to see what tax collection interest would be served by forcing Eaton to turn them over.[3]

---

[3] Although there is no evidence that Eaton would use the employee evaluations that it has withheld in any tax litigation, it would likely face obstacles even if it tried to do so. Section 982 of the Internal Revenue Code frequently bars taxpayers from

3.    The district court also gave short shrift to the foreign interests at stake. While the court recognized that the European Union and the employees' home nations have a "countervailing interest, embodied in the GDPR, in protecting [their] citizens' privacy," it viewed the privacy interests as "not particularly sensitive." Amended Enforcement Order, RE 55, Page ID #367. It noted, for example, that the evaluations "dealt almost exclusively with work assignments" and "[t]he most sensitive information they contained was, for some employees, mildly negative performance assessments." *Id.*

The second-guessing of the foreign interests conflicts with comity principles. Comity has long been used, among other things, to respect and enforce foreign judgments even when they are based on foreign law that differs from domestic law. *See Hilton*, 159 U.S. at 166; *see also, e.g.*, *Canada S. Ry. Co. v. Gebhard*, 109 U.S. 527, 539 (1883) (giving comity to foreign bankruptcy); Restatement (Second) of Conflict of Laws § 98 (1971, Westlaw) (foreign judgments will generally be recognized in the United States). And comity is reciprocal—so if the United States wants its privacy laws respected in foreign courts, its courts should respect foreign

---

using foreign-based documentation in civil tax litigation that they have withheld from the IRS during an audit, at least if the IRS follows the procedures in the statute. *See* 26 U.S.C. § 982(a); *Chris-Marine USA, Inc. v. United States*, 892 F. Supp. 1437, 1442-43 (M.D. Fla. 1995). According to the legislative history, the statute was "intended to discourage taxpayers from delaying or refusing disclosure of certain foreign based documentation to the Internal Revenue Service." H.R. Rep. No. 97-760, at 591 (1982) (Conf. Rep.).

privacy laws in domestic courts. *See, e.g.*, *In re Sealed Case* (*Sealed Case I*), 825 F.2d 494, 498-99 (D.C. Cir. 1987) (per curiam); *supra* at 6-7. The United States would presumably expect foreign courts to respect its determination that medical records should remain private even if they document a generally positive health history or that educational records should remain private even if they show a solid but imperfect grade point average. Domestic courts should likewise respect a foreign country's determination that employee records should not be disclosed even if they are only "mildly negative"—and should not substitute their own judgment about how important it is to keep them private. Amended Enforcement Order, RE 55, Page ID #367.

The district court's dismissive treatment of the foreign privacy interests also puts Eaton in a bind. If Eaton is forced to turn over the GDPR-protected employee evaluations, it may face enforcement actions in Europe. Eaton presumably could not defend itself by arguing that the GDPR is overly protective or that a U.S. court viewed the privacy interests in the evaluations as minor. That highlights a critical aspect of comity: the need to respect the objectives and principles of foreign laws, even if they differ from domestic perspectives.

## B. The District Court Did Not Adequately Consider Alternatives

The district court also erred at the fourth comity factor, "the availability of alternative means of securing the information." *Société Nationale*, 482 U.S. at 544

n.28 (citation omitted). This aspect of comity reflects common sense. If information "can easily be obtained" without violating foreign law, a court should avoid friction with foreign law and not order someone to violate foreign law to produce it. *Richmark Corp.*, 959 F.2d at 1475.

The test for an alternative is substantial equivalence. That is, disclosure of protected documents is not necessary when alternative means are likely to produce information that is "substantially equivalent" to the information sought. *Id.* Here, in lieu of providing employee evaluations protected by the GDPR, Eaton offered to provide written answers to questions the IRS may have regarding the foreign employees' job functions, projects, and responsibilities, and to make the foreign employees or their supervisors available to the IRS for transcribed interviews. Bai Aff., RE 12-1, Page ID #75; *see* Order on Mot. to Alter or Amend J., RE 39, Page ID #320. That alternative should easily pass the substantial equivalence test. *See, e.g.*, *Sealed Case I*, 825 F.2d at 499 (excusing bank's compliance with grand jury subpoena when production of documents would violate foreign law and a bank manager was "able to testify as to many of the facts that the grand jury may wish to ascertain"). Indeed, Eaton's alternative seems substantially *better* at giving the IRS the information that it claims to want from the perfunctory evaluations—such as the "the roles and responsibilities of key Eaton employees," the "projects" they worked on, and how employee performance was "benchmark[ed]." Reply Supp. Pet. to

Enforce, RE 13, Page ID #78; *see* Amended Enforcement Order, RE 55, Page ID #369.

In rejecting Eaton's proposed alternative, the district court again applied an overly strict standard that will create more comity problems than it solves. The court found Eaton's alternative inadequate because it was not a "perfect substitute" for the employee evaluations. Enforcement Order, RE 22, Page ID #178. Other than photocopies of the evaluations that are somehow not protected by the GDPR, it is not clear what would satisfy that test. The upshot is that, under the court's standard, the fourth comity factor would almost always favor disclosure of documents protected by foreign law.

While the district court nominally retreated from the "perfect substitute" formulation, its shift in rhetoric did not lead to a shift in approach or results. *See* Order on Mot. to Alter or Amend J., RE 39, Page ID #319-20. In fact, the court continued to find that the fourth comity factor favored disclosure even after it determined that the evaluations contain little relevant information. *See* Order on Second Mot. to Alter or Amend J., RE 60, Page ID #404. Its justification for doing so is not persuasive. The court focused on the fact that the evaluations are "[c]ontemporaneous documents" that "guard against failing memories and serve vital impeachment purposes in ways that [interviews] simply cannot." *Id.* But that focus was misplaced; the court should have focused on the substance of the

documents rather than their form. In any event, Eaton has not sought to deny the IRS access to contemporaneous documents; it has produced orders of magnitude more documents than it is seeking to withhold. *See* Bai Aff., RE 12-1, Page ID #73-74; Order on Second Mot. to Alter or Amend J., RE 60, Page ID #397. And nothing in the court's orders suggests that the evaluations are actually valuable for the purposes it mentioned. On the contrary, the court suggested that the evaluations are *not* valuable for *any* purpose. *See* Amended Enforcement Order, RE 55, Page ID #369. Given that Eaton's (lawful) alternative is at least as good as (unlawfully) producing the evaluations, the fourth comity factor should favor Eaton. *See Richmark Corp.*, 959 F.2d at 1475-76.

## C. The District Court Improperly Refused To Credit Eaton's Good Faith

With respect to good faith, the district court recognized two important points: *first*, that several courts of appeals have "added good faith into the comity analysis"; and *second*, that "Eaton has acted in good faith throughout this process." Order on Mot. to Alter or Amend J., RE 39, Page ID #321; *see supra* at 7-9. Yet the court refused to consider Eaton's good faith because it did not believe that "good faith is a relevant comity factor." Order on Mot. to Alter or Amend J., RE 39, Page ID #321. This, too, was an erroneous attempt to pare back the comity analysis.

Contrary to what the district court said, there is ample support for "add[ing] good faith into the comity analysis." *Id.* In addition to the appellate cases that the

district court itself cited, *see id.*, the Restatement (Fourth) and Supreme Court precedent are directly on point. As the Restatement (Fourth) explains, "courts in the United States have discretion to excuse violations of law . . . on the ground that the violations are compelled by another state's law, if . . . the person in question has acted in good faith to avoid the conflict." Restatement (Fourth), *supra*, § 442(b); *see id.*, Reporters' Note 4 ("Courts in the United States have attached great significance to the efforts of [a] person facing conflicting legal demands to cooperate with authorities."). Indeed, decades ago, the Supreme Court excused noncompliance with a discovery order because a litigant "had in good faith made diligent efforts" to comply but could not due to foreign law. *Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 208 (1958); *see id.* at 211-12.

As a backup, the district court also indicated that "good faith would carry little weight in [its] comity analysis." Order on Mot. to Alter or Amend J., RE 39, Page ID #321. The only reason it gave was that "good faith provides little justification for Eaton not to comply with an IRS summons that the Court has found to be enforceable." *Id.* It is far from clear what the court meant, but no matter what its reasoning is unsound. If the court meant that good faith does not *alone* justify noncompliance with a summons, it missed the point, because nobody is arguing that good faith is the only factor to consider. If the court intended to suggest that the

enforceability of an IRS summons negates good faith and other comity factors, it was wrong, because comity comes into play only after someone could otherwise be required to produce documents in violation of foreign law. Either way, the court's passing consideration of good faith fell short of the mark.

The court was right to acknowledge that "Eaton has acted in good faith throughout this process." Order on Mot. to Alter or Amend J., RE 39, Page ID #321. As Eaton explained, it responded to hundreds of IRS document requests, produced tens of thousands of pages of documents, gave the IRS tours of six facilities in four cities, presented to the IRS on various topics, and facilitated IRS interviews of dozens of employees and service providers. Bai Aff., RE 12-1, Page ID #73-74. During this litigation, moreover, Eaton voluntarily resolved many issues with the IRS and offered meaningful alternatives to producing GDPR-protected documents. *See* Enforcement Order, RE 22, Page ID #162. Eaton presumably did all this because, like most large taxpayers, it is under virtually constant audit by the IRS and wanted to foster a productive working relationship with its auditors. That good faith cooperation should count for a great deal before Eaton and others in its position may be forced to violate foreign law and incur potentially steep penalties for doing so.

*      *      *

This case exemplifies the dilemma that businesses can face when navigating the international legal landscape. When properly applied, international comity

principles should ease this dilemma by balancing obligations imposed by different countries and requiring a violation of foreign law only if there is a good reason. The district court's decision—which watered down the applicable comity test and required a wholly unnecessary violation of foreign law—turned comity principles upside down and should not be allowed to stand.

## CONCLUSION

The district court's judgment should be reversed.

Dated: June 30, 2025

Respectfully submitted,

  /s/ *Eric J. Konopka*

Stephanie A. Maloney
Jordan L. Von Bokern
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
(202) 463-5337

Erica Klenicki
NAM LEGAL CENTER
733 10th Street NW, Suite 700
Washington, DC 20001
(202) 637-3000

Gregory G. Garre
Eric J. Konopka
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
eric.konopka@lw.com

Kavya R. Dunn
S.Y. Jessica Hui
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because this brief contains 5,269 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Sixth Circuit Rule 32(b)(1).

This brief complies with the typeface requirements of Federal Rule Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 with 14-point Times New Roman font.

Dated:  June 30, 2025

       /s/ *Eric J. Konopka*
Eric J. Konopka

**CERTIFICATE OF SERVICE**

I, Eric J. Konopka, hereby certify that on June 30, 2025, the foregoing brief was filed with the Clerk of the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system, which will send notice to all registered CM/ECF users. Participants in the case are registered CM/ECF users and will be served by the CM/ECF system.

Dated:  June 30, 2025

　　　　　　　　　　　　　　　 /s/ *Eric J. Konopka*　　
　　　　　　　　　　　　　 Eric J. Konopka