No. 24-3732

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 8, 2025
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Petitioner-Appellee, | ) |
| | ) |
| v. | )   O R D E R |
| | ) |
| EATON CORPORATION, | ) |
| | ) |
|     Respondent-Appellant. | ) |

Before: SUTTON, Chief Judge; McKEAGUE and MATHIS, Circuit Judges.

Respondent Eaton Corporation appeals the district court's order directing Eaton to comply with an Internal Revenue Service summons seeking production of overseas employee performance evaluations in this tax audit focused on transfer pricing rules. Upon review of the briefing, we unanimously agree that the facts and legal arguments are adequately presented in the briefs and record, such that the decisional process would not be significantly aided by oral argument. Fed. R. App. P. 34(a)(2)(C).

Like many multinational corporations, Eaton regularly transfers assets across international borders between and among its affiliate entities. The tax code allows the IRS to evaluate such transfers to identify attempts to evade taxes by improperly moving assets or income to foreign locations with more favorable tax regimes. 26 U.S.C. § 482. In those situations, the IRS taxes the transfer based on a calculated value intended "to reflect a counterfactual arm's-length transaction 'with an uncontrolled taxpayer.'" *Eaton Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 47 F.4th 434, 437 (6th Cir. 2022) (quoting Treas. Reg. § 1.482-1(b)(1)).

In 2017, Eaton sold certain intellectual property to its Irish affiliate ("Eaton Ireland"), and in 2018 and 2019, Eaton paid its affiliate royalties to use that IP. As part of its audit to determine the IP's transfer price, the IRS sought discovery of performance evaluations for several Eaton Ireland employees. The IRS believed the evaluations would help it allocate the value of the IP between the entities based on their respective employees' relative participation in developing the IP. Eaton argued that it was prohibited from disclosing the evaluations by the European Union's General Data Protection Regulation ("GDPR"), which the IRS must respect under principles of international comity. It offered interviews with the identified employees and answers to written questions as alternatives to disclosure. The IRS declined the offer and filed a petition to enforce the summons.

Without reviewing the evaluations, the district court agreed with Eaton that disclosure would violate the GDPR but nonetheless ordered disclosure after concluding that the comity analysis favored the IRS. On appeal, we remanded the matter and directed Eaton to provide the evaluations for an *in camera* review so that the district court could determine whether and to what extent they are relevant to the IRS's investigation. On remand, the district court amended its order to exclude the evaluations of three employees. As to the evaluations of several other employees, the district court noted that they were "less important than [it] originally thought" but still "relevant enough" to satisfy the standard applicable to an IRS summons.

"A district court's order enforcing an IRS summons will not be reversed unless clearly erroneous." *Byers v. IRS*, 963 F.3d 548, 552 (6th Cir. 2020) (quoting *United States v. Monumental Life Ins. Co.*, 440 F.3d 729, 732 (6th Cir. 2006)). "Clear error exists if [we are] 'left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Alexander v. Loc. 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 402 (6th Cir. 1999)).

Where, as here, enforcement of an IRS summons implicates a foreign law, the district court must first determine whether production would violate that law. *See Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987); *In re Sealed Case*,

932 F.3d 915, 931 (D.C. Cir. 2019). If so, the court must then determine whether production is nonetheless justified under concepts of international comity. *Société Nationale*, 482 U.S. at 543–44.

Even if we assume that disclosure would violate the GDPR, the district court did not abuse its discretion when it concluded that the five-factor comity test favored disclosure. That test, borrowed from the Restatement of Foreign Relations Law, balances: (1) the information's importance; (2) the request's specificity; (3) the information's geographic origin; (4) the availability of alternatives; and (5) the interests of the United States and the foreign country where the information is kept. *Id.* at 544 n.28. We review the district court's comity analysis for an abuse of discretion. *See In re Sealed Case*, 932 F.3d at 934 (collecting cases). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law." *United States v. Flowers*, 963 F.3d 492, 497 (6th Cir. 2020) (citation modified). The parties agree that the first and third factors favor Eaton and the second factor favors the IRS. What separates the parties are the fourth and fifth factors.

Eaton first questions the district court's assessment of the fourth factor: the available alternatives. Before ordering a party to disclose documents in violation of foreign law, courts must "consider whether substantially equivalent alternate means for obtaining the requested information are available." *United States v. Vetco Inc.*, 691 F.2d 1281, 1290 (9th Cir. 1981); *see also Société Nationale*, 482 U.S. at 542, 544 n.28; *United States v. Bank of Nova Scotia (In re Grand Jury Proceedings)*, 691 F.2d 1384, 1390 (11th Cir. 1982); *In re Sealed Case*, 932 F.3d at 932. The district court did not abuse its discretion when it found that Eaton's proposed alternatives were not substantially equivalent because they were more expensive, more time-consuming, and limited by fading memory. *See above cases*. More expensive and more time-consuming alternatives, to start, do not satisfy the substantial-equivalence requirement. *See above cases* (rejecting alternatives on similar bases). Contemporaneous written records, moreover, can be significantly more probative than interviews or interrogatories conducted years later. *See, e.g.*, *Eley v. Bagley*, 604 F.3d 958,

967 (6th Cir. 2010); *United States v. Wandahsega*, 924 F.3d 868, 882 (6th Cir. 2019); *United States v. Hayek*, No. 22-5177, 2024 WL 2028048, at *5 (6th Cir. May 7, 2024); *see also* Fed. R. Evid. 803(6) (recognizing the inherent reliability of contemporaneous records kept in the ordinary course of business). Although an employee or manager could testify to the substance of the performance evaluations, the IRS would have no way of testing the veracity of that testimony without reviewing the evaluations themselves. *See, e.g.*, *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 513 (6th Cir. 2021) (noting that an employer's post-hoc explanation for a wage disparity was contradicted by the plaintiff's performance evaluations). Thus, while the same information might theoretically be obtained through some alternative means, no alternative is substantially equivalent in cost, time, or probative value.

Eaton claims that the district court wrongly focused its analysis on the form of the evidence, instead of "whether alternative means could provide substantially equivalent *information*." Eaton misunderstands the inquiry—"substantially equivalent" modifies "alternate means," not "requested information." The question is not whether the information obtained through Eaton's proposed alternative means is substantially equivalent to the information in the evaluations. It is whether Eaton's proposed alternative means for obtaining the requested information are substantially equivalent to producing the evaluations. *See Vetco*, 691 F.2d at 1290 (explaining why each proposed alternative is logistically or legally inferior to compliance with the summons). The district court correctly applied the appropriate standard and did not abuse its discretion in finding that this factor favored the IRS.

Eaton also questions the district court's application of the fifth factor: the weighing of the United States' and Ireland's national interests. Courts review "the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located." *Société Nationale*, 482 U.S. at 544 n.28. The district court did not abuse its discretion when it found that the balance, while close, favored the IRS.

A nation's ability to collect taxes is clearly important. *See G. M. Leasing Corp. v. United States*, 429 U.S. 338, 350 (1977). And the government has an "interest in prompt, effective tax collection." *United States v. Crestmark Bank (In re Spearing Tool & Mfg. Co.)*, 412 F.3d 653, 657 (6th Cir. 2005).

The IRS, it follows, also has an interest in investigating potential tax liabilities. That is why "Congress 'endowed the IRS with expansive information-gathering authority' to monitor compliance with the internal revenue laws," *Byers*, 963 F.3d at 552 (quoting *United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984)), and why the Supreme Court is "general[ly] reluctan[t] to interfere with the IRS's summons power," *id.* at 556.

The district court, it is true, found that the evaluations "may" be relevant and do not seem "particularly important" to the IRS's investigation. Eaton maintains, as a result, that we must discount the United States' interest given the modest relevance of these evaluations. Even so, the district court did not abuse its discretion in nonetheless concluding that the balance of interests favored the United States. That is because, even assuming the GDPR applies here, Ireland's interest in shielding these evaluations is minimal as well.

The district court permissibly found that the information in the evaluations, which are mainly about work assignments, would receive the lowest level of protection under the GDPR. *See* GDPR Art. 9(1); R.55 at 4. The evaluations do not contain any sensitive information about the employees' race, religion, or health that would trigger the GDPR's heightened restrictions and disclosure penalties. *See* GDPR Art. 9(1); R.55 at 4. The district court, moreover, entered a protective order allowing Eaton to redact any such information (or equivalent sensitive information) to the extent it exists. R.30, 54. Accordingly, Ireland has at best a weak privacy interest in the evaluations. And it at best *might* vindicate that interest by enforcing the GDPR against Eaton if it discloses them. The district court did not abuse its discretion in finding that this factor tipped in favor of the IRS.

All in all, the specificity of the summonses, the lack of alternatives, and the balance of national interests all favor the IRS, while only the evaluations' minimal relevance and foreign location favor Eaton. The district court did not abuse its discretion by finding that the comity factors favored enforcement of the summons.

Accordingly, the district court's order is **AFFIRMED**.

ENTERED BY ORDER OF THE COURT

Kelly L. Stephens, Clerk